IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

ALVIN BALDUS, CINDY BARBERA,
CARLENE BECHEN, ELVIRA BUMPUS,
RONALD BIENDSEI, LESLIE W. DAVIS,
III, BRETT ECKSTEIN, GEORGIA
ROGERS, RICHARD KRESBACH,
ROCHELLE MOORE, AMY RISSEEUW,
JUDY ROBSON, JEANNE SANCHEZ-
BELL, CECELIA SCHLIEPP, and TRAVIS
THYSSEN,

        Plaintiffs,

      v.                                Case No. 11-C-00562

Members of the Wisconsin Government
Accountability Board, each only in his
official capacity: MICHAEL BRENNAN,
DAVID DEININGER, GERALD NICHOL,
THOMAS CANE, THOMAS BARLAND, and
GORDON MYSE, and KEVIN KENNEDY,
Director and General Counsel for the
Wisconsin Government Accountability
Board,

        Defendants.

---

DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS

---

## INTRODUCTION

The plaintiffs bring this lawsuit upon a faulty, hypothetical premise—that the Wisconsin State Legislature will fail to timely adopt and enact a valid redistricting plan in accordance with the information provided in the 2010 decennial census. This premise is based solely upon the fact that past Wisconsin

Legislatures have failed to act and it was incumbent upon the judiciary to establish redistricting plans in those years. However, obviously, this Wisconsin Legislature is not the same one that failed in the past to so enact a redistricting plan. In fact, this is the first Legislature following a census in which there is one party in the majority in both houses and the Executive Branch, so redistricting legislation is more likely than not.

Moreover, as the plaintiffs' concede—as they must—the primary responsibility mandated by the State Constitution to establish new districts for State and Federal elections rests first in the hands of the Wisconsin Legislature and that body still has sufficient time in which to pass and enact a valid redistricting plan. There is no justiciable case or controversy and this matter is not ripe for determination; the plaintiffs, thus, lack standing and this Court is, therefore, without subject matter jurisdiction.

Further, the Complaint does not set forth a claim upon which relief can be granted. Upon either of these grounds, this lawsuit must be dismissed.

Finally, it is the established practice of federal courts that state redistricting plans, should a state legislature not act, be reviewed and proposed by state judiciaries first. That being the case, and solely if this Court declines to dismiss this action, the defendants ask for this Court's deferral of this matter, or in the alternative, ask that this Court abstain from taking this matter.

Pursuant to Fed. R. Civ. P. 12(b)(1), a defendant may file a motion to dismiss for "lack of subject-matter jurisdiction." The burden of proof for such a motion rests with the party who asserts federal jurisdiction. *United Phosphorus, Ltd. v. Angus Chemical Co.*, 322 F.3d 942, 946 (7th Cir. 2003). In this case, the plaintiffs bear that burden.

In the case of a Fed. R. Civ. P. 12(b)(6) motion for failure to state a claim upon which relief may be granted, the complaint itself must be examined. It need not spell out in excruciating detail all relevant facts, but it must allege sufficient facts to raise the plaintiffs' right to relief above mere speculation. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Accordingly, a claim, or the entire complaint, should be dismissed "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Id.*, 550 U.S. at 558.

For the purposes of this Motion to Dismiss only, the allegations in the Complaint shall be treated as if they are true. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 463 (7th Cir. 2010).

## STATEMENT OF THE CASE AND OF THE FACTS

Every ten years, pursuant to the United States Constitution, a national census is taken by the Bureau of Census, the United States Department of Commerce, to determine the population of each state. U.S. Const. art. I, § 2. (Complaint, dated June 10, 2011, ["Complaint"], ¶ 13). These decennial census are

then used, in part, to determine the apportionment of both state and federal governmental districts in each state.

The current Wisconsin Senate and Assembly legislative districts were established pursuant to the results of the 2000 decennial census. (Complaint, ¶ 2). In Wisconsin, the State Legislature is to "apportion" the state's senate and assembly districts following each decennial census "according to the number of inhabitants" now residing in the state. Wis. Const. art. IV, § 3. (Complaint, ¶ 9).

The defendant Government Accountability Board ("GAB") is an independent agency of the State of Wisconsin, which first began work in January 2008.[1] Wis. Stat. § 15.60 (Complaint, ¶ 6(a)). It is the obligation of the GAB to oversee and administer Wisconsin's laws "relating to elections and election campaigns[.]" Wis. Stat. § 5.05(1). (Complaint, ¶ 6(a)). As part of the GAB's statutory responsibilities, it is to notify each county clerk by the second Tuesday in May of an election year of the date of the primary and general elections and which offices are to be filled in those elections. Wis. Stat. §§ 10.01(2)(a) and 10.72. (Complaint, ¶ 6(b)). The GAB has other election-related, statutory duties. *See* Wis. Stat. §§ 7.08(2) and 7.70(5). (Complaint, ¶ 6(a)-(c)).

---

[1]The Court may take judicial notice, pursuant to Fed. R. Evid. 201, that the GAB was established in 2008, pursuant to 2007 Wisconsin Act 1, and was not in existence during the previous lawsuits each decade. "In ruling on a 12(b)(6) motion, a district court may take judicial notice of matters of public record without converting the 12(b)(6) motion into a motion for summary judgment." *Anderson v. Simon*, 217 F.3d 472 , 474-75 (7th Cir. 2000); *General Electric Capitol Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997).

The first date[2] listed in the Complaint by which the GAB is to perform some of its statutory, election-related duties is the second Tuesday of May of an election year—or May 8, 2012. (Complaint, ¶¶ 6(b) and 19). The Court may take judicial notice, pursuant to Fed. R. Evid. 201, that that date is indeed May 8, 2012—more than eleven months from the date the Complaint was filed.

Following the 2000 census, Wisconsin was divided into 33 state senate districts and 99 state assembly districts. (Complaint, ¶ 11). In 2002, the Wisconsin State Legislature did not enact any redistricting plans to respond to the 2000 census, and the United States District Court for the Eastern District of Wisconsin created judicially-mandated legislative districts for Wisconsin. *See Baumgart v. Wendelberger*, E.D. Wis. Case Nos. 01-C-121 and 02-C-366, 2002 WL 34127471 (E.D. Wis. May 30, 3002) (*per curiam*) (three-judge panel), *amended by* 2002 WL 34127472 (E.D. Wis. July 11, 2002).[3] (Complaint, ¶ 2).

_____

[2]Other relevant dates set forth in the Complaint, include (1) June 1, 2012—the date by which candidates for state Senate and Assembly may begin circulating their nomination petitions (Complaint, ¶ 19); (2) July 10, 2012—the date by which those candidates must file nomination petitions with the GAB (*Id.*); (3) September 11, 2012—the date of the next regular state legislative primary election (absent any change made by the State Legislation) (*id.*, ¶ 12); and (4) November 6, 2012—the date of the next regular state legislative general election (absent any change made by the State Legislation). (*Id.*)

[3]Coincident with the filing of the Complaint in the above-captioned matter, the plaintiffs in *Baumgart v. Wendelberger*, E.D. Wis. Case Nos. 01-C-121 and 02-C-366 filed a Motion to Reopen Judgment seeking the same relief sought in the instant action. (Judicial notice may be taken of these pleadings as well). However, the defendants in that case no longer exist as the GAB has replaced the Wisconsin Elections Board and there are new speakers of the State Assembly and Senate. No hearing or briefing schedule has been set in those closed cases.

Elections in the State of Wisconsin since 2002 have been conducted under the boundaries established following that 2000 census. (Complaint, ¶ 12). On December 21, 2010, the Bureau of Census announced and certified the population for the State of Wisconsin, showing a slight population increase. (Complaint, ¶ 14). Accordingly, the plaintiffs assert that the legislative boundaries established by the Court in 2002 have been made unconstitutional by the 2010 census.[4] (Complaint, ¶¶ 17, 22, 24-25, and 27).

Population has grown slightly in the State of Wisconsin over the past ten years, and the legislative districts must be adjusted so that they, again, contain a virtually equal population figure based upon the 2010 census. (Complaint, ¶ 16).

The plaintiffs concede that "Article IV, section 3, of the Wisconsin Constitution gives the [State] legislature the primary responsibility for enacting a constitutionally valid plan for the state's legislative districts." (Complaint, ¶ 18). The plaintiffs further note that, for the last three decades, the State Legislature has not met that responsibility, and the judiciary has been obligated to establish such legislative boundaries. (*Id.*)

---

[4]Defendants do not waive their right to challenge this allegation in further proceedings, if any.

The plaintiffs next make the assertion upon which their entire lawsuit is based:

> The legislature elected in November 2010 convened for the first time on January 4, 2011. *No legislation for redistricting has been introduced,* let alone debated, adopted and signed into law by the Governor.

(Complaint, ¶ 18.b.) (emphasis added).

However, the plaintiffs admit, at several points throughout their Complaint, that their lawsuit is only relevant "[i]n the absence of a constitutional state law, adopted by the Wisconsin legislature and signed by the Governor in a timely fashion[.]" (*See* Complaint, ¶¶ 26-27 and ad damnum clause, ¶ 4).

The plaintiffs seek to have the new three-judge panel convened or to have the former three-judge panel in the previous 2001 case, reconvened.[5]

## ARGUMENT

The United States Constitution provides that in order to bring an action in federal court, a plaintiff must have standing. *Books v. City of Elkhart, Indiana*, 235 F.3d 292, 298-99 (7th Cir. 2000). This is but one element of federal subject matter jurisdiction; the other is that the case or controversy be ripe for consideration at the time the complaint is filed. *Wisconsin Central, Ltd. v.*

---

[5]It must be noted that Judge Easterbrook asserted that the previous case was "dead on arrival" and should have been dismissed on several grounds—including lack of ripeness—when he withdrew from the initial three-judge panel in his dissent in *Arrington v. Elections Board*, 173 F. Supp. 2d 856, 870 (E.D. Wis. 2001). Thus, that initial panel could not be reconvened.

*Shannon*, 539 F.3d 751, 759 (7th Cir. 2008) ("ripeness, when it implicates the possibility of this Court issuing an advisory opinion, is a question of subject matter jurisdiction under the case-or-controversy requirement.")  Both must be present. *Peick v. Pension Benefit Guaranty Corp.*, 724 F.2d 1247, 1258 (7th Cir. 1983). Plaintiffs have the burden "to establish that [subject matter] jurisdiction existed at the time the claim for declaratory relief was filed and that it has continued since." *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1344 (Fed. Cir. 2007). Based upon the Complaint's very own terms, the plaintiffs both lack standing and this matter is not presently ripe for consideration.

Additionally, this Court must dismiss a Complaint if it fails to set forth a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  Here, the Complaint is speculative and based solely upon one hypothetical version of what *may* happen in the future.

Finally, and in the alternative, should this Court determine that it shall leave this unripe matter open on the off-chance that a future event may occur as alleged by the plaintiffs (*i.e.*, that the State Legislature shall fail to timely enact legislative boundaries based upon the decennial census), then, pursuant to establish caselaw, this Court should first defer to the State Legislature and then the State judiciary or should abstain from hearing this case at this time. *See Growe v. Emison*, 507 U.S. 25 (1993).

I.    THIS ACTION MUST BE DISMISSED BECAUSE THE COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION.

> "Those who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Art. III of the Constitution by alleging an actual case or controversy." *Tobin for Governor v. Ill. State Bd. of Elections*, 268 F.3d 517, 527 (7th Cir.2001) (quoting *City of L.A. v. Lyons*, 461 U.S. 95, 101 . . . (1983)). To show an actual case or controversy, plaintiff must show *both* that she has standing to assert her particular claims and that it is an appropriate time for judicial intervention. *Renne v. Geary*, 501 U.S. 312, 320 . . . (1991).

*Deida v. City of Milwaukee*, 192 F. Supp. 2d 899, 904 (E.D. Wis. 2002) (emphasis added).

In the present case, GAB asserts that the plaintiffs have neither an actual case or controversy as they lack standing to assert their claims *and* that this case is not ripe for consideration at this time.

In order to have standing such that a party may raise a claim, "a plaintiff must allege that she has suffered (1) an 'actual or imminent . . . invasion of a legally protected interest' (2) caused by the defendant that (3) 'a favorable decision is likely to redress.'" *Deida*, 192 F. Supp. 2d at 904 (quoting *Tobin for Governor v. Ill. State Bd. of Elections*, 268 F.3d 517, 527 (7th Cir. 2001). In order to assess whether a matter is "ripe," the Court must "'evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 687 n.3 (7th Cir. 1998) (quoting *Abbott Labs v. Gardner*, 387 U.S. 136, 149 (1967)).

With a Fed. R. Civ. P. 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the plaintiffs bear the burden of proving that all of these elements apply "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof" at that particular stage in the litigation. *Alliant Energy Corp. v. Bie*, 277 F.3d 916, 919 (7th Cir. 2002).

After careful consideration of the Complaint in the instant matter, it becomes apparent that there is no actual case or controversy, and that—even if such a case or controversy would arise in the future—now is not the time to address this unripe issue.

> A. The plaintiffs lack standing as there is no actual case or controversy.

Article III of the United States Constitution only permits federal courts to exercise jurisdiction in order to adjudicate a "case or controversy." *Allen v. Wright*, 468 U.S. 737, 750 (1984). As far back as 1937, the United States Supreme Court addressed what was required for a "controversy" such that standing would be extended to a party:

> A 'controversy' in this sense must be one that is appropriate for judicial determination. A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

*Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240-41 (1937) (citations omitted).

- 10 -

In the instant case, a review of the Complaint evidences that there is no present controversy.[6] The Complaint is entirely based upon a hypothetical set of facts which may never come to pass. If the State Legislature timely acts, as is its wont, and sets legislative boundaries, there is absolutely *no* basis whatsoever for the Complaint and its request that a three-judge panel step in and make decisions not yet within their right. At present, there is no concrete, adverse interest of the plaintiffs which cannot be redressed by allowing the State Legislature time in which to fashion the legislative boundaries as is that body's constitutional right and responsibility. Any decision rendered by this Court or a panel of judges would be advisory at best, if not completely overstepping their bounds at this time.

A "core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "Over the years, [the United State Supreme Court's] cases have established that the irreducible constitutional minimum of standing contains three elements." *Id.*

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical[.]'" Second, there must be a casual connection between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it

---

[6]In the previous federal redistricting case, all parties (aside from the defendants who took no position) argued to the court that there was a "case or controversy." *Arrington*, 173 F. Supp. 2d at 859. Judge Easterbrook dissented, noted that "a prediction that something will go wrong in the future does not give standing today." *Id.*, 173 F. Supp. 2d at 869.

must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Id.*, 504 U.S. at 560-61 (citations omitted).

Here, even though this is a Complaint for declaratory and injunctive relief, the plaintiffs must still meet their burden of proof and establish that they have standing to bring this action. They cannot do so.

First, there is no injury which has been suffered by any of the plaintiffs at this time. Their Complaint takes great pains to allude to harm or "threatened harm" because they must realize that they have not suffered any harm and, should the State Legislature act within the next eleven months, they *will not* suffer any harm. Thus, the threat is illusory.

Next, there is no connection between the plaintiffs' speculative "threatened" harm and the defendants. Because this is a declaratory relief complaint, that element is more difficult to assess, but it cannot be disregarded. Without an "actual controversy," a district court may not grant declaratory relief. *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 272 (1941).

Finally, this possible harm will not likely be appropriately redressed by this Court. Rather, if the State Legislature does not timely act, the appropriate redress is to the state judiciary not the federal courts. *See Growe*, 507 U.S. 25.

The Court must "consider[] whether relief would be possible under any set of facts that could be established consistent with the allegations in the complaint." *American Federation of Government Employees, Local 2119 v. Cohen*, 171 F.3d 460, 465 (7th Cir. 1999). It thus stands to reason that "if a plaintiff cannot establish

standing to sue, relief from this court is not possible, and dismissal under 12(b)(1) is the appropriate disposition." *Id.* Here, the plaintiffs cannot establish standing and their Complaint should be dismissed.

### B. This matter is not ripe for determination at this time.

It is fairly axiomatic that Courts should not render decisions when a matter is still in a nascent or potential state, *i.e.*, when the matter is not ripe. *Ernst & Young v. Depositors Economic Protection Corp.*, 45 F.3d 530, 538 (1st Cir. 1995) ("Courts should always be hesitant to answer hypothetical questions."). The concept of ripeness of an issue under a subject matter jurisdiction review is based upon "the 'central perception . . . that courts should not render decisions absent a genuine need to resolve a real dispute,'" and that "'[c]ases are unripe when the parties point only to hypothetical, speculative, or illusory disputes as opposed to actual, concrete conflicts.'" *Lehn v. Holmes*, 364 F.3d 862, 867 (7th Cir. 2004) (citations omitted). Here, the plaintiffs can *only* point to hypothetical, speculative, or illusory disputes. They have no actual, concrete conflict. They are merely filing this lawsuit as a placeholder in the event that a future event does not occur.

"The inquiry into ripeness is made more complicated when suit is brought under the Declaratory Judgment Act . . . and hence seeks preemptive relief, but the ability to bring suit under that Act does not vitiate the constitutional requirement that the claim address 'a case of actual controversy.'" *Wisconsin Central, Ltd.*, 539 F.3d at 759. The plaintiffs here seek such declaratory relief and will certainly point to the fact that in those circumstances it is customary that there be

hypothetical or uncertain facts. However, that would be misreading the basic premise of ripeness as the second element for subject matter jurisdiction. *Ernst & Young,* 45 F.3d at 537 ("Thus if a plaintiff's claim [for declaratory relief], though predominantly legal in character, depends upon future events that may never come to pass, or that may not occur in the form forecasted, then the claim is unripe.").

Regardless of whether an action is for declaratory relief or not, it must still be based upon some reality. It cannot be fashioned of spun sugar and anticipations. Had the State Legislature failed to enact new legislative boundaries and if this were February or March or 2012, the plaintiffs' case would be much more grounded in reality and would be more ripe. That is not the case, nor is this the time.

"Generally, in 'an action seeking a declaratory judgment to protect against a feared future event, the plaintiff must demonstrate that the probability of the future event occurring is real and substantial, "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."'" *Barker v. State of Wisconsin Ethics Board*, 815 F. Supp. 1216, 1218 (W.D. Wis. 1993) (quoting *Salvation Army v. New Jersey Dept. of Community Affairs*, 919 F.2d 183, 192 (3d Cir. 1990)). The remote possibility that some harm may befall the plaintiffs in the future is not enough to satisfy the "actual controversy" element for standing. *Malowney v. Federal Collection Deposit Group*, 193 F.3d 1342, 1347 (11th Cir. 1999). "There must be a substantial likelihood that the plaintiff will suffer a future injury: a 'perhaps' or 'maybe' chance is not enough." *Id.*

Granted the general question of whether a controversy exists is complicated and a hard-and-fast rule is difficult to set. The United States Supreme Court has tried to do just that in *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007) (quoting *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)), where it held that "'[b]asically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" (Footnote omitted). Here, that is simply not the case.

"The basic rationale of the ripeness doctrine 'is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative [or legislative] policies, and also to protect the agencies [or, in this case, the State Legislature] from judicial interference until an administrative decision has been formalized [or, in this case, new legislative boundaries have been set] and its effects felt in a concrete way by the challenging parties.'" *Patel v. City of Chicago*, 383 F.3d 569, 572 (7th Cir. 2004). This is apropos in the given circumstance. Here, dismissing the case for a lack of ripeness will prevent this Court from entanglement in an abstract disagreement and from requiring decisions which may never become necessary.

An examination of the previous federal redistricting case is also rather instructive. In that case, two judges on the initial panel addressed ripeness—which had not been fully addressed by the parties—and, after a lengthy exposition, opted

to deny the motion to dismiss the case, but rather, stayed all substantive proceedings until February 1, 2002—the year of the next election. *Arrington*, 173 F. Supp. 2d at 867. The dissent, aptly noting that his fellow judges were implying that there would not be a real controversy before February 2002, argued that the majority was actually holding the case until it became ripe and that that was inappropriate. *Id.*, 173 F. Supp. 2d at 869. In the instant case, the time table is relatively the same—thus, there is no controversy at present and February 2012 is the earliest that this matter would "become" ripe. That is not enough to satisfy the requirements at present. Moreover, a stay until early 2012 would be setting forth an advisory opinion and merely allowing the plaintiffs to use this litigation as a placeholder until a real controversy arises.

Accordingly, as shown above, the plaintiffs' claim is not ripe and this Court should grant the defendants' Motion and dismiss this case.

II. THE PLAINTIFFS HAVE FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED, THUS, THIS ACTION MUST BE DISMISSED.

The Seventh Circuit, building upon *Twombly,* has established "two easy-to-clear hurdles" for a federal complaint. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008). They are as follows:

> First, the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests. Second, its allegations must plausibly suggest that the

plaintiff has a right to relief, raising that possibility above a "speculative level"; if they do not, the plaintiff pleads itself out of court.

*Id.* (quoting *Equal Employment Opportunity Commission v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (citations omitted)).

Here, the Complaint describes a claim—but it is all based upon the as-yet-untrue premise that the State Legislature will fail to act in a timely fashion to set legislative boundaries which comport with the 2010 census. (*See* Complaint, ¶¶ 26-27 and ad damnum clause, ¶ 4). Thus, even though the Complaint sets forth certain facts which may state a claim for relief provided certain future events occur or don't occur, the Complaint itself by its very language establishes that it is premature, not ripe, and not justiciable.

The plaintiffs admit, at several points throughout their Complaint, that their lawsuit is only relevant "[i]n the absence of a constitutional state law, adopted by the Wisconsin legislature and signed by the Governor in a timely fashion[.]" (*See* Complaint, ¶¶ 26-27 and ad damnum clause, ¶ 4). It also states that the first date by which the GAB is to perform some of its statutory, election-related duties is the second Tuesday of May of an election year—or May 8, 2012. (Complaint, ¶¶ 6(b) and 19).

It is well established in this Circuit, that "a party may plead itself out of court by pleading facts that establish an impenetrable defense to its claims." *Tamayo*, 526 F.3d at 1086. "If the plaintiff voluntarily provides unnecessary facts in [the] complaint, the defendant may use those facts to demonstrate that [the plaintiff] is not entitled to relief." *Id.*

Here, the plaintiffs have alleged that the State Legislature has the primary responsibility to establish legislative boundaries following a decennial census. They have also alleged that they may only obtain judicial relief *if* the State Legislature does not timely act.  The plaintiffs further allege that the first date by which the GAB must perform its statutory duties is May 8, 2012—eleven months from the  filing date.  Clearly, the plaintiffs have pled themselves out of this Court at this time.

Accordingly, while the plaintiffs may have jumped the first hurdle under the Fed. R. Civ. P. 12(b)(6) motion standard, they cannot even come close to clearing the second:  they fall far short—and by their own admissions.  Their right to relief is not only "speculative" it is unconfirmed, indefinite, and tentative.  The plaintiffs' right to relief is predicated upon an event which must *not* occur sometime in the next eleven months.  Therefore, this Complaint must be dismissed and dismissed in its entirety for failing to state a "non-speculative" claim upon which relief may be granted.

III.   IN THE ALTERNATIVE, THE COURT SHOULD DEFER THIS MATTER TO THE STATE LEGISLATURE AND/OR THE STATE JUDICIARY AND/OR SHOULD ABSTAIN FROM TAKING ANY ACTION.

A.   This Court should defer action to allow the State Legislature—or the State judiciary—to establish the legislative boundaries.

Put rather simply, the State Constitution vests the primary responsibility to redistrict legislative boundaries every ten years upon the State Legislature.

Wis. Const. art. IV, § 3; U.S. Const. art. I, § 2; *Growe*, 507 U.S. at 34 ("'We say once again what has been said on many occasions: reapportionment is primarily the duty and responsibility of the State through its legislature or other body, rather than of a federal court.'") (quoting *Chapman v. Meier*, 420 U.S. 1, 27 (1975)). That is the body which is given the "first chance" to insure that the new population data is properly assessed and new boundaries are established to protect Wisconsin citizens' right to vote and to have equal representation. There may be times where the State Legislature—for whatever reason—is not able to timely act. Upon that inability to timely establish boundaries, the state judiciary is the next venue for resolution.

Federal courts have been advised to respect the state's rights to establish its own legislative boundaries—by the Legislature and then the state judiciary. "In the reapportionment context, the [United States Supreme] Court has required federal judges to defer consideration of disputes involving redistricting where the State, through its legislative *or* judicial branch, has begun to address that highly political task itself." *Growe*, 507 U.S. at 33 (emphasis in original). Here, there is still significant time in which the State Legislature may complete redistricting plans. In addition, with a single party in control of both houses and the Executive branch, the odds are that such redistricting plans will be passed.

"Absent evidence that these state branches will fail timely to perform that duty, a federal court must neither affirmatively obstruct state reapportionment nor permit federal litigation to be used to impede it." *Id.* at 34. In the instant case, there are no allegations that the State Legislature will not be able to timely perform

its duties and establish legislative boundaries. There are no allegations that the State Legislature has declared it is unwilling or unable to timely perform its duties. In fact, there is over eleven months before the GAB is required to take *any* steps to utilize the new 2010 census-based legislative boundaries. The Complaint, which for the purposes of this Motion must be taken as true, indicates that the next deadline for the GAB is May 8, 2012. It further indicates that this Court should only act if the State Legislature fails to act. It does not—and cannot—state that this State Legislature will indeed *fail* to act.

That being the case, and based upon the United State Supreme Court's dictates first set forth in 1965 in *Scott v. Germano*, 381 U.S. 407 (1965) (*per curiam*) that state legislatures and judiciaries are to have the primary redistricting responsibilities, it is appropriate that this Court defer any action in this case and allow the State Legislature time to fulfill its duties. If such are not timely accomplished, this Court should also again defer any action in this case to allow for recourse to be made to the Wisconsin judiciary, which, pursuant to *Growe*, is the proper next venue.

It is anticipated that the plaintiffs will allege that these are "exigent circumstances" and that delay—any delay—will be harmful and that they will not have adequate time in which to respond to a redistricting plan established by either the State Legislature or State judiciary. Again, that is just incorrect, and, quite frankly, irrelevant. The State and Federal Constitutions require that a redistricting plan be established in advance of the next election, it does not require

that there be time for an appeal of such a plan. State agencies are to adopt a constitutional plan "within ample time . . . to be utilized in the [upcoming] election[.]" *Germano*, 381 U.S. at 409. The Constitution "does not require appellate review of the plan prior to the election, and such a requirement would ignore the reality that States must often redistrict in the most exigent circumstances—during the brief interval between completion of the decennial federal census and the primary season for the general elections in the next even-numbered year." *Growe*, 507 U.S. at 35. Thus, that argument has no merit.

Accordingly, it is proper for this Court to defer any action in this case until Spring of 2012, if at all.

B.    It is appropriate for this Court to abstain from taking this matter.

A motion to dismiss based upon abstention principles also "raises the question of whether a court should exercise subject matter jurisdiction." *Miller Brewing Co. v. Ace U.S. Holdings, Inc.*, 391 F. Supp. 2d 735, 739 (E. D. Wis. 2005). The Complaint and "other materials relating to the exercise of jurisdiction" may be considered without converting the motion to dismiss into one for summary judgment. *Id.* Typically, the doctrine of abstention is "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976) (quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188 (1959)). However, when an action—such as the present case—is brought under the

Federal Declaratory Judgment Act, "the Supreme Court has developed a separate abstention doctrine under which district courts may more easily abstain from exercising jurisdiction." *Miller Brewing Co.*, 391 F. Supp. 2d at 739. The Supreme Court has interpreted that Act's language indicating that the courts "may" declare the rights and other legal relations "as granting district courts discretion as to whether to exercise jurisdiction under the statute." *Id.*; *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286-88 (1995).

Accordingly, here, there is every reason that this Court should *decline* to exercise its jurisdiction and require the plaintiffs to file their action in the appropriate State court should, and only if, the State Legislature fails to timely act.

In *Growe*, the United States Supreme Court held that a federal district court had erred by not deferring to a state court's attempts to redistrict following a decennial census. *Growe*, 507 U.S. at 32. The Court in *Growe* further explained when a federal court should abstain from exercising jurisdiction when a state court has concurrent jurisdiction, stating that it has "found abstention necessary, for example, when the federal action raises difficult questions of state law bearing on important matters of state policy, or when federal jurisdiction has been invoked to restrain ongoing state criminal proceedings." *Id.* While in this case there is, as of yet, no concurrent state action regarding redistricting, that is solely because the matter is still within the purview of the State Legislature which still has time to fulfill its responsibilities. Should the State Legislature fail to do so, a state court action is the more appropriate vehicle to insure that Wisconsin citizens are

protected and that this "highly political task" is accomplished by the entities which the Supreme Court has recognized as having a superseding interest.

There is no dispute that this Court—should the State Legislature fail to timely perform its duties—would have the jurisdiction to hear this matter and to appoint a panel of judges to set about establishing legislative boundaries. However, just because a federal court has the discretion to so act, it does not necessarily follow that the Court need do so in each case. The United States Supreme Court's abstention doctrines must be taken into account. Abstention is premised upon the theory that "federal courts may decline to exercise their jurisdiction, in otherwise "'exceptional circumstances,'" where denying a federal forum would clearly serve an important countervailing interest, for example, where abstention is warranted by considerations of 'proper constitutional adjudication,' 'regard for federal-state relations,' or 'wise judicial administration.'" *Quakenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996) (citations omitted).

Here, by allowing the State Legislature and then the State judiciary to take certain actions, this Court would be following constitutional mandates and would show a proper regard for federal-state relations. It is only appropriate, as the Supreme Court in the line of cases cumulating in *Growe* has held, that States be the arbiters of their own internal redistricting plans.

Not only have the plaintiffs jumped the gun, they have run to an inappropriate forum in an attempt to remove a constitutionally-based mandate from the hands of the State Legislature and the State judiciary. Accordingly,

should this Court not immediately dismiss this action in its entirety or not defer to the State Legislature and State judiciary, it should abstain from taking any action until it becomes apparent that the State Legislature and then the State judiciary will both not timely perform their duties.

## CONCLUSION

Based upon the foregoing, this Court lacks jurisdiction to hear this action due to lack of subject matter jurisdiction. In addition, the plaintiffs have failed to state a claim upon which relief can be granted. Accordingly, this action should be dismissed.

Additionally, and in the alternative, based upon established case law, there is precedent for this Court to defer this matter to the State Legislature and/or judiciary or to abstain from taking the case.

Therefore, the defendants respectfully request that the Court grant their Motion and dismiss this action in its entirety.

Dated this 30th day of June, 2011.

J.B. VAN HOLLEN
Attorney General

s/Maria S. Lazar
MARIA S. LAZAR
Assistant Attorney General
State Bar #1017150

Attorneys for Defendants

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 267-3519
(608) 267-2223 (fax)
*lazarms@doj.state.wi.us*

lazarms\baldus - redistricting\dismiss.brief.doc