IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

ALVIN BALDUS, CINDY BARBERA,
CARLENE BECHEN, ELVIRA BUMPUS,
RONALD BIENDSEI, LESLIE W. DAVIS,
III, BRETT ECKSTEIN, GEORGIA
ROGERS, RICHARD KRESBACH,
ROCHELLE MOORE, AMY RISSEEUW,
JUDY ROBSON, JEANNE SANCHEZ-
BELL, CECELIA SCHLIEPP, and TRAVIS
THYSSEN,

       Plaintiffs,

    v.                             Case No. 11-C-00562

Members of the Wisconsin Government
Accountability Board, each only in his official
capacity:  MICHAEL BRENNAN, DAVID
DEININGER, GERALD NICHOL, THOMAS
CANE, THOMAS BARLAND, and
TIMOTHY VOCKE,[1] and KEVIN
KENNEDY, Director and General Counsel
for the Wisconsin Government
Accountability Board,

       Defendants.

DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS AMENDED
COMPLAINT AND REPLY TO RESPONSE TO PENDING MOTION TO DISMISS

---

[1]Timothy Vocke was appointed to the Government Accountability Board on June 17, 2011, replacing Gordon Myse—one of the original named defendants. Plaintiffs have substituted Mr. Vocke in the caption of their most recent pleadings. Pursuant to Fed. R. Civ. P. 25(d), such substitution is automatic, but should be presented to the Court.  Defendants seek such automatic substitution here.

## INTRODUCTION

Following the defendants' Motion to Dismiss the original Complaint, the plaintiffs have filed an Amended Complaint; yet, interestingly—and somewhat ironically—this Amended Complaint has been filed before the legislative boundaries set by the State Legislature have been approved by the Governor and signed into law. In the original Complaint, the plaintiffs decried the "fact" that the State Legislature would never act in time for the Spring 2012 elections. In the Amended Complaint, the plaintiffs complain that the State Legislature acted too promptly albeit prior to local, municipal redistricting.

Regardless, the Amended Complaint fails to deflect the main argument raised in the original Motion to Dismiss: the United States Supreme Court has held that redistricting legislation lies first in the hands of a state's legislature and then in that state's judiciary. *See Growe v. Emison*, 507 U.S. 25, 33 (1993) and *Miller v. Johnson*, 515 U.S. 900, 915 (1995).

The plaintiffs' anticipatory Amended Complaint must be dismissed because this Court lacks subject matter jurisdiction—how can this Court issue any orders, declarations, or injunctions regarding two bills which, as of the date of the Amended Complaint, had *not* been passed into law? Again, there is no present harm—there is no redistricting law which can be declared constitutional or not as of the date of the Amended Complaint. Parties cannot "jump ahead" and file advisory request complaints in order to be the first lawsuit filed. There is a proper time to file an action. The Amended Complaint was prematurely filed and should not be allowed to stand.

Moreover, while mentioned in passing in their Amended Complaint, the plaintiffs disregard the fact that the *one* law which was passed before they filed the Amended Complaint (2011 Wisconsin Act 39 which goes into effect on August 9, 2011) establishes the proper means and venue for legal challenges to redistricting legislation, and that venue is not in this federal court.

What the plaintiffs are attempting to do, by filing this lawsuit, then immediately amending the Complaint following the passage of redistricting maps (but prior to their enactment into law) and then ignoring the redistricting challenge venue law, is to ensure that they are allowed to pick the forum they prefer. Such forum-shopping is not permissible. That being the case, and solely if this Court declines to dismiss this action, the defendants ask for this Court's deferral of this matter, or in the alternative, ask that this Court abstain from taking this matter.

Finally, the Third Claim in the Amended Complaint ("Legislative Districts Unnecessarily Disenfranchise 300,000 Wisconsin Citizens") is directly contrary to established law and, as a matter of law, should be dismissed for failing to state a claim upon which relief may be granted regardless of whether the entire action is dismissed or not.

## THE LAW

Pursuant to Fed. R. Civ. P. 12(b)(1), a defendant may file a motion to dismiss for "lack of subject-matter jurisdiction." The burden of proof for such a motion rests with the party who asserts federal jurisdiction. *United Phosphorus,*

*Ltd. v. Angus Chemical Co.*, 322 F.3d 942, 946 (7th Cir. 2003). In this case, the plaintiffs bear that burden.

In the case of a Fed. R. Civ. P. 12(b)(6) motion for failure to state a claim upon which relief may be granted, the complaint itself must be examined. It need not spell out in excruciating detail all relevant facts, but it must allege sufficient facts to raise the plaintiffs' right to relief above mere speculation. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Accordingly, a claim, or the entire complaint, should be dismissed "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Id.*, 550 U.S. at 558.

For the purposes of this Motion to Dismiss only, the allegations in the Amended Complaint shall be treated as if they are true. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 463 (7th Cir. 2010).

## STATEMENT OF THE CASE AND OF THE FACTS

Every ten years, pursuant to the United States Constitution, a national census is taken by the Bureau of Census, the United States Department of Commerce, to determine the population of each state. U.S. Const. art. I, § 2. (Amended Complaint, dated July 21, 2011, ["Amended Complaint"], ¶ 14). These decennial census are then used, in part, to determine the apportionment of both state and federal governmental districts in each state.

The defendant Government Accountability Board ("GAB") is an independent agency of the State of Wisconsin, which first began work in January 2008.[2] Wis. Stat. § 15.60 (Amended Complaint, ¶ 6(a)). It is the obligation of the GAB to oversee and administer Wisconsin's laws "relating to elections and election campaigns[.]" Wis. Stat. § 5.05(1). (Amended Complaint, ¶ 6(a)). As part of the GAB's statutory responsibilities, it is to notify each county clerk by the second Tuesday in May of an election year of the date of the primary and general elections and which offices are to be filled in those elections. Wis. Stat. §§ 10.01(2)(a) and 10.72. (Amended Complaint, ¶ 6(b)). The GAB has other election-related, statutory duties. *See* Wis. Stat. §§ 7.08(2) and 7.70(5). (Amended Complaint, ¶ 6(a)-(c)).

The first date listed in the Amended Complaint by which the GAB is to perform some of its statutory, election-related duties is the second Tuesday of May of an election year—or May 8, 2012. (Amended Complaint, ¶ 6(b)). The Court may take judicial notice, pursuant to Fed. R. Evid. 201, that that date is indeed May 8, 2012—more than eleven months from the date the initial Complaint was filed and more than ten months from the date the Amended Complaint was filed.

---

[2]The Court may take judicial notice, pursuant to Fed. R. Evid. 201, that the GAB was established in 2008, pursuant to 2007 Wisconsin Act 1, and was not in existence during the previous lawsuits each decade. "In ruling on a 12(b)(6) motion, a district court may take judicial notice of matters of public record without converting the 12(b)(6) motion into a motion for summary judgment." *Anderson v. Simon*, 217 F.3d 472 , 474-75 (7th Cir. 2000); *General Electric Capitol Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997).

On December 21, 2010, the Bureau of Census announced and certified the population for the State of Wisconsin, showing a slight population increase. (Amended Complaint, ¶ 15).

The plaintiffs concede that "[t]he state legislature has the primary responsibility . . . to enact a constitutionally-valid plan establishing the boundaries for the state's eight Congressional districts." (Amended Complaint, ¶ 22).

The plaintiffs seek to have the not-as-yet legally enacted redistricting maps declared unconstitutional and, in the absence of adoption of constitutional redistricting maps, to have this Court establish a judicial redistricting map.

ARGUMENT

MOTION TO DISMISS AMENDED COMPLAINT

I.    THIS ACTION MUST BE DISMISSED BECAUSE THE COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION BECAUSE THE REDISTRICTING BILLS HAVE NOT YET BEEN ENACTED INTO LAW.

In order to have standing such that a party may raise a claim, "a plaintiff must allege that she has suffered (1) an 'actual or imminent . . . invasion of a legally protected interest' (2) caused by the defendant that (3) 'a favorable decision is likely to redress.'" *Deida*, 192 F. Supp. 2d at 904 (quoting *Tobin for Governor v. Ill. State Bd. of Elections*, 268 F.3d 517, 527 (7th Cir. 2001). In order to assess whether a matter is "ripe," the Court must "'evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'"

*Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 687 n.3 (7th Cir. 1998) (quoting *Abbott Labs v. Gardner*, 387 U.S. 136, 149 (1967)).

"The basic rationale of the ripeness doctrine 'is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative [or legislative] policies, and also to protect the agencies [or, in this case, the State Legislature] from judicial interference until an administrative decision has been formalized [or, in this case, new legislative boundaries have been set] and its effects felt in a concrete way by the challenging parties.'" *Patel v. City of Chicago*, 383 F.3d 569, 572 (7th Cir. 2004). This is apropos in the given circumstance. Here, dismissing the case for a lack of ripeness will prevent this Court from entanglement in an abstract disagreement and from requiring decisions which may never become necessary.

This is the classic case of premature adjudication: the plaintiffs don't even attempt to hide the fact that *no* redistricting laws have been signed into law. They brush that off as an insignificant—and slightly inconvenient—fact.

However, it is not insignificant *or* inconvenient. It is a *fact*. A party may not commence a legal challenge to a law that does not yet exist. Thus, the "ripeness" argument made in the preceding Motion to Dismiss[3] is still viable especially because a party may not challenge the constitutionality of a bill before it is enacted into a law. *Goodland v. Zimmerman*, 243 Wis. 459, 468, 10 N.W.2d 180 (1943).

---

[3]*Ernst & Young v. Depositors Economic Protection Corp.*, 45 F.3d 530, 538 (1st Cir. 1995) ("Courts should always be hesitant to answer hypothetical questions.")

*See also State ex rel. Ozanne v. Fitzgerald,* 2011 WI 43, ¶ 8, ___ Wis. 2d ___, 798 N.W.2d 436. This is precisely what the plaintiffs are attempting to do here. The sole reason for this "immediate," anticipatory Amended Complaint is to prevent 2011 Wisconsin Act 39 from taking effect which would establish the legal procedure by which this challenge should be made. As noted below, such blatant, self-serving conduct should not be rewarded; indeed, plaintiffs should be required to follow the laws and to file their challenge, if any still exist after the redistricting laws are finally signed into law, in the State Supreme Court.

In a case with remarkably similar facts (a federal lawsuit seeking declaratory and injunctive relief initiated before the proposed redistricting plans were sent to the Governor for approval), a federal court granted the defendants' motion to dismiss on the grounds that the plaintiffs had "alleged no immediate harm, and their claims are contingent on future uncertainties, [and the] case [was] not ripe for review." *Carter v. Virginia State Board of Elections,* 2011 WL 1637942 (W.D. Va. April 29, 2011) at *2. The *Carter* court continued and stated "as the Constitution leaves states with the primary responsibility for the apportionment of state legislative districts, *Growe v. Emison*, 507 U.S. 25, 24 [sic] (1993), it would be repugnant to principles of federalism and the separation of powers to interfere with the General Assembly's *or governor's* prerogatives now." *Id.* (emphasis added). (That court even opined that the complaint could also have been dismissed for failure to state a claim upon which relief could be granted). *Id.* at *2 n.3.

Just like in *Carter*, the instant case should be dismissed at this time for lack of subject matter jurisdiction. Quite simply, there are no laws which may be adjudged unconstitutional or not and, thus, no laws upon which declarations or injunctions may properly be based.

II.    THE COURT SHOULD DEFER THIS MATTER TO THE STATE JUDICIARY, OR, IN THE ALTERNATIVE, SHOULD ABSTAIN FROM TAKING ANY ACTION.

A.    This Court should defer action to allow the State judiciary to respond to any legal challenges to the newly passed legislation which establishes the legislative boundaries.

The State Constitution vests the primary responsibility to redistrict legislative boundaries every ten years upon the State Legislature. Wis. Const. art. IV, § 3; U.S. Const. art. I, § 2; *Growe*, 507 U.S. at 34 ("We say once again what has been said on many occasions: reapportionment is primarily the duty and responsibility of the State through its legislature or other body, rather than of a federal court.") (quoting *Chapman v. Meier*, 420 U.S. 1, 27 (1975)). That is the body which is given the "first chance" to insure that the new population data is properly assessed and new boundaries are established to protect Wisconsin citizens' right to vote and to have equal representation. "Simply because an election law has become unconstitutional does not necessarily mean a federal court should step in to rewrite it, however." *Arrington v. Elections Board*, 173 F. Supp. 2d 856, 860 (E.D. Wis. 2001).

There may be times where the State Legislature—for whatever reason—is not able to timely act. Upon that inability to timely establish boundaries, the state

judiciary is the next venue for resolution. It is only after such state judicial review that the federal courts should step into the fray.

That is precisely the case here: the State Legislature has acted (or will, upon the Governor's signature) and has even established a procedure which statutorily codifies the United States Supreme Court preference that the state judiciary is to be the first avenue of recourse for any constitutional challenges to redistricting legislation. *See* 2011 Wisconsin Act 39.

Federal courts have been advised to respect the state's rights to establish its own legislative boundaries—by the Legislature and *then* the state judiciary. "In the reapportionment context, the [United States Supreme] Court has required federal judges to defer consideration of disputes involving redistricting where the State, through its legislative *or* judicial branch, has begun to address that highly political task itself." *Growe*, 507 U.S. at 33 (emphasis in original). Here, the State Legislature has completed redistricting plans which may soon be signed into law. Even without 2011 Wisconsin Act 39, the state judiciary is the next appropriate venue for any constitutional challenges.

"Absent evidence that these state branches will fail timely to perform that duty, a federal court must neither affirmatively obstruct state reapportionment nor permit federal litigation to be used to impede it." *Id.* at 34; *Branch v. Smith*, 538 U.S. 254, 261 (2003). "Federal-court review of districting legislation represents a serious intrusion on the most vital of local functions." *Miller v. Johnson*, 515 U.S. 900, 915 (1995). "It is well settled that 'reapportionment is primarily the

duty and responsibility of the State.'" *Id.* (quoting *Chapman v. Meier*, 420 U.S. 1, 27 (1975)).

Pursuant to the United State Supreme Court's dictates, first set forth in 1965 in *Scott v. Germano*, 381 U.S. 407 (1965) (*per curiam*), that state legislatures and judiciaries are to have the primary redistricting responsibilities, it is appropriate that this Court defer any action in this case and allow the State judiciary to fulfill its duties.

The State and Federal Constitutions require that a redistricting plan be established in advance of the next election, it does not require that there be time for an appeal of such a plan. State agencies are to adopt a constitutional plan "within ample time . . . to be utilized in the [upcoming] election[.]" *Germano*, 381 U.S. at 409. The Constitution "does not require appellate review of the plan prior to the election, and such a requirement would ignore the reality that States must often redistrict in the most exigent circumstances—during the brief interval between completion of the decennial federal census and the primary season for the general elections in the next even-numbered year." *Growe*, 507 U.S. at 35.

Accordingly, it is proper for this Court to defer any action in this case until Spring of 2012, if at all, to allow the state judiciary to follow the statutory process set forth in 2011 Wisconsin Act 39 as well as the dictates enumerated in *Growe*.

B.	In the alternative, it is appropriate for this Court to abstain from taking this matter.

A motion to dismiss based upon abstention principles also "raises the question of whether a court should exercise subject matter jurisdiction." *Miller Brewing Co. v. Ace U.S. Holdings, Inc.*, 391 F. Supp. 2d 735, 739 (E. D. Wis. 2005). The Amended Complaint and "other materials relating to the exercise of jurisdiction" may be considered without converting the motion to dismiss into one for summary judgment. *Id.* Typically, the doctrine of abstention is "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976) (quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188 (1959)). However, when an action—such as the present case—is brought under the Federal Declaratory Judgment Act, "the Supreme Court has developed a separate abstention doctrine under which district courts may more easily abstain from exercising jurisdiction." *Miller Brewing Co.*, 391 F. Supp. 2d at 739. The Supreme Court has interpreted that Act's language indicating that the courts "may" declare the rights and other legal relations "as granting district courts discretion as to whether to exercise jurisdiction under the statute." *Id.*; *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286-88 (1995).

Accordingly, here, there is every reason that this Court should *decline* to exercise its jurisdiction and require the plaintiffs to file their action in the appropriate State court following the procedures set forth in 2011 Wisconsin Act 39.

In *Growe*, the United States Supreme Court held that a federal district court had erred by not deferring to a state court's attempts to redistrict following a decennial census. *Growe*, 507 U.S. at 32. The Court in *Growe* further explained when a federal court should abstain from exercising jurisdiction when a state court has concurrent jurisdiction, stating that it has "found abstention necessary, for example, when the federal action raises difficult questions of state law bearing on important matters of state policy, or when federal jurisdiction has been invoked to restrain ongoing state criminal proceedings." *Id.* While in this case there is, as of yet, no concurrent state action regarding redistricting, that is solely because the plaintiffs have expressly chosen to disregard the dictates of 2011 Wisconsin Act 39.

There is no dispute that this Court would have the jurisdiction to hear this matter and to appoint a panel of judges to establish legislative boundaries should it determine that the legislative boundaries set by the Wisconsin Legislature are not constitutionally-valid if there is no state court challenge filed pursuant to 2011 Wisconsin Act 39. However, just because a federal court has the discretion to so act, it does not necessarily follow that the Court need do so in each case. *Arrington*, 173 F. Supp. at 860. The United States Supreme Court's abstention doctrines must be taken into account. Abstention is premised upon the theory that "federal courts may decline to exercise their jurisdiction, in otherwise "'exceptional circumstances,'" where denying a federal forum would clearly serve an important countervailing interest, for example, where abstention is warranted by considerations of 'proper constitutional adjudication,' 'regard for federal-state

Case 2:11-cv-00562-JPS   Filed 08/04/11   Page 13 of 22   Document 18

relations,' or 'wise judicial administration.'" *Quakenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996) (citations omitted).

Here, by allowing the State judiciary to take certain actions, this Court would be following constitutional mandates and would show a proper regard for federal-state relations. It is only appropriate, as the Supreme Court in the line of cases originating with *Growe* has held, that States be the arbiters of their own internal redistricting plans—be it by their Legislature *or* by their judiciary.

The plaintiffs have chosen to disregard a state statute and have run to another forum in an anticipatory attempt to remove a constitutionally-based mandate from the hands of the State judiciary. Accordingly, should this Court not immediately dismiss this action in its entirety or not defer to the State judiciary, it should abstain from taking any action until it becomes apparent that the State judiciary will not timely perform its duties pursuant to 2011 Wisconsin Act 39.

III. 2011 WISCONSIN ACT 39 SETS FORTH THE PROCEDURE FOR CHALLENGING THE CONSTITUTIONALITY OF REDISTRICTING PLANS.

The newly enacted 2011 Wisconsin Act 39 establishes the procedure for legal challenges to redistricting maps. The plaintiffs expressly recognize that this law has been passed and the procedure it establishes, but they assert that the State Legislature does not have the authority to have that law enforced. (Response Brief at 9-10).

In a strikingly similar case in North Carolina, that state's legislature enacted new redistricting plans and, on the same date, enacted a statute which provided for

venue to lie exclusively in one county. *Stephenson v. Bartlett*, 595 S.E.2d 112, 115 (N.C. 2004). The court there, finding that there wasn't an ongoing case regarding redistricting, held that there was no vested right in venue in another county for cases filed after the law was enacted. *Id.*, 595 S.E.2d at 116-17. It also questioned whether there was any such vested right, but declined to opine on that point. *Id.*, 595 S.E.2d at 116. That court stated that the North Carolina legislature was within its rights to establish venue for redistricting challenges because "[v]enue is a procedural matter, and, . . . the General Assembly has the constitutional authority to establish rules of procedure . . . ." *Id.*, 595 S.E.2d at 118 (citation omitted).

That is precisely what the Wisconsin State Legislature has done here: it has established rules of civil procedure for the courts of the state. It has done so in a manner which mirrors the *Growe v. Emison* preference that state judiciaries be the second avenue of choice for redistricting after a state legislature has either acted or failed to act.

It is not clear whether the plaintiffs are challenging 2011 Wisconsin Act 39 itself as being unconstitutional (and if so, they have to do more than the implied references in their Response), but the law—as are all laws—is presumed

constitutional,[4] and no challenges have yet been made to its validity. If the plaintiffs put the cart before the horse in filing their initial Complaint without waiting to see if a redistricting plan would be enacted, they have done so even more here where they are implicitly challenging the constitutionality of 2011 Wisconsin Act 39 without making such a legal challenge.

Here, 2011 Wisconsin Act 39 was enacted on July 25, 2011 and shall be published on August 8, 2011, thus, making its effective date August 9, 2011. Disregarding the United States Supreme Court precedence and preference for state judiciary oversight of redistricting challenges and then by filing this anticipatory Amended Complaint before the laws complained of have been enacted or given effect, it is patently clear that plaintiffs are attempting to circumvent 2011 Wisconsin Act 39 and the will of the State Legislature. This Amended Complaint is moot until the redistricting laws are given effect—and by that date, 2011 Wisconsin Act 39 will be the law of Wisconsin. The plaintiffs should not be entitled to file a premature constitutional challenge solely in order to evade a law which was duly enacted and signed.

What the plaintiffs have done here falls within the exceptions to the "first filed" rule. The general maxim is that the courts give priority to the first filed

---

[4]*See Almendarez-Torres v. U.S.*, 523 U.S. 224, 238 (1998) (the canon of "constitutional doubt" is "'followed out of respect for Congress, which [the courts] assume legislates in the light of constitutional limitations.'") and *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992) ("As a general rule, 'legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality.'") (quoting *McGowan v. Maryland*, 366 U.S. 420, 425-26 (1961)).

lawsuit. However, this "rule is not meant to be rigid, mechanical or inflexible, but is to be applied in a manner that best serves the interests of justice." *Barnett v. Alabama*, 171 F. Supp. 2d 1292, 1296 (S.D. Ala. 2001) (regarding challenges to the constitutionality of redistricting plans). The federal courts have held that there "is not a mandate directing wooden application of the rule without regard to rare or extraordinary circumstances, inequitable conduct, bad faith, or forum shopping." *EEOC v. Univ. of Pa.*, 850 F.2d 969, 972 (3d Cir. 1988). Here, almost all of these exceptions apply. When, if ever, does a plaintiff file a challenge to the constitutionality of law *before* it is enacted—and if they do so file, there can be no dispute that legally their action is without merit. This is the very definition of rare and extraordinary. Moreover, by filing before there is a law, the plaintiffs are inequitably trying to evade the effect of another law which has already been passed and signed. There is no doubt that this is patent forum-shopping at its worst. Finally, with respect to bad faith, the defendants leave that for this Court to determine.

If the plaintiffs file their challenge to the redistricting laws in the time-appropriate fashion, *i.e.*, after the laws are enacted, 2011 Wisconsin Act 39 will dictate how such challenges should be made.

Accordingly, this Court should abstain from taking this legal challenge.

IV.     THE PLAINTIFFS HAVE FAILED TO STATE A CLAIM UPON
        WHICH RELIEF CAN BE GRANTED WITH RESPECT TO
        THEIR THIRD CLAIM, THUS, THAT CLAIM MUST BE
        DISMISSED.

The Seventh Circuit, building upon *Twombly,* has established "two easy-to-clear hurdles" for a federal complaint. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008). They are as follows:

> First, the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests. Second, its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a "speculative level"; if they do not, the plaintiff pleads itself out of court.

*Id.* (quoting *Equal Employment Opportunity Commission v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (citations omitted)).

Here, the Third Claim in the Amended Complaint seeks relief for "legislative districts [which] unnecessarily disenfranchise 300,000 Wisconsin citizens." (*See* Amended Complaint, ¶¶ 39-44). In essence, the plaintiffs are complaining that some individuals' right to vote for their representatives will be postponed. (Amended Complaint, ¶ 41). However, "'the right to vote, *per se*, is not a constitutionally protected right.'" *Rodriquez v. Popular Democratic Party*, 457 U.S. 1, 8 (1982) (quoting *San Antonio Independent School Dist. v. Rodriquez*, 411 U.S. 1, 35 n.78 (1973). In particular, the United States Supreme Court has "previously rejected claims that the Constitution compels a fixed method of choosing state or local officers or representatives." *Rodriquez*, 411 U.S. at 8. "The Constitution provides that States may prescribe '[t]he Times, Places and Manner of holding Elections for Senators and Representatives,' Art. I, § 4, cl. 1, and the Court

- 18 -

therefore has recognized that States retain the power to regulate their own elections." *Burdick v. Takushi*, 504 U.S. 428, 433 (1992). This falls within those powers.

This very scenario has been addressed in other federal and state courts as well, with none holding that a postponement of an election following redistricting was a deprivation of a citizen's right to vote. *Mader v. Crowell*, 498 F. Supp. 226, 231 (M.D. Tenn. 1980) ("[t]he temporary disenfranchisement of these voters violates neither the equal protection clause nor any other constitutional provision."); *Pate v. El Paso County, Texas,* 337 F. Supp. 95, 96 (W.D. Tex. 1970), *aff'd*, 400 U.S. 806 (1970); *In re Reapportionment of the Colorado General Assembly*, 647 P.2d 191, 198 (Col. 1982) (*en banc*); *State Elections Board v. Bartolomei*, 434 N.E.2d 74, 78 (Ind. 1982) ("this impingement upon the right to vote is the natural and unavoidable consequence of redistricting and maintaining a system of staggered terms of office for members of the same governmental body"); and *People ex rel. Snowball v. Pendegast*, 31 P. 103, 105 (Cal. 1892) ("[u]ndoubtedly these [delays] are inconvenient and deplorable results, but it must be assumed that they were foreseen and deliberately accepted by the framers of the constitution."). Thus, courts have considered such postponements the "inevitable consequences of redistricting[.]" *Republican Party of Oregon v. Keisling*, 959 F.2d 144, 145 (9th Cir.), *cert. denied*, 504 U.S. 914 (1992).

In reality, "it would be a practical impossibility to redistrict without depriving some voters of the right to vote for a legislative representative for a

period of 2 years." *Pick v. Nelson*, 528 N.W.2d 309, 317-18 (Neb. 1995). That being the case, there is no legal merit—thus no claim stated by the Third Claim in the Amended Complaint.

Accordingly, the Third Claim in the Amended Complaint must be dismissed in its entirety for failing to state a claim upon which relief may be granted.

## REPLY TO PLAINTIFFS' RESPONSE TO INITIAL MOTION TO DISMISS

While the original Motion to Dismiss has been rendered moot, there are a few arguments in the plaintiffs' Response Brief to that Motion which require a reply as the arguments are based upon the Amended Complaint and not the initial Complaint. Despite repeated references to the "now-overtaken Motion to Dismiss," the plaintiffs do not confine their Response to that Motion.

## V.    THE PLAINTIFFS MISREPRESENT WHAT THE 2001 CASE HELD WITH RESPECT TO STANDING.

It is true that the court in *Baumgart v. Wendelberger*, E.D. Wis. Case Nos. 01-C-121 and 02-C-366 (also referred to as "*Arrington v. Elections Board*") held that there was standing for that court to proceed as of November 2001, when it declined to dismiss the case for lack of ripeness. *Arrington*, 173 F. Supp. 2d at 866-67. However, the plaintiffs fail to note that the court then stayed all substantive proceedings until February 1, 2002—the year of the next election. *Id.*, 173 F. Supp. 2d at 867. The dissent, aptly noting that his fellow judges were implying that there would not be a real controversy before February 2002, argued

that the majority was actually holding the case until it became ripe and that that was inappropriate. *Id.*, 173 F. Supp. 2d at 869.

## VI. THE PLAINTIFFS MISREAD THE MENTION OF ONE-PARTY CONTROL.

The defendants' hat was not hung on the fact that merely because one political party held both the Legislative and Executive branches that a constitutionally valid legislative redistricting plan was guaranteed. (Response at 5). Rather, that fact was referenced in support of the argument—which has since been proven 98% true—that it was more likely than not that a redistricting plan would be passed and enacted into law unlike prior decades. The defendants have never contended that standing for constitutional challenges only exists if there are splits in the legislative and executive branches.

To the contrary, the sole point being made was that *a* plan was likely to be enacted. And, should the Governor sign the two Bills, that will indeed be the case.

## CONCLUSION

Based upon the foregoing, this Court lacks jurisdiction to hear this action due to lack of subject matter jurisdiction. In addition, this Court should follow the dictates of the United States Supreme Court and the procedure set forth in 2011 Wisconsin Act 39 and defer this matter to the Wisconsin State Supreme Court. In the alternative, this Court could abstain from taking this case at all—leaving it to the State judiciary.

Finally, the plaintiffs have failed to state a claim upon which relief can be granted with respect to the Third Claim. Accordingly, this action should be dismissed in its entirety. Or, at the very least, the Third Claim should be dismissed with prejudice.

Therefore, the defendants respectfully request that the Court grant their Motion and dismiss the Amended Complaint in its entirety.

Dated this 4th day of August, 2011.

J.B. VAN HOLLEN
Attorney General

s/Maria S. Lazar
MARIA S. LAZAR
Assistant Attorney General
State Bar #1017150

Attorneys for Defendants

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 267-3519
(608) 267-2223 (fax)
*lazarms@doj.state.wi.us*

lazarms\baldus - redistricting\dismiss.brief amended.doc