UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ALVIN BALDUS, CINDY BARBERA, CARLENE
BECHEN, ELVIRA BUMPUS, RONALD BIENDSEIL,
LESLIE W. DAVIS III, BRETT ECKSTEIN, GLORIA
ROGERS, RICHARD KRESBACH, ROCHELLE
MOORE, AMY RISSEEUW, JUDY ROBSON, JEANNE
SANCHEZ-BELL, CECELIA SCHLIEPP, TRAVIS
THYSSEN,

          Plaintiffs,

v.

Members of the Wisconsin Government Accountability
Board, each only in his official capacity:
MICHAEL BRENNAN, DAVID DEININGER,
GERALD NICHOL, THOMAS CANE,
THOMAS BARLAND, and TIMOTHY VOCKE, and
KEVIN KENNEDY, Director and General Counsel for the
Wisconsin Government Accountability Board,

          Defendants.

Civil Action
File No. 11-cv-562
(Three-judge panel/request pending)

---

**BRIEF IN RESPONSE TO DEFENDANTS'
MOTION TO DISMISS AMENDED COMPLAINT**

---

Whatever the authority or the ambition of the state legislature, it does not extend to the federal rules of civil procedure, the statutes defining federal jurisdiction, or the U.S. Constitution. Nor does the legislature have the power to shield its own legislation from review by the federal courts, let alone mandate the plaintiffs' choice of forum.

On August 9, 2011, the Governor signed into law the Congressional and legislative redistricting legislation that is the subject of the plaintiffs' amended complaint. 2011 Wis. Act 43; 2011 Wis. Act 44. Since the landmark decision in *Baker v. Carr*, 369 U.S. 186 (1962), the federal courts—including, at least three times, this Court—have been the appropriate forum

for adjudicating federal constitutional and statutory rights in redistricting. The state would change that, whether by invoking a curious new state statute or the abstention doctrine. Yet, there is no state court proceeding to which this Court can or should defer. Even were there, moreover, it would not change the plaintiffs' substantive or procedural rights.

On August 4, 2011, the state filed a motion to dismiss the amended complaint based on the lack of subject matter jurisdiction and, with respect to just one of the six claims, a failure under Rule 12(b)(6). The Court should deny the motion to dismiss and permit this case to proceed under 28 U.S.C. § 2284 because, in the words of the statute, it is an "action … challenging the constitutionality of the apportionment of congressional districts or … [a] statewide legislative body."

## I. THE PLAINTIFFS HAVE STATED A CLAIM FOR RELIEF.

The state contends that the claim involving the disenfranchisement of 300,000 citizens should be dismissed.[1] The disenfranchisement claim in the amended complaint is not "merely" a claim that the right to vote has been postponed—from four to six years through the law's designation of new senate district numbers. Rather, the amended complaint asserts that the massive statutory deprivation of the right to vote in at least one election has occurred unnecessarily and in such *extraordinary* numbers that it is a wholesale denial of voting rights and a violation of equal protection.

According to the state, it would be practically impossible to redistrict without depriving—for a period of at least two years—some voters of the right to vote for a state senator every four years. *See* Defendants' Brief in Support of Motion to Dismiss Amended Complaint and Reply to Pending Motion to Dismiss ("Def. Br."), 19-20. Although cases on which the state

---

[1] The defendants have not challenged any other substantive claim in the Amended Complaint, in effect conceding that each of the remaining allegations states a claim upon which relief may be granted.
2
Case 2:11-cv-00562-JPS -DPW -RMD   Filed 08/23/11   Page 2 of 12   Document 21

relies recognize that disenfranchisement at times may be unavoidable, those same cases hold that any such disenfranchisement must be limited, employed only to the extent absolutely necessary. *See*, *e.g.*, *Pick v. Nelson*, 528 N.W.2d 309, 317-18 (Neb. 1995); *In re Reapportionment of Colorado General Assembly*, 647 P.2d 191, 198 (Colo. 1982); *State Election Bd. v. Bartolomei*, 434 N.E.2d 74, 78 (Ind. 1982).

More importantly, however, the state fails to acknowledge that *this* Court already has unambiguously concluded that a legislatively-drawn redistricting plan is fatally flawed if it unnecessarily disenfranchises citizens. *Republican Party v. Elections Bd.*, 585 F. Supp. 603, 605-06 (E.D. Wis.) (Bauer, Evans, & Gordon, JJ.), *vacated on other grounds*, 469 U.S. 1081 (1984). This Court has recognized that the temporary disenfranchisement of citizens is "constitutionally tolerated" only when it is an "absolute necessity" or when it is "unavoidable." *Id.* at 606 (citations omitted). The subsequent federal redistricting cases here also have highlighted efforts to limit the number of disenfranchised voters. *See Prosser v. Elections Bd.*, 793 F. Supp. 859, 871 (W.D. Wis. 1992); *Baumgart v. Wendelberger*, Case Nos. 01cv121 and 02cv366, 2002 WL 34127471, at *7 (E.D. Wis. May 30, 2002), *amended by* 2002 WL 34127473 (E.D. Wis. July 11, 2002).[2]

As the amended complaint asserts, the 2011 redistricting legislation goes well beyond the "absolutely necessary" and "unavoidable." There are at least two districts (Senate Districts 2 and 32) where only a few, if any, citizens needed to be moved. Yet tens of thousands of citizens were moved from even-numbered districts into odd-numbered districts, unnecessarily delaying (and, thereby, denying) the right to vote for two years. *See* Am. Compl. ¶ 42(a). Similarly, three

---

[2] The state's failure to even refer to this Court's 1984 decision—on the only substantive argument it makes in its brief—is inexplicable. It relies instead on a handful of state court decisions, characterizing them as "established law." Def. Br. at 3. Ironically, the 1984 federal district court decision here, ignored by the state, cited with approval the same 1982 Colorado decision now cited by the state as established law.

3

Case 2:11-cv-00562-JPS -DPW -RMD    Filed 08/23/11   Page 3 of 12   Document 21

districts (Senate Districts 12, 14 and 24) needed to add citizens to meet the equal population requirement, but tens of thousands were actually removed from the districts and placed in odd-numbered districts, unnecessarily disenfranchising them. *Id*., ¶ 42(b). Finally, four districts (Senate Districts 16, 20, 22, and 28) needed to lose population, but the legislation unnecessarily moved tens of thousands of additional people from these even-numbered districts into odd-numbered districts. *Id*., ¶ 42(c).

The state cannot seriously contend that it would have been a practical impossibility to redistrict without so massively depriving so many of the right to vote. The legislation in no way suggests that the disenfranchisement of the vast majority of these citizens was either "absolutely necessary" or "unavoidable." Indeed, the state appears to have gone out of its way to affirmatively disenfranchise hundreds of thousands—supporting, not incidentally, the gerrymandering claim that is also part of the amended complaint. *See id*., ¶¶ 55-61. The 1984 legislation, found unconstitutional by this Court, disenfranchised almost 175,000 citizens. This legislation dramatically exceeds that total in its effect.

The redistricting legislation is fatally flawed because it unnecessarily disenfranchises citizens, and the state's motion to dismiss this claim should be denied. The state's only other arguments, at this stage of the case, are procedural and equally unavailing.

II. **THE PUBLISHED LEGISLATION IS NOW LAW, ELIMINATING THE STATE'S RIPENESS CHALLENGE.**

Notwithstanding the state's suggestion that the ripeness doctrine "prevent[s] this Court from entanglement in an abstract disagreement," the state's new law is just that, the law. It is hardly "abstract" or "hypothetical." Def. Br. at 7. The right to federal judicial review of the state's new legislative and Congressional districts embodied in Chapters 3 and 4, Wis. Stat., should not be open to serious debate—especially on "subject matter" jurisdiction grounds.

4

Case 2:11-cv-00562-JPS -DPW -RMD    Filed 08/23/11    Page 4 of 12    Document 21

Here, the state first moved to dismiss the initial complaint, arguing that it was a virtual certainty that the unified legislative and executive branches of state government *would* adopt redistricting legislation. *See*, *e.g.*, Defendants' Brief In Support of Their Motion to Dismiss (filed June 30, 2011) at 19. Upon the legislation's adoption, the plaintiffs immediately filed the amended complaint that challenges—on a range of grounds—the validity of the new districts. The state's prediction proved true. Yet the state now contends that the amended complaint was "premature" and "anticipatory." Def. Br. at 2.

When the state asked "how can this Court issue any orders, declarations, or injunctions regarding two bills ... which … had *not* been passed into law?," the state knew full well that the bills *would* become law because the bills had been presented to the Governor on August 2, 2011, two days before the state filed its motion to dismiss the amended complaint. Def. Br. at 2; *see* Bill History of SB 148 and SB 149; Wis. Const. art. V, § 10(1) and (3).[3] The state knew full well both the fact that the Governor would sign the redistricting legislation and the precise day he would do that—on August 9, 2011. Yet it filed the motion to dismiss and supporting brief despite those facts. Protests that the Governor might not sign the law were, at best, always disingenuous (and now that the Governor has signed the law, moot).

The state erroneously asserts that the plaintiffs are attempting to prevent the new state venue statute, 2011 Act 39, from taking effect. Def. Br. at 8. It is a perplexing claim. The plaintiffs did not ask this Court to enjoin the Governor from signing any of the three redistricting bills, nor have they asked the Court to prevent the secretary of state from publishing the laws once enacted. Based (at least in part) on the expressed confidence of the defendants in their first motion to dismiss, the plaintiffs operated under the safe (and now validated) presumption that the

---

[3] Even had the Governor not signed the bills, they would have become law automatically. *See* Wis. Const. art. V, § 10(3).

5

legislation would become law. Now challenging its substance, the plaintiffs contend the law violates the federal and state constitutions.

The defendants' reliance on a 1943 state decision to support their contention—that a party cannot challenge a bill before it is enacted into law—is both moot and misplaced. *Id.* at 7-8 (citing *Goodland v. Zimmerman*, 243 Wis. 459, 468, 10 N.W.2d 180 (1943) (other citation omitted)). In *Goodland*, the legislature passed a bill establishing the State Bar of Wisconsin, the Governor vetoed the bill, the Senate overrode the veto and the Assembly concurred in the veto override. The plaintiffs sued to prevent the secretary of state from publishing the law, and a circuit court granted the injunction.

The Wisconsin Supreme Court reversed, concluding that the legislative process was not completed until the enactment had been published and, because its publication had been enjoined, there was no law for the court to review. *Id.* at 466. Once the legislative process had been completed, however, the Supreme Court recognized, a court may then consider whether the law enacted is valid. *Id.* at 470-71 (citing *Marbury v. Madison*, 5 U.S. 137, (1803)). (In fact, the court explained that it would review the law, once published, upon its own motion. 243 Wis. at 476.)

The new legislative and Congressional districts are law. The state even has conceded that once the Governor signed the two redistricting bills, the boundaries would be established by law. Def. Br. at 10. He has. They are. The secretary of state has published the laws. Wis. Stat. §§ 14.38(10), 35.095(3)(b) (2009-10); 2011 Wisconsin Acts 43 and 44, Legal Notice, Wis. State J., Aug. 23, 2011, at A4. The legislative process having been completed, any court may now consider whether that law is valid. 243 Wis. at 470-71; *Marbury*, 5 U.S. 137.

Moreover, arguments about timing ignore reality. Under 2011 Act 39, any changes to Wisconsin's legislative districts will have a trickle-down effect, compelling municipalities to alter and re-draw their ward and district boundaries. The state will need local district boundaries in place no later than November 15, 2011 to meet its statutory requirements for the April 2012 elections. *See* Wis. Stat. § 10.06(1). Accordingly, the review of the constitutional and statutory validity of the redistricting statute is in no way premature; it is incumbent upon the federal judiciary to evaluate the significant constitutional and statutory infirmities of the law before they govern Wisconsin's April 2012 elections.

### III. THE STATE CANNOT DICTATE THE BOUNDARIES OF FEDERAL JURISDICTION.

The state is not circumspect in its assertion of authority. The new state venue statute, it declares, "establishes the proper means and venue for legal challenges to redistricting legislation, and that venue is not in this federal court." Def. Br. at 3. Accordingly, the state would have this Court "*require* the plaintiffs to file their action …" in state court. *Id*. at 12 (emphasis added).

To be sure, this new law on its face dictates the venue for redistricting litigation brought in state court. *See* 2011 Wisconsin Act 39, § 28 (establishing venue before a three-judge panel and instructing clerks for the county where any state redistricting challenge has been filed to notify the clerk of the Supreme Court).[4] However, this statute neither requires nor authorizes the state courts to take jurisdiction over federal litigation. Nor could it. Yet, the state contends this new statute "establish[es] the legal procedure by which *this* challenge should be made." Def. Br. at 8 (emphasis added). That is a remarkable proposition.

---

[4] Whether the legislature may establish procedures for state courts is not at issue in this lawsuit—although it raises its own separation of powers questions. Interestingly, the "strikingly similar" case on which the state relies has very little in common with the present case. The North Carolina Supreme Court concluded that an action *in state court* filed *after* a law establishing a three-judge panel was enacted must be heard by a three-judge panel, as established by the state's law. *Stephenson v. Bartlett*, 595 S.E.2d 112 (N.C. 2004). Here, the action was filed in federal court, prior to the legislature's enactment of 2011 Wisconsin Act 39.

The federal courts, under federal law, determine their jurisdiction—not state legislatures. Indeed, since at least 1908, federal law has provided for the adjudication by three-judge courts of redistricting litigation and a direct appeal to the U.S. Supreme Court. *See* S. Rep. 94-204, at 2 (1975) *reprinted in* 1976 U.S.C.C.A.N. 1988, 1989. The legislature certainly can attempt to establish rules "for the courts of the state," Def. Br. at 15, but it *cannot* attempt to establish federal rules of civil procedure. While the "will of the Legislature" in passing 2011 Act 39 may well be transparent, it cannot usurp federal jurisdiction over claims involving rights guaranteed under the U.S. Constitution and statutes.

### IV. ABSTENTION IS NOT ONLY INAPPROPRIATE, IT IS IMPERMISSIBLE.

The parties already have briefed the abstention issue. (*See* Defendants' Brief in Support of Their Motion to Dismiss at 21-24; Plaintiffs' Brief in Response to Defendants' Motion to Dismiss at 8-10). There is little need for more extensive discussion here.

In the redistricting context, the U.S. Supreme Court has never required federal district courts to automatically abstain when there is a pending state court action and, instead, has directed federal courts to retain jurisdiction and set a deadline for the state to adopt valid district boundaries, provided that the state can do so with ample time for the plan to be utilized. *Scott v. Germano*, 381 U.S. 407, 409 (1965); *Growe v. Emison*, 507 U.S. 25, 33-34 (1993). Importantly, these cases involved state courts actively reviewing or creating district boundaries. *See*, *e.g.*, *Growe*, 507 U.S. at 42 ("The District Court erred in not deferring to the state court's efforts to redraw Minnesota's state legislative and federal congressional districts.").

The plaintiffs are not aware of any authority—and the defendants cite none—for the state's contention that a federal court should abstain (or even defer) when there is no action pending in state court (nor any authority that would have this Court "require" the plaintiffs to

8

re-file their lawsuit in state court). *See* Def. Br. at 12. Accordingly, even were there state court proceedings actively reviewing or redrawing the new statutory boundaries, abstention would not be the appropriate course of action for this Court.

To re-state the obvious, there is no pending state court challenge. The state actually concedes: "There is no dispute that this Court would have the jurisdiction to hear this matter ... should it determine that the legislative boundaries set by the Wisconsin Legislature are not constitutionally-valid *if* there is no state court challenge...." *Id*. at 13. Yet, it appears to be lost on the state that there is, in fact, no pending state court challenge. The state courts cannot assert jurisdiction *sua sponte*. Notably, the last time the state courts engaged in redistricting was almost 50 years ago. *See* A. Clark Hagensick, "Wisconsin," in *Reapportionment Politics: The History of Redistricting in the 50 States*, 348 (Leroy Hardy, Alan Heslop, and Stuart Anderson eds. 1981). Judicial legislative plans were last implemented by the state supreme court in *State ex rel. Reynolds v. Zimmerman*, 22 Wis. 2d 544, 126 N.W.2d 551 (1964).

Moreover, even were there a pending state court challenge, this court need not abstain: federal courts have the authority to review and enjoin boundaries drawn by a state legislative or judicial branch or legislation upheld by a state court. Federal courts may move forward with redistricting litigation even concurrently with state court proceedings if the federal court is concerned that the state will fail to adopt a plan in a timely fashion. *See Branch v. Smith*, 538 U.S. 254, 260, 266 (2003).

Even focusing on cases outside the redistricting context, abstention is not appropriate here. The state appears to be advocating that this Court employ *Burford* abstention, which is appropriate "only where there are difficult questions of state law bearing on policy problems whose importance transcends the result in the case." *Ryan v. State Bd. of Elections*, 661 F.2d

9

1130, 1135 (7th Cir. 1981) (addressing the abstention doctrine credited to *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943)) (other citations omitted). However, *Burford* abstention applies to cases involving state regulatory issues where a federal court decision would interfere with a state program. 661 F.2d at 1135-36. There are no state regulatory issues at issue here—only constitutional and statutory rights.

In addition, even were this court to (mis)apply the *Burford* abstention doctrine, contrary to the state's assertion, this case does not merely involve "difficult questions of state law bearing on important matters of state policy...." Def. Br. at 13. The legislative and Congressional districting laws violate the plaintiffs' rights under the U.S. Constitution and the Voting Rights Act. With regard to the Congressional boundaries, a state court could not even begin to decide the case on state grounds because no such grounds exist.

As for the state legislative boundaries, the plaintiffs' federal constitutional and statutory concerns are the principle and principal concerns raised in the amended complaint. *See* Am. Compl., ¶¶ 27-33 (alleging the 2011 boundaries violate redistricting criteria); ¶¶ 39-44 (alleging the unnecessary disenfranchisement of 300,000 violates the one person, one vote principle guaranteed by the U.S. Constitution); ¶¶ 54-61 (challenging the partisan gerrymandering as against the U.S. Constitution); ¶¶ 62-70 (raising violations of the federal Voting Rights Act).

The state would have this Court take the unprecedented step of abstaining from or deferring its review of the 2011 statutes—just in case a party files an action challenging them, sometime, somewhere, in state court. The plaintiffs have chosen to sue in federal court to vindicate federal rights (and related state rights). It is their right to do so, precisely as other plaintiffs have done in the past in this Court.

## CONCLUSION

The defendants' motion to dismiss should be denied. This Court has already concluded that the unnecessary disenfranchisement of 300,000 citizens—the only substantive claim addressed in the state's motion to dismiss—is a fatal flaw for any legislative redistricting. The state's assertion that some disenfranchisement is unavoidable does not excuse the gratuitous disenfranchisement of so many.

The state's procedural claims should also be rejected. The ripeness claims are no longer valid. The Governor signed the Congressional and legislative bills into law on August 9. The state has no support for its contention that a state statute can, in effect, establish new federal rules of civil procedure. Finally, any claim that this Court should abstain or defer to the state courts when the primary issues raised in the litigation are federal—especially when no action is pending in the state courts—cannot prevail.

The 2011 statutory boundaries are the law, governing for the moment any elections in Wisconsin. The plaintiffs have asked this Court to convene a three-judge panel to evaluate the law's significant constitutional and statutory flaws. This Court should deny the defendants' request for dismissal, convene the panel of judges, and set a schedule for judicial review.

Dated: August 23, 2011.

                                        GODFREY & KAHN, S.C.

                            By:   *s/Rebecca Kathryn Mason*
                                        Rebecca Kathryn Mason
                                        State Bar No. 1055500
                                        One East Main Street, Suite 500
                                        P.O. Box 2719
                                        Madison, WI 53701-2719
                                        608-257-3911
                                        rmason@gklaw.com

                                        *Attorneys for Plaintiffs*

6675471_2