IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

ALVIN BALDUS, CINDY BARBERA,
CARLENE BECHEN, ELVIRA BUMPUS,
RONALD BIENDSEI, LESLIE W. DAVIS,
III, BRETT ECKSTEIN, GEORGIA
ROGERS, RICHARD KRESBACH,
ROCHELLE MOORE, AMY RISSEEUW,
JUDY ROBSON, JEANNE SANCHEZ-
BELL, CECELIA SCHLIEPP, and
TRAVIS THYSSEN,

    Plaintiffs,

    v.      Case No. 11-C-00562

Members of the Wisconsin Government
Accountability Board, each only in his
official capacity:  MICHAEL BRENNAN,
DAVID DEININGER, GERALD NICHOL,
THOMAS CANE, THOMAS BARLAND,
and TIMOTHY VOCKE, and KEVIN
KENNEDY, Director and General
Counsel for the Wisconsin Government
Accountability Board,

    Defendants.

DEFENDANTS' REPLY BRIEF IN SUPPORT OF
MOTION TO DISMISS AMENDED COMPLAINT

The plaintiffs make much ado about the status of the redistricting legislation and the proper court to hear redistricting challenges.  However, they neglect to note that their original Complaint—which aggressively asserted that *no* redistricting legislation had been passed or was *likely* to be passed in sufficient time—was filed in an attempt to force an issue which was moot.  They further neglect to note that

their Amended Complaint—which now complains that the redistricting legislation had been *too* hastily passed—was, in fact, filed before that legislation had been signed into law, but conveniently before the new statutory procedure for challenges to redistricting legislation—which had been signed into law—became effective.

Redistricting is the primary responsibility of the individual States and is to be accomplished first through the Legislature and then the state judiciary. The Wisconsin Legislature has passed redistricting laws for the first time in decades and has also codified a process to enable the state judiciary to resolve redistricting challenges. Therefore, abstention, resting upon the principles of federalism, comity and judicial efficiency, is appropriate in this matter.

All in all, taking a cynical view,[1] one could say that all of these efforts are an attempt to provide an end-run around the United States Supreme Court's directives in *Growe v. Emison*, 507 U.S. 25, 33 (1993), and *Miller v. Johnson*, 515 U.S. 900, 915 (1995), as well as the statutory dictates of the Wisconsin Legislature regarding the State's preferred venue for hearing such challenges. Regardless, the facts are clear if the Court does not abstain—the Complaint was filed prior to any redistricting legislation and should properly have been dismissed and the Amended Complaint, filed before the redistricting legislation was signed into law, should also be dismissed.

---

[1] Judge Easterbrook in his dissent in *Arrington v. Elections Board*, 173 F. Supp. 2d 856, 869 (E.D. Wis. 2001), "uncharitably" wondered if that suit was filed to enable the plaintiffs "to be first in the queue for attorneys' fees in the event litigation becomes necessary." Judge Easterbrook further noted that "reserving a place in line is not a proper reason to invoke the judicial power." *Id.*

- 2 -
Case 2:11-cv-00562-JPS -DPW -RMD   Filed 09/06/11   Page 2 of 17   Document 22

ARGUMENT

I. ABSTENTION IS APPROPRIATE, OR, ALTERNATIVELY, THE COURT MAY DEFER OR STAY THE MATTER.

Abstention is appropriate in three circumstances, two of which potentially apply here. *Colorado River Water Conservation District v. U.S.*, 424 U.S. 800, 814 (1976). "Abstention is appropriate 'in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law.'" *Id.* (quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 189 (1959).[2] "Abstention is also appropriate where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." *Colorado River,* 424 U.S. at 814.[3] Put quite simply, "[i]n the reapportionment context, the [United States Supreme] Court has required federal judges to defer consideration of disputes involving redistricting where the State, through its legislative *or* judicial branch, has begun to address that highly political task itself." *Growe,* 507 U.S. at 33 (emphasis in original).

The *Growe* case also relies upon *Scott v. Germano*, 381 U.S. 407 (1965), which is directly applicable to the instant case. In *Germano*, a federal district court

---

[2]This is known as "*Pullman*-type abstention." *Ryan v. State Board of Elections*, 661 F.2d 1130, 1136 (7th Cir. 1981) (referring to the decision in *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941)).

[3]This is known as "*Burford*-type abstention." *Ryan*, 661 F.2d at 1135 (referring to the decision in *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943)).

attempted to take on the task of drawing redistricting maps for the State of Illinois, even though the maps had been challenged in state court. The Illinois Supreme Court agreed that the current Senate districts were invalid, but anticipated that the legislature would adopt a new, valid plan by the end of its session. If not, the Illinois Supreme Court stated that it would retain jurisdiction to ensure that the upcoming general elections would be conducted pursuant to a constitutional plan. Under the circumstances, the Court held that abstention was the proper course of action for the federal judiciary. Discussing *Germano*, the *Growe* Court stated:

> Today we renew our adherence to the principles expressed in *Germano*, which derive from the recognition that the Constitution leaves with the States primary responsibility for apportionment of their federal congressional and state legislative districts. See U.S. Const., Art. I, 2.

*Growe*, 507 U.S. at 34.

*Germano* is further significant because the "new" legislative maps were not yet before Illinois' highest court and, in fact, had not yet been adopted. Instead, the mere expectation that the state's highest court would act was enough to overturn a district court attempt to become involved in the process. Abstention makes even more sense in the instant case, because Wisconsin's Legislature has adopted maps, the Legislature has created an efficient process for state court review, and there is ample time for the state court process to resolve the issue. The fact that there is no current state court action is no more an impediment here than the absence of new maps and a specific challenge to those maps was in *Germano*.

Thus, the rule to be applied here—as dictated by *Growe*—is that this Court should either abstain from acting in this case or defer to a state court action to be filed by a date certain unless the plaintiffs can establish that the state judiciary cannot resolve this redistricting dispute in a timely manner. Plaintiffs have produced no evidence that the state judiciary will fail to exercise judicial review of the redistricting laws in a timely fashion such that federal jurisdiction should be exercised. Absent such a showing, *Growe* requires federal courts to leave reapportionment in the hands of the state judiciary.

There is no dispute that the state judiciary now has the primary responsibility to resolve redistricting challenges. The state Legislature has passed a law which expedites such legal challenges through original actions before the State Supreme Court. *See* 2011 Wisconsin Act 39. The state Legislature has taken the necessary steps to see that redistricting occurs through one of the two preferred avenues. This promotes judicial efficiency and upholds the principles underlying the *Growe* decision.

Should there be an adverse decision to the plaintiffs in the State Supreme Court on a federal constitutional ground, the plaintiffs have the right to petition the United States Supreme Court for certiorari. Again, judicial efficiency is promoted, which taken together with federalism concerns, are the principal advantages to the abstention doctrine.

Plaintiffs appear to be contending that the *Growe* preference for state judiciary action is only to have been followed if the state Legislature had not acted.

That is flatly contradictory to *Growe*. Here, the State Supreme Court should be the body to review the redistricting laws for their conformity with state and federal constitutional directives. The Wisconsin Legislature was expeditious in passing redistricting legislation—something not accomplished for decades—and the plaintiffs are using that as a basis for arguing that the state judiciary is no longer part of the redistricting process. Federal courts are to—must—abstain from reapportionment challenges where, as here, the state court options have not been exhausted. This is the very definition of abstention.

If a state court action is not filed by the time this motion to dismiss the Amended Complaint is heard (and the case is not dismissed outright), the defendants respectfully urge the Court to abstain, defer or stay the matter for a time sufficient to allow for some party to file an appropriate action with the Wisconsin State Supreme Court so as to effectuate the dictates and preferences set forth in *Growe*.

II. THE FACT THAT THE LEGISLATION WAS ENACTED INTO LAW *AFTER* THE AMENDED COMPLAINT WAS FILED DOES NOT ELIMINATE A NEED TO DISMISS ON GROUNDS OF RIPENESS.

Again, the plaintiffs' fail to properly focus on the timing of the enactment of the redistricting legislation which is, in fact, vitally important. The new laws were not signed by the Governor until August 9, 2011—twenty days *after* the Amended Complaint was filed and five days *before* the motion to dismiss the Amended Complaint was filed.

Jurisdiction in the courts is based on the facts *as they exist when the complaint is filed* not as the facts will be in a few days, a week or a month. *Keene Corp. v. U.S.*, 508 U.S. 200, 207 (1993) ("'the jurisdiction of the Court depends upon the state of things at the time of the action brought'") (quoting *Mollan v. Torrance*, 9 Wheat. 537, 539, 6 L.Ed. 154 (1824) (Marshall, C.J.)). That is precisely the reason that the plaintiffs' arguments lack focus: they fail to take into account the basic tenets of jurisdiction. In other words, you actually have to have jurisdiction *when* you file. And, that, simply put, is not the case here.

Contrary to plaintiffs' statements, the new law was *not* just that, "the law" when the Amended Complaint was filed. The new laws were putative and subject to the Governor's veto pen or line-item veto. The Governor was the only person who knew exactly when, and if, they would be signed and in what form that law would ultimately take. Regardless, we keep circling back to the key issue: there were *no* redistricting laws in place when the Amended Complaint was filed. A party may not "find" jurisdiction after the fact. Based solely upon that fact, the proper procedure is for the Court to dismiss this action in its entirety.

Accordingly, the defendants' references to *Goodland v. Zimmerman*, 243 Wis. 459, 468, 10 N.W.2d 180 (1943), and *State ex rel. Ozanne v. Fitzgerald,* 2011 WI 43, ¶ 8, 334 Wis. 2d 70, 798 N.W.2d 436, were not moot and misplaced. These cases were cited for the express purpose of showing that there is a proper time to file a lawsuit challenging the constitutionality of a law—and that time is after the law has been enacted, published, and takes effect. The plaintiffs are

- 7 -
Case 2:11-cv-00562-JPS -DPW -RMD   Filed 09/06/11   Page 7 of 17   Document 22

indeed correct that the new redistricting laws are *now* law. However, that event took place after both the Complaint and Amended Complaint were filed. This is not a mere technicality—it is a jurisdictional defect which cannot be corrected absent the filing of an entirely new action.

Moreover, the plaintiffs' references to limited state court intervention is not significant, nor does it provide any authoritative, legal precedence. It is true that the last time the state judiciary actually drew legislative boundaries was in 1964. *See State ex rel. Reynolds v. Zimmerman*, 22 Wis. 2d 544, 126 N.W.2d 551 (1964). However, in the 1970's, the state Legislature redistricted on its own only after deadlines were placed upon it by the state judiciary. *See* A. Clarke Hagensick, "Wisconsin," in Reapportionment Politics: The History of Redistricting in the 50 States, at 351 (1981).[4]

And, finally, in the 2001 case before this Court, the Court in November 2001, declined to dismiss the case for lack of ripeness, but rather stayed all substantive proceedings until February 1, 2002—the year of the next election. *Arrington*, 173 F. Supp. 2d at 866-67. In fact, in *Arrington*, all parties who took a position argued that there was a justiciable case or controversy; it was the court which raised the question. *Id.* at 859. Furthermore, none of the parties objected to the matter being stayed in federal court for almost a year.

---

[4]A copy of the Introduction and essay "Wisconsin" is attached hereto as Exhibit A.

- 8 -
Case 2:11-cv-00562-JPS -DPW -RMD   Filed 09/06/11   Page 8 of 17   Document 22

Additionally, it was the Wisconsin State Supreme Court which declined to hear an original action regarding the 2000 decennial census because that case was filed too late—it was filed January 2002 (the year of the election) and the federal court already had convened a three judge panel and recommenced the federal litigation. *Jensen v. Wisconsin Elections Board*, 2002 WI 13, ¶ 22, 249 Wis. 2d 706, 639 N.W.2d 537. The court even noted that had its "jurisdiction been invoked earlier, the public interest might well have been served by our hearing and deciding this case." *Id.*, ¶ 17.

It is worthy of further note that the plaintiffs fail to respond to *Carter v. Virginia State Board of Elections,* 2011 WL 1637942 (W.D. Va. April 29, 2011), a case cited by defendants. In that case, a federal court granted the defendants' motion to dismiss on the grounds that the plaintiffs had "alleged no immediate harm, and their claims are contingent on future uncertainties, [and the] case [was] not ripe for review" when the federal lawsuit seeking declaratory and injunctive relief was initiated before the proposed redistricting plans were sent to the Governor for approval. *Id.* at *2. That is quite similar to the case here.

Simply put, the facts at the time of the Complaint (and even the Amended Complaint) do not support the legal action: there were no laws against which the plaintiffs may assert unconstitutionality. Accordingly, this action must be dismissed.

### III. ALTERNATIVELY, THE DISENFRANCHISEMENT CLAIM SHOULD BE DISMISSED AS A MATTER OF LAW.

If, arguendo, this Court does not dismiss the Amended Complaint in its entirety, or abstain, defer or stay the matter, the Third Claim should be dismissed as a matter of law.

The defendants have not "failed" to take into consideration or acknowledge that "unnecessary" disenfranchisement may not withstand judicial scrutiny. However, the plaintiffs themselves fail to fully read the case they assert "unambiguously" concludes that unnecessary disenfranchisement is a fatal flaw. (Response brief at 3). In *Republican Party of Wisconsin v. Elections Board*, 585 F. Supp. 603 (E.D. Wis. 1984), *vacated and remanded for dismissal of complaint*, *Wisconsin Elections Board v. Republican Party of Wisconsin*, 469 U.S. 1081 (1984), the court outlines when a redistricting plan's disenfranchisement is "constitutionally tolerated:"

> The temporary disenfranchisement of citizens is constitutionally tolerated under either of two related theories. Due to the complexities of the reapportionment process, a temporary loss of voting rights (the cases speak of a 'delay' in the right to vote) is tolerated when it is an 'absolute necessity' or when it is 'unavoidable'. A temporary delay in voting within a staggered-team [sic] structure, is an 'absolute necessity' and is 'unavoidable' when it is caused by the enactment of a new plan that is passed to correct a constitutionally-defective districting system. For this reason, partial temporary disenfranchisement is tolerated when a State, or as occurred here, when a Court orders that a new districting plan be followed. Thus, the temporary disenfranchisement that occurred in Wisconsin under the '82 Court Plan (the result, of course, would have been the same if the Legislature had acted in '82) did not run afoul of the Constitution.

*Republican Party*, 585 F. Supp. at 606 (citations omitted).

Here, this case is precisely as that covered in the *Republican Party* case: the disenfranchisement is temporary in a staggered-term system, and as such, by definition in that case, is both an "absolute necessity" and is "unavoidable." This case sets forth the standards of law to be followed by the Courts when a State enacts a redistricting plan that disenfranchises voters by causing delays in their votes. *See State Elections Board v. Bartolomei*, 434 N.E.2d 74, 78 (Ind. 1982) ("this impingement upon the right to vote is the natural and unavoidable consequence of redistricting and maintaining a system of staggered terms of office for members of the same governmental body").

There are no allegations in the Amended Complaint that the temporary disenfranchisement was due to "a form of invidious discrimination specifically directed at depriving" certain voters of their right to vote, which would have been a basis upon which relief could possibly be granted. *Pick v. Nelson*, 247 Neb. 487, 497-98 (Neb. 1995). Thus, what remains is purely a question of law—and the plaintiffs have not cited any authority for the proposition that temporary disenfranchisement due to redistricting alone is unconstitutional. To the contrary, "[u]ndoubtedly these [delays] are inconvenient and deplorable results, but it must be assumed that they were foreseen and deliberately accepted by the framers of the constitution." *People ex rel. Snowball v. Pendegast*, 31 P. 103, 105 (Cal. 1892).

As a matter of law, this Court can and should find that the redistricting legislation disenfranchisement of voters is temporary, and by the terms of the plaintiffs' case (*Republican Party*) was, thus, an unavoidable, absolute necessity.

Finally, despite the statement made by the plaintiffs (Response brief at 2, n.1), the defendants are not conceding that the other remaining causes of action in the Amended Complaint state claims upon which relief may be granted. Rather, the defendants referenced only the disenfranchisement claim in the motion as it was one which could possibly be resolved without converting the motion to dismiss into a motion for summary judgment. Should this action not be dismissed, the defendants expressly reserve any and all rights to challenge the entirety of the Amended Complaint.

### IV. THE PLAINTIFFS INSERT NEW ARGUMENTS, BASED UPON FACTS NOT IN THE RECORD, IN THEIR RESPONSE BRIEF.

Interestingly, the plaintiffs for the first time assert that "[t]he state will need local district boundaries in place no later than November 15, 2011 to meet its statutory requirements for the April 2012 elections." (Response brief at 7). This allegation is not included in the Complaint or Amended Complaint, but is now put forward as a "fact" upon which the plaintiffs argue that their action is ripe.

A response brief, in general, and more particularly in the context of a motion to dismiss is no place in which to assert facts not set forth in the pleadings to date. *Thomason v. Nachtrieb,* 888 F.2d 1202, 1205 (7th Cir. 1989) ("It is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss . . ."). Had the plaintiffs wished to bring new facts to the attention of the Court, they could have done so in their Amended Complaint as allowed under

Fed. R. Civ. P. 15(c). *Perry v. Village of Arlington Heights*, 186 F.3d 826, 830 (7th Cir. 1999).

Therefore, this argument has no bearing on the discussion and should be disregarded by the Court.

> V. THE DEFENDANTS ARE NOT CREATING NEW FEDERAL RULES OF CIVIL PROCEDURE.

It must be borne in mind that, based upon the 2010 decennial census, the State Legislature has passed redistricting laws which have now been duly enacted. Under "the elementary principles of federalism and comity embodied in the full faith and credit statute," courts are obligated to treat them as being legal. *Growe*, 507 U.S. at 35-36. This is because "[a]n enacted plan would have the virtue of political legitimacy." *Prosser, et al. v. State Elections Board, et al.*, 793 F. Supp. 859, 867 (W.D. Wis. 1992). Thus, the initial threshold is different than if there were no enacted plans.

Next, defendants are not disputing that federal courts may be an appropriate forum to hear challenges to redistricting legislation, however, this statement disregards the United States Supreme Court's jurisdictional preference as set forth in *Growe:* the State Legislature, the state courts, and *then* the federal courts. *Growe*, 507 U.S. at 33. *See also Jensen*, 249 Wis. 2d 706, ¶ 22 (due to the late filing with the State Supreme Court, that Court declined to take jurisdiction, but stated that "we recognize and agree that the institutions of state government are primary

in matters of redistricting, and federalism requires deference to state high courts for their resolution").

Additionally, the defendants do not dispute that this Court has been the forum in redistricting cases twice,[5] however, that is solely because there was no legislation drawing new redistricting maps in 1980, 1990, or 2000. When there is no legislation which provides new redistricting maps, it is appropriate that there be some judicial intervention. But, that judicial intervention is not necessarily solely to be found in the federal courts. As this Court, itself, has noted, "[s]imply because an election law has become unconstitutional does not necessarily mean a federal court should step in to rewrite it, however." *Arrington*, 173 F. Supp. 2d at 860.

Even the case cited by plaintiffs to support their contention that this Court *may* move forward is relevant only in cases where a State Legislature has *failed* to act and adopt a plan in a timely fashion. *Branch v. Smith*, 538 U.S. 254, 261 (2003). "Federal-court review of districting legislation represents a serious intrusion on the most vital of local functions." *Miller*, 515 U.S. at 915. "It is well settled that 'reapportionment is primarily the duty and responsibility of the State.'" *Id.* (quoting *Chapman v. Meier*, 420 U.S. 1, 27 (1975)).

That being the case, in a case such as this one, where the Legislature has passed redistricting plans (which have now been signed into law), the federal court

---

[5]There was also a third federal court action (*Prosser, et al. v. State Elections Board, et al.*, 793 F. Supp. 859 (W.D. Wis. 1992)), in the Western District of Wisconsin, which the defendants presume the plaintiffs were referring to at the start of their Response Brief, as the third instance *this* Court has heard these challenges.

should refrain from acting to give these parties and any other interested parties in the State of Wisconsin an opportunity to avail themselves of the state judiciary's guidance. There is still sufficient time in which such a state court action could be commenced.

The new law setting forth the venue procedures for judicial review of redistricting legislation (2011 Wisconsin Act 39) is not a "curious new statute." In years past, the state procedure for such challenges fell within the purview of the State Supreme Court's original action jurisdiction. *Jensen*, 249 Wis. 2d 706, ¶ 17 ("There is no question but that this matter [redistricting challenge with no legislative plan] warrants this court's original jurisdiction; any reapportionment or redistricting case is, by definition, *publici juris,* implicating the sovereign rights of the people of this state. *See Petition of Heil,* 230 Wis. 428, 443, 284 N.W. 42 (1939)").

Even without 2011 Wisconsin Act 39, the state judiciary is the next appropriate venue for any constitutional challenges. The State Supreme Court itself—following the last decennial census and the 2001 case before this Court—attempted to create a distinct procedure by which such challenges should be made. *See Jensen,* 249 Wis. 2d 706, ¶ 24. But, in the end, the State Supreme Court stopped mid-way and issued no new procedural rules. Wis. Sup. Ct. Order No. 02-03 (Jan. 30, 2009).

2011 Wisconsin Act 39 codifies the State Supreme Court's jurisdiction and sets up a means by which three circuit court judges will be the final arbiters in such cases. Thus, this law keeps the redistricting process within the State judiciary and

allows for a more fair and deliberative process by the State itself. This is in keeping with the federal preference that state courts consider redistricting even when legislation has been passed.

CONCLUSION

Based upon the foregoing, this Court lacks jurisdiction to hear this action due to lack of subject matter jurisdiction. Moreover, the plaintiffs have failed to state a claim upon which relief can be granted with respect to the Third Claim. Accordingly, this action should be dismissed in its entirety. Or, at the very least, the Third Claim should be dismissed with prejudice. In the alternative, this Court should follow the dictates of the United States Supreme Court and the procedure set forth in 2011 Wisconsin Act 39 and abstain, defer or stay this matter to the Wisconsin State Supreme Court.

Therefore, the defendants respectfully request that the Court grant their motion and dismiss the Amended Complaint in its entirety or provide such other appropriate relief.

Dated this 6th day of September, 2011.

J.B. VAN HOLLEN
Attorney General

s/Maria S. Lazar
MARIA S. LAZAR
Assistant Attorney General
State Bar #1017150

Attorneys for Defendants

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 267-3519
(608) 267-2223 (fax)
*lazarms@doj.state.wi.us*

lazarms\baldus - redistricting\dismiss.replybriefAC 090611 final