IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

ALVIN BALDUS, CINDY BARBERA,
CARLENE BECHEN, ELVIRA BUMPUS,
RONALD BIENDSEI, LESLIE W. DAVIS, III,
BRETT ECKSTEIN, GEORGIA ROGERS,
RICHARD KRESBACH, ROCHELLE MOORE,
AMY RISSEEUW, JUDY ROBSON, JEANNE
SANCHEZ-BELL, CECELIA SCHLIEPP, and
TRAVIS THYSSEN,

    Plaintiffs,

   v.              Case No. 11-C-00562
                    (Three Judge Panel)
Members of the Wisconsin Government
Accountability Board, each only in his official
capacity:  MICHAEL BRENNAN, DAVID
DEININGER, GERALD NICHOL, THOMAS
CANE, THOMAS BARLAND, and TIMOTHY
VOCKE, and KEVIN KENNEDY, Director and
General Counsel for the Wisconsin Government
Accountability Board,

    Defendants.

---

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO FIRST
AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

---

The defendants, the Members of the Wisconsin Government Accountability Board

("GAB"), Michael Brennan, David Deininger, Gerald Nichol, Thomas Cane, Thomas Barland,

and Timothy Vocke, each in his official capacity only, and Kevin Kennedy, in his official

capacity as Director and General Counsel for the GAB only, by their attorneys, J.B. Van Hollen,

Attorney General, and Maria S. Lazar, Assistant Attorney General, and for their Answer and

Affirmative Defenses to the plaintiffs' First Amended Complaint for Declaratory and Injunctive

Relief, dated July 21, 2011, hereby state as follows:

# ANSWER

The un-numbered summary paragraphs set forth at the beginning of the First Amended Complaint constitute plaintiffs' characterization of their lawsuit and contain legal conclusions to which a responsive pleading is not required, and/or are allegations which are repeated below in the paragraphs of the First Amended Complaint.  Nonetheless, defendants respond to those summary paragraphs here.

This is an action for a declaratory judgment and for injunctive relief, involving the rights of the plaintiffs under the U.S. Constitution and the Wisconsin Constitution and the now legislatively-mandated configure of the eight congressional districts, 33 senate districts and 99 assembly districts in the State of Wisconsin for 2012 and beyond.  These districts – established by the state legislature in legislation adopted on July 19 and 20, 2011, to be signed by the Governor – are unconstitutional.

**Answer to First Summary Paragraph:**  Defendants STATE that the allegations of the first summary paragraph refer to the allegations set forth in the First Amended Complaint and that the First Amended Complaint speaks for itself and DENY any characterization of the First Amended Complaint contrary to its express terms.  Defendants DENY that the legislative and congressional districts established by the State Legislature, in legislation adopted on July 19 and 20, 2011, and signed by Governor Walker on August 9, 2011, are unconstitutional.

This case arises under the U.S. Constitution, Article I, Section 2, and the First, Fifth and Fourteenth Amendments, Sections 1, 2 and 5; under 42 U.S.C. §§ 1983 and 1988; under the Voting Rights Act, 42 U.S.C. § 1973; and, under article IV, sections 3 through 5 of the Wisconsin Constitution.  This amended complaint supersedes the complaint filed on June 10, 2011, before the adoption by the legislature of new state legislative and Congressional district boundaries.  The plaintiffs file it as of right under Rule 15, Fed. R. Civ. P.

**Answer to Second Summary Paragraph:**  Defendants ASSERT that the first sentence of the second summary paragraph contains purported statements of law and/or legal conclusions in response to which no answer is required.    Defendants further ADMIT the last two sentences of the second paragraph.

The plaintiffs seek a declaratory judgment that:

- The redistricting legislation adopted violates the constitutional requirements that legislative districts be substantially equal in population while maintaining contiguity, compactness, communities of interest, and core district populations and that they be based upon county, precinct, town or ward lines;
- The legislation violates the state constitution in that it disenfranchises nearly 300,000 citizens by unnecessarily extending, for them, the time between elections of state senators from four to six years;
- The Congressional redistricting legislation violates the constitutional requirement that districts be compact and preserve communities of interest;
- Both the Congressional and legislative redistricting legislation violate the First and Fourteenth Amendments in that the districts reflect deliberate, systematic and impermissible partisan gerrymandering and impinge upon freedom of association by penalizing voters and elected representatives solely because of their political affiliation and beliefs;
- The legislation violates the statutory and constitutional prohibitions against using race as a predominant factor in creating district boundaries; and
- The Congressional and legislative redistricting legislation cannot be justified as furthering any legitimate state interest and is, therefore, unconstitutional.

**Answer to Third Summary Paragraph:** Defendants STATE that the allegations of the third summary paragraph refer to the allegations set forth in the First Amended Complaint and that the First Amended Complaint speaks for itself. Defendants further DENY any characterization of the First Amended Complaint contrary to its express terms. Defendants further DENY all allegations that the redistricting legislation is unconstitutional or that it violates any state or federal constitutional provisions and DENY that the plaintiffs are entitled to any declaratory relief.

Upon such declarations, the plaintiffs request injunctive relief prohibiting any elections from being conducted under the Congressional and state legislative boundaries created by the legislature. Plaintiffs further request that in the event valid boundaries are not enacted in sufficient time for the 2012 candidate qualifying period and elections according to the statutory schedule, the Court formulate and implement Congressional and state legislative districts that comport with constitutional and statutory requirements.

**Answer to Fourth Summary Paragraph:** Defendants DENY that the plaintiffs are entitled to any injunctive relief. Defendants further STATE that, because the new redistricting

boundaries comport with constitutional and statutory requirements, there is no legal basis upon which the Court may formulate or implement new Congressional and legislative districts.

## JURISDICTION

1.      This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1357 and 2284 to hear the claims for legal and equitable relief arising under the federal constitution and federal law and supplemental jurisdiction under 28 U.S.C. § 1367 to hear claims under the state constitution and state law. It also has general jurisdiction under 28 U.S.C. §§ 2201 and 2202, the Declaratory Judgments Act, to grant the declaratory relief requested.

**Answer to ¶ 1:**  Based upon this Court's Decision and Order dated October 24, 2011, and without waiving any rights thereof to appeal, defendants ADMIT the allegations set forth in ¶ 1.

2.      This action challenges the constitutionality of the legislatively-adopted boundaries for the state's Congressional and legislative districts, found in chapters 3 and 4 of the Wisconsin Statutes. While these Congressional and state legislative district boundaries are based on the 2010 census, they nevertheless are unconstitutional and violate state and federal law.

**Answer to ¶ 2**:  Defendants DO NOT DENY plaintiffs' characterization of their First Amended Complaint, but rather, put plaintiffs to their proof thereon.  Defendants further DENY that the new Congressional and state legislative district boundaries are unconstitutional or that they violate state or federal law.  Defendants DENY any and all further allegations.

3.      Accordingly, 28 U.S.C. § 2284(a) requires that a district court of three judges be convened or reconvened to hear the case. In 1982, 1992 and 2002, three-judge panels convened pursuant to 28 U.S.C. § 2284 resolved complaints like this one, developing redistricting plans for the state legislature in the absence of valid plans enacted into law.

**Answer to ¶ 3:**  Defendants ASSERT that a district court of three judges has already been empanelled to hear this case.  Defendants further ADMIT that three-judge panels were convened in 1982, 1992, and 2002 to resolve complaints regarding redistricting plan in the

absence of any such legislatively created and enacted plans. Finally, defendants ASSERT that there are valid, constitutional redistricting plans already enacted by the State Legislature.

## VENUE

4. Venue is properly in this Court under 28 U.S.C. § 1391(b) and (e). At least one of the defendants resides in the Eastern District of Wisconsin. In addition, at least nine of the individual plaintiffs reside and vote in this district.

**Answer to ¶ 4:** Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations set forth in ¶ 4, and therefore DENY the same and put plaintiffs to their proof thereon.

## PARTIES

**Plaintiffs**

5. The plaintiffs are citizens, residents and qualified voters of the United States and the State of Wisconsin, residing in various counties and Congressional and legislative districts (as now re-established by the legislation adopted by the state legislature). Regardless of their place of residence, their rights are harmed or threatened with harm by political district boundaries that violate federal and state law.

a. Alvin Baldus, a citizen of the United States and of the State of Wisconsin, is a resident and registered voter of Menomonie, Dunn County, Wisconsin, with his residence in the 3rd Congressional District, 67th Assembly District and 23rd Senate District as those districts have been established by the Wisconsin legislature.

b. Cindy Barbera, a citizen of the United States and of the State of Wisconsin, is a resident and registered voter of the City of Madison, Dane County, Wisconsin, with her residence in the 2nd Congressional District, 78th Assembly District and 26th Senate District as those districts have been established by the legislature.

c. Carlene Bechen, a citizen of the United States and of the State of Wisconsin, is a resident and registered voter of the Village of Brooklyn, Dane County, Wisconsin, with her residence in the 2nd Congressional District, 80th Assembly District and the 27th Senate District as those districts have been established by the legislature.

d. Elvira Bumpus, a citizen of the United States and of the State of Wisconsin, is a resident and registered voter of the City of Racine, Racine

County, Wisconsin, with her residence in the 1st Congressional District, 66th Assembly District and 22nd Senate District as those districts have been established by the legislature.

e. Ronald Biendseil, a citizen of the United States and of the State of Wisconsin, is a resident and registered voter of Middleton, Dane County, Wisconsin, with his residence in the 2nd Congressional District, 79th Assembly District and 27th Senate District as those districts have been established by the legislature.

f. Leslie W. Davis III, a citizen of the United States and of the State of Wisconsin, is a resident and registered voter of the City of Stoughton, Dane County, Wisconsin, with his residence in the 2nd Congressional District, 46th Assembly District and 16th Senate District as those districts have been established by the legislature.

g. Brett Eckstein, a citizen of the United States and of the State of Wisconsin, is a resident and registered voter of the Village of Sussex, Waukesha County, Wisconsin, with his residence in the 5th Congressional District, 22nd Assembly District and 38th Senate District as those districts have been established by the legislature.

h. Gloria Rogers, a citizen of the United States and of the State of Wisconsin, is a resident and registered voter of the City of Racine, Racine County, Wisconsin, with her residence in the 1st Congressional District, 64th Assembly District and the 22nd Senate District as those districts have been established by the legislature.

i. Richard Kresbach, a citizen of the United States and of the State of Wisconsin, is a resident and registered voter of the Village of Wales, Waukesha County, Wisconsin, with his residence in the 1st Congressional District, 99th Assembly District and the 33rd Senate District as those districts have been established by the legislature.

j. Rochelle Moore, a citizen of the United States and of the State of Wisconsin, is a resident and registered voter of the City of Kenosha, Kenosha County, Wisconsin, with her residence in the 1st Congressional District, 64th Assembly District and the 22nd Senate District as those districts have been established by the legislature.

k. Amy Risseeuw, a citizen of the United States and of the State of Wisconsin, is a resident and registered voter of the Town of Menasha, Outagamie County, Wisconsin, with her residence in the 8th Congressional District, 3rd state Assembly District and 1st Senate District as those districts have been established by the legislature.

l.    Judy Robson, a citizen of the United States and of the State of Wisconsin, is a resident and registered voter of the City of Beloit, Rock County, Wisconsin, with her residence in the 2nd Congressional District, 31st Assembly District and 11th Senate District as those districts have been established by the legislature. Ms. Robson, then a State Senator, was a plaintiff in *Baumgart* v. *Wendelberger,* Nos. 01-121 and 02-366, 2002 WL 34127471 (E.D. Wis. May 30, 2002), *amended by* 2002 WL 34127473 (E.D. Wis. July 11, 2002), the case in which this Court established legislative districts in the absence of a valid redistricting statute adopted in 2002 by the state legislature. She has filed a motion under Rule 60(b), Fed. R. Civ. P., for relief from the judgment in that case, asking the Court to provide substantially the same relief requested in this amended complaint.

m.    Jeanne Sanchez-Bell, a citizen of the United States and of the State of Wisconsin, is a resident and registered voter of the City of Kenosha, Kenosha County, Wisconsin, with her residence in the 1st Congressional District, 65th Assembly District and 22nd Senate District as those districts have been established by the legislature.

n.    Cecelia Schliepp, a citizen of the United States and of the State of Wisconsin, is a resident and registered voter of the Town of Erin, Washington County, Wisconsin, with her residence in the 5th Congressional District, 22nd Assembly District and the 8th Senate District as those districts have been established by the legislature.

o.    Travis Thyssen, a citizen of the United States and of the State of Wisconsin, is a resident and registered voter of the Town of Grand Chute, Outagamie County, Wisconsin, with his residence in the 8th Congressional District, 56th Assembly District and the 19th Senate District as those districts have been established by the legislature.

**Answer to ¶ 5:** Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations set forth in ¶¶ 5(a) through (o), and therefore, DENY the same, and put plaintiffs to their proof thereon.

**Defendants**

6.    Michael Brennan, resident of Marshfield, Wisconsin; David Deininger, resident of Monroe, Wisconsin; Gerald Nichol, resident of Madison, Wisconsin; Thomas Cane, resident of Wausau, Wisconsin; Thomas Barland, resident of Eau Claire, Wisconsin; and, Timothy Vocke, resident of Rhinelander, Wisconsin, each named as a defendant personally and individually but only in his official capacity, are all members of the Wisconsin Government Accountability Board ("G.A.B."). Kevin Kennedy, resident

of Dane County, Wisconsin, also named only in his official capacity, is the Director and General Counsel for the G.A.B.

a. The G.A.B. is an independent state agency under section 15.60 of the Wisconsin Statutes. The G.A.B. has "general authority" over and the "responsibility for the administration of ... [the state's] laws relating to elections and election campaigns," Wis. Stat. § 5.05(1) (2009-10), including the election every two years of Wisconsin's representatives in the assembly and every four years its representatives in the senate. It also has general responsibility for the administration of laws involving the election, every two years, of the eight members of the Wisconsin Congressional delegation.

b. Among its statutory responsibilities, the G.A.B. must notify each county clerk by the second Tuesday in May of an election year, under Wis. Stat. §§ 10.01(2)(a) and 10.72, of the date of the primary and general elections and the offices to be filled at those elections by the voters. The G.A.B. also transmits to each county clerk a certified list of candidates for whom the voters of that county may vote. Wis. Stat. § 7.08(2).

c. The G.A.B. issues certificates of election under section 7.70(5) of the Wisconsin Statutes to the candidates elected to serve in the senate and assembly and in the U.S. House of Representatives. The G.A.B. also provides support to local units of government and their public employees, including the county clerks in each of Wisconsin's 72 counties, in administering and preparing for the election of members of the legislature and the U.S. House of Representatives. For purposes of the state's election law, the counties and their clerks are agents for the state and for the G.A.B.

**Answer to ¶ 6:** Defendants DENY that the First Amended Complaint states a claim against any defendant in his personal or individual. Defendants ADMIT the remaining allegations in ¶ 6.

**Answer to ¶ 6(a):** Defendants STATE that the GAB is an independent agency of the State of Wisconsin under Wis. Stat. § 15.60. Defendants ASSERT that the statutes referenced in the remaining allegations of ¶ 6(a) speak for themselves and DENY any characterization of such statutes contrary to their express terms. Defendants ADMIT the remaining allegations in ¶ 6(a).

**Answer to ¶ 6(b):** Defendants ASSERT that the statutes referenced in ¶ 6(b) speak for themselves and DENY any characterization of such statutes contrary to their express terms.

Defendants ASSERT that Wis. Stat. § 10.06(1)(f) is the provision which sets forth the notification deadlines. Defendants further ASSERT that new legislation has been passed by the Legislature, and is awaiting the Governor's signature, which would alter the date of the primary election for 2012.

**Answer to ¶ 6(c):** Defendants ASSERT that the statutes referenced in the first sentence of ¶ 6(c) speak for themselves and DENY any characterization of such statutes contrary to their express terms. Defendants ADMIT the remaining allegations in ¶ 6(c).

## CONSTITUTIONAL AND STATUTORY PROVISIONS / FACTS

7. The federal constitution requires that the members of Congress be elected from districts with equal populations. The state constitution requires that state legislative districts be "substantially equal" in population, and both Congressional and legislative districts must ensure continuity, compactness and, to at least a limited extent, competitiveness.

**Answer to ¶ 7:** Defendants ASSERT that the federal and Wisconsin Constitutions speak for themselves and DENY any characterization of such constitutions contrary to their express terms.

8. The U.S. Constitution, in Article I, Section 2, provides, in part, that "Representatives shall be apportioned among the several states ... according to their respective numbers. "It further provides that "[t]he House of Representatives shall be composed of members chosen every second year by the people of the several states ...." These provisions, as construed by the U.S. Supreme Court, establish a minimum constitutional guarantee of "one-person, one-vote."

**Answer to ¶ 8:** Defendants ASSERT that the federal Constitution speaks for itself and DENY any characterization of such constitution contrary to its express terms.

9. The Due Process Clause of the Fifth Amendment provides that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law."

**Answer to ¶ 9:** Defendants ASSERT that the Due Process Clause of the Fifth Amendment referenced in ¶ 9 speaks for itself and DENY any characterization of such Clause contrary to its express terms.

10. The Equal Protection Clause provides, in pertinent part:

No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

This provision guarantees to the citizens of each state, among other rights, the right to vote in state and federal elections, guaranteeing as well that the vote of each citizen shall be equally effective with the vote of any and every other citizen.

**Answer to ¶ 10:** Defendants ASSERT that the Equal Protection Clause of the Fourteenth Amendment referenced in ¶ 10 speaks for itself and DENY any characterization of such Clause contrary to its express terms.

11. Article IV, section 3, of the Wisconsin Constitution requires that the legislature "apportion and district anew" its senate and assembly districts following each federal census "according to the number of inhabitants."

**Answer to ¶ 11:** Defendants ASSERT that article IV, § 3, of the Wisconsin Constitution speaks for itself and DENY any characterization of such provision contrary to its express terms.

12. The state constitution also requires that legislative districts be "bounded by county, precinct, town or ward lines, [] consist of contiguous territory and be in as compact form as practicable." Wis. Const. art. IV, § 4. The constitution further requires that state senators "shall be chosen" by the voters every four years.

**Answer to ¶ 12:** Defendants ASSERT that the Wisconsin Constitution speaks for itself and DENY any characterization of such document contrary to its express terms.

13. Pursuant to 2 U.S.C. § 2a, the President transmits to Congress, based on the decennial census, "the number of persons in each State" and "the number of Representatives to which each State would be entitled under an apportionment of the then existing number of Representatives ...." Under 2 U.S.C. § 2c, "there shall be established by law a number of districts equal to the number of Representatives to which such State is so entitled, and Representatives shall be elected only from districts so established ...."

**Answer to ¶ 13**:  Defendants ASSERT that the United States Code speaks for itself and DENY any characterization of such document contrary to its express terms.

14.     The Bureau of the Census, U.S. Department of Commerce, conducted a decennial census in 2010 of Wisconsin and of all the other states under Article I, Section 2, of the U.S. Constitution.

**Answer to ¶ 14:**  Defendants ADMIT ¶ 14.

15.     Under 2 U.S.C. §§ 2a and 2c and 13 U.S.C. § 141(c), the Census Bureau on December 21, 2010 announced and certified the actual enumeration of the population of Wisconsin at 5,686,986 as of April 1, 2010, a slight population increase from the 2000 census. A copy of the Census Bureau's Apportionment Population and Number of Representatives, by state, is attached as Exhibit A.

**Answer to ¶ 15:**  Defendants ADMIT that on December 21, 2010, the Census Bureau announced and certified the actual enumeration of the population of Wisconsin at 5,686,986 as of April 1, 2010, which is an amount greater than the 2000 census.  Defendants ADMIT the authenticity of the document attached as Exhibit A.  Defendants DENY each and every remaining allegation contained in ¶ 15.

**Legislative Districts**

16.     Based on the April 2010 census, the precise ideal population for each senate district in Wisconsin is 172,333 and for each assembly district 57,444 (each a slight increase from 2000).

**Answer to ¶ 16:**  Defendants STATE that based on the April 2010 census, zero population deviation among each of Wisconsin's 33 Senate Districts is 172,333 and zero population deviation among Wisconsin's 99 Assembly Districts is 57,444.  Defendants DENY any and all remaining allegations in ¶ 16.

17.     Article IV, section 3, of the Wisconsin Constitution gives the legislature the primary responsibility for enacting a constitutionally-valid plan for legislative districts. The Governor soon will sign into law new legislative district boundaries incorporated in the legislation, Senate Bills 148 and 149, approved by the legislature on July 19 and 20, 2011.

a. The 2010 census populations in the newly adopted senate districts range from a low of 171,722 (611 fewer than the ideal population, the 18th Senate District) to a high of 172,798 (465 more than the ideal population, the 30th Senate District). Thus, the total population deviation, from the most populous to the least populous district, is 1,076 persons.

b. The 2010 census populations in newly adopted assembly districts range from a low of 57,220 (224 fewer than the ideal population, the 1st Assembly District) to a high of 57,658 (214 more than the ideal population, the 45th Assembly District). Thus, the total population deviation, from the most populous to the least populous district, is 438 persons.

**Answer to ¶ 17:**  Defendants ASSERT that the Wisconsin Constitution speaks for itself and DENY any characterization of such document contrary to its express terms.  Defendants ADMIT that the Governor signed 2011 Wisconsin Acts 43 and 44 into law on August 9, 2011, and that these Acts incorporated the new legislative district boundaries contained in Senate Bills 148 and 149, which had been approved by each house of the State Legislature on July 19 and 20, 2011.

**Answer to ¶¶ 17(a-b):**  Defendants ADMIT ¶¶ 17(a) and (b).

18.    The redistricting legislation was drafted on behalf of the majority party's leadership in the assembly and senate and first released to the public on July 8, 2011.

**Answer to ¶ 18:**  Defendants ASSERT that the redistricting legislation was drafted by the State Legislature, and that the legislation was released to the public on July 8, 2011. Defendants DENY the remaining allegations in ¶ 18.

19.    The public aspects of the redistricting process were completed in just 12 days:

a. On July 13, 2011, the legislature held the first and only public hearing to take testimony on the redistricting legislation.

b. The Senate Judiciary Committee adopted the redistricting proposal, with minor amendments, and companion legislation on July 15, 2011.

c. The senate approved the amended legislative redistricting proposal and companion legislation on July 19, 2011, and the assembly approved them on

July 20, 2011. They await the Governor's signature. A copy of the amendment to redistricting legislation is attached as Exhibit B. (Copies of the original proposals were provided to this Court as Exhibits I and 2 attached to correspondence from defendants' counsel on July 14, 2011.)

**Answer to ¶ 19:** Defendants ADMIT that Senate Bills 148 and 149 were passed by the Senate and Assembly on July 19 and 20, 2011, which was 12 days after the release of such bills to the public on July 8, 2011. Defendants DENY each and every remaining allegation contained in ¶ 19.

**Answer to ¶ 19(a):** Defendants ADMIT ¶ 19(a).

**Answer to ¶ 19(b):** Defendants ADMIT that the Senate Judiciary Committee adopted S.B. 148, S.B. 149, and S.B. 150 on July 15, 2011, but DENY each and every remaining allegation contained in ¶ 19(b).

**Answer to ¶ 19(c):** Defendants ADMIT the first sentence of ¶ 19(c), but STATE that the Governor signed the redistricting bills, 2011 Wisconsin Acts 43 and 44, into law on August 9, 2011.

20. At all times relevant to the redistricting process, state law established the procedures for redistricting under which local governments were first required to draw local political and ward boundaries. Wis. Stat. §§ 5.15(l)(b) and 59.10(3)(b) (2009-10). However, a companion bill, also passed on July 19 and 20, now requires local communities to draw or re-draw their local political boundaries to conform with state legislative redistricting, making it impossible for the new districts "to be bounded by county, precinct, town or ward lines ... " as the state constitution requires. A copy of this legislation is attached as Exhibit C.

**Answer to ¶ 20:** Defendants ASSERT that the statutes referenced in the first sentence of ¶ 20 speak for themselves. Defendants further DENY any characterization of such statutes contrary to their express terms. Defendants DENY that the "companion legislation" makes it impossible for the new districts to be "bounded by county, precinct, town or ward lines" as the Wisconsin Constitution requires.

**Congressional Districts**

21. Based on the April 2010 Census, the precise ideal population for each Congressional District in Wisconsin is 710,873.

**Answer to ¶ 21:** Defendants ASSERT that as of April 1, 2010, the population of Wisconsin was 5,686,986, which equates to 710,873.25 for each of Wisconsin's eight Congressional Districts. Defendants further DENY each and every remaining allegation contained in ¶ 21.

22. The state legislature has the primary responsibility – under Article I, Sections 2 and 4, and the Fourteenth Amendment, section 2, of the U.S. Constitution and under 2 U.S.C. § 2c – to enact a constitutionally- valid plan establishing the boundaries for the state's eight Congressional districts.

**Answer to ¶ 22:** Defendants ASSERT that the federal Constitution and the United States Code speak for themselves. Defendants further DENY any characterization of such documents contrary to their express terms.

23. On July 19 and 20, the Wisconsin legislature adopted Congressional district boundaries based on the 2010 census. Congressional redistricting resulted from the same legislative process and schedule described in ¶¶ 18 and 19 above.

**Answer to ¶ 23:** Defendants ADMIT the first sentence of ¶ 23 and restate their answers to ¶¶ 18 and 19, above. Defendants DENY any and all remaining allegations contained in ¶ 23.

24. The new Congressional districts have minimal total population deviations.

**Answer to ¶ 24:** Defendants ASSERT that each of the eight newly drawn Congressional Districts has a population deviation, based on the total Wisconsin population of 5,686,986 divided by eight, of less than one. Defendants further DENY each and every remaining allegation in ¶ 24.

25.     While the new political districts contain small population deviations, the district boundaries violate the U.S. and Wisconsin constitutional and statutory requirements that each district be compact, preserve the core population of prior districts, and preserve communities of interest – while still containing equal population.

**Answer to ¶ 25:**  Defendants DENY ¶ 25.

26.     The legislatively-adopted redistricting boundaries impermissibly discriminate against the plaintiffs in the political process, and the use of those boundaries for elections in 2012 and beyond will deny the plaintiffs the opportunity for fair and effective representation in their state government and in their Congressional districts.

**Answer to ¶ 26:**  Defendants DENY ¶ 26.

## FIRST CLAIM

### Legislative Boundaries Unconstitutionally Sacrifice
### Redistricting Principles

27.     Plaintiffs incorporate by reference the allegations in paragraphs 1 through 26 above.

**Answer to ¶ 27:**  Defendants incorporate their responses to ¶¶ 1 through 26 of the First Amended Complaint, above, as though fully set forth herein.

28.     Although population equality is a primary constitutional goal in establishing legislative districts, it is not the only constitutional or statutory goal.

**Answer to ¶ 28:**  Defendants ASSERT that ¶ 28 contains purported statements of law in response to which no answer is required.

29.     The federal and state constitutions require that legislative districts be apportioned with equal populations while the state constitution also ensures that the districts are compact, preserve core populations from prior districts, and preserve communities of interest. The state constitution also requires that legislative districts be based on districts first drawn by local units of government.

**Answer to ¶ 29:** Defendants ASSERT that the federal and Wisconsin Constitutions speak for themselves. Defendants further DENY any characterization of such constitutions contrary to their express terms.

30. Whether or not the population deviations in the new legislative districts are acceptable in a vacuum, the new districts wholly and impermissibly ignore other redistricting requirements.

a. They are not geographically compact-in fact, significantly less so than the 2002 boundaries. Legislative districts have taken bizarre shapes, especially compared to their 2002 counterparts, including but not necessarily limited to Assembly Districts 6, 34, 37, 43, 45, 62, 64, 70, 87 and 93 and Senate Districts 8, 21 and 24. *See* Exhibit D, comparing the Racine/Kenosha districts to their 2002 counterparts.

b. They do not preserve core populations from prior districts. Based on the 2010 census, 323,026 individuals needed to move assembly districts; the new legislation moves 2,357,592 individuals – two million more than necessary – into new assembly districts. (In contrast, the 2002 boundaries retained 76.7 percent of the core populations from the prior district.) For example:

i. According to the 2010 census, AD 81 was required to lose only 3,907 individuals to meet the ideal population; the new legislation removes 57,932 individuals from and adds 53,984 individuals to the district.

ii. The 2010 census disclosed that AD 33 should have been reduced by 2,016 individuals; the new legislation removes 54,763 individuals from the district and adds 52,868 individuals from other districts.

iii. Based on the 2010 census, AD 62 needed to gain only 1,558 individuals to meet the ideal population; the new legislation removes 50,983 individuals from the district and adds 52,442 individuals from other districts.

iv. AD 37 was required to lose 1,521 individuals, according to the 2010 census; the new legislation removes 52,142 individuals from the district and adds 50,684 individuals.

v. AD 76 needed to lose 4,103 individuals to meet the ideal population; the new legislation removes 54,583 individuals and adds 50,653 individuals.

c. Similarly, the 2010 census disclosed that 231,341 individuals needed to shift senate districts; the new legislation, however, moves 1,205,216 individuals. These unnecessary changes to the core populations include but are not limited to:

    i. According to the 2010 census results, SD 22, bordered on the east by Lake Michigan, had 7,686 individuals more than the ideal population; the new legislation adds 66,837 individuals from a different district and removes 74,586 individuals from the existing district.

    ii. The 2010 census revealed SD 21, which used to border SD 22 to the north, needed to increase by 5,598 individuals; the new legislation adds 72,431 individuals to the district and removes 66,842 from its core 2002 population.

    iii. SD 17, bordered on the west by Minnesota and on the south by Illinois, did not need to lose any of its population; the 2010 census disclosed that its population was only 58 individuals above the ideal population-statistically insignificant. The new legislation nonetheless adds 19,666 new individuals to the district and removes 19,507 individuals from the 2002 district.

    iv. Like its neighboring district, SD 32 runs along the Mississippi River on the western border of the state. This district also did not need to be changed as the 2010 census disclosed its population at 46 individuals above the ideal population. The new legislation, however, adds 3,458 individuals to the district and removes 3,715.

    v. Also bordered by the Mississippi River to the west and SD 32 to the south, SD 31 was 1,034 over the ideal population, according to the 2010 census. The new legislation nevertheless adds 50,132 individuals and removes 51,161 from its 2002 population.

    vi. SD 7 is in the City of Milwaukee and borders Lake Michigan to the east. According to the 2010 census, SD 7 also did not need to change; it was only 330 below the ideal population. However, the new legislative proposal adds 13,741 individuals to the district and removes 13,321 from the 2002 district population.

**Answer to ¶ 30:** Defendants DENY ¶ 30.

**Answer to ¶¶ 30(a-c):** Defendants DENY all sub-parts of ¶ 30 in their entirety.

31. The new legislative districts do not preserve communities of interest and instead needlessly divide cities and other local government units. For example:

a. The boundaries unnecessarily fracture the "Clark Square" neighborhood in Milwaukee by drawing the district boundary between the 8th and 9th Assembly Districts along Cesar Chavez Drive.

b. The assembly and senate districts in Racine and Kenosha Counties unnecessarily fracture the communities. The City of Racine is split into six different assembly districts, including one that stretches into the City of Kenosha (AD 64) and another that stretches west to Wind Lake and the Racine County line (AD 62). The legislation also ignores the traditional and historical representation afforded to the two counties, combining the cities into one senate district while another senate district is spread across the rural parts of both counties. While communities of interest are fractured, communities that have little in common are combined. Residents of Racine have little in common with, and rely on very different government services compared to, for example, the residents of Wind Lake.

c. In the Fox Valley, the City of Appleton, a majority of which has traditionally been contained within one assembly district (AD 57), was split in half with the northern half of the city now in the 56th Assembly District, which stretches west beyond the Outagamie County line and to the Winnebago County line. Residents of the City of Appleton have little in common with residents of, for example, Norwegian Bay on Lake Poygan.

d. The City of Beloit has traditionally and historically been contained within one assembly district (AD 45). The legislation splits the city in half with the western part of the city falling within AD 45 and the eastern portion within AD 31. This also places the City of Beloit in separate senate districts (SD 15 on the west and SD lion the east). The residents of the City of Beloit, which has the highest unemployment rate in the state, have very little in common with residents of, for example, Lake Geneva.

e. In Milwaukee County, three assembly districts that had historically been contained within Milwaukee County are now stretched from the edge of that county well into Waukesha County.

**Answer to ¶ 31:** Defendants DENY ¶ 31.

**Answer to ¶ 31(a-e):** Defendants DENY all sub-parts of ¶ 31 in their entirety. Further, defendants put plaintiffs to their proof regarding the allegations made in the sub-parts of ¶ 31.

32. If not otherwise enjoined or directed, the G.A.B. will carry out its statutory responsibilities involving the 2012 state legislative elections based on the impermissibly-drawn boundaries, which will harm the plaintiffs by violating their constitutional rights.

**Answer to ¶ 32:** Defendants DENY ¶ 32.

33.     In the absence of the legislatively-enacted and constitutionally-permissible districts, any elections conducted under the G.A.B.'s supervision will deprive the individual plaintiffs of their civil rights under color of state law in violation of 42 U.S.C. §§ 1983 and 1988.

**Answer to ¶ 33:** Defendants DENY ¶ 33.

## SECOND CLAIM

### The Legislation Does Not Recognize
### Local Government Boundaries

34.     Plaintiffs incorporate by reference the allegations in paragraphs 1 through 33 above.

**Answer to ¶ 34:** Defendants incorporate their responses to ¶¶ 1 through 33 of the First Amended Complaint, above, as though fully set forth herein.

35.     The state constitution requires that, to the extent possible, wards and municipalities be kept whole within legislative district boundaries. It mandates that they be "bounded" by lines drawn for local political units. The new districts are not bound by county, precinct, town or ward lines already established by local governments. Some are unnecessarily divided. The legislation splits significantly more counties, municipalities and wards than the 2002 boundaries. The districts in Racine, Kenosha, Appleton, Beloit and Milwaukee, discussed above in paragraphs 31a through e, are examples of these divides.

**Answer to ¶ 35:** With respect to the first two sentences of ¶ 35, defendants ASSERT that the Wisconsin Constitution speaks for itself and defendants DENY any characterization of the constitution contrary to its express terms.  Defendants DENY each and every remaining allegation in ¶ 35.

36.     In creating district boundaries, the legislation ignores local boundaries already established by local government boundaries and in the process of being established violating the state constitution. Instead, the legislature changed the state law in an attempt to force local municipalities to make their districts conform to the state's plan, violating the state constitution. *See* Exhibit C; *supra*, ¶ 20.

**Answer to ¶ 36:** Defendants DENY ¶ 36.

37.     If not otherwise enjoined or directed, the G.A.B. will carry out its statutory responsibilities involving the 2012 state legislative elections based on the impermissibly-drawn boundaries, which will harm the plaintiffs by violating their constitutional rights.

**Answer to ¶ 37:** Defendants DENY ¶ 37.

38.     In the absence of the legislatively-enacted and constitutionally-permissible districts, any elections conducted under the G.A.B.'s supervision will deprive the individual plaintiffs of their civil rights under color of state law in violation of 42 U.S.C. §§ 1983 and 1988.

**Answer to ¶ 38:** Defendants DENY ¶ 38.

### THIRD CLAIM

### Legislative Districts Unnecessarily Disenfranchise
### 300,000 Wisconsin Citizens

39.     Plaintiffs incorporate by reference the allegations to paragraphs 1 through 38 above.

**Answer to ¶ 39:** Defendants incorporate their responses to ¶¶ 1 through 38 of the First

Amended Complaint, above, as though fully set forth herein.

40.     State senators are elected to four-year terms. Senators from even-numbered districts are elected in years corresponding to the presidential election cycle; senators in odd-numbered districts are elected during mid-term elections.

**Answer to ¶ 40:** Defendants ADMIT ¶ 40.

41.     In 2012, if voters are shifted from odd to even senate districts, they will face a two-year delay in electing their state senator. They are disenfranchised, unnecessarily and unconstitutionally, by being deprived of the opportunity to vote, as the state constitution requires, every four years for a senator to represent them.

**Answer to ¶ 41:** Defendants DENY ¶ 41.

42.     The districts adopted by the state legislature unconstitutionally disenfranchise at least 299,533 citizens.

a. In two even-numbered senate districts (SD 2 and SD 32), although the 2010 census disclosed that only a few individuals (if any) needed to be moved, thousands of individuals were unnecessarily moved into odd-numbered districts. For example, Senate District 2 needed to gain 286 individuals, yet 19,859 individuals were moved out of the district and into Senate District I (which needed to *lose* 8,656 individuals).

b. In other even-numbered senate districts (SD 12, SD 14 and SD 24), although the 2010 census disclosed that the districts needed an increase in population, thousands of individuals were unnecessarily moved out of those districts and into odd-numbered districts. For example, Senate District 14 needed to gain 3,554 individuals, yet 33,046 were unnecessarily moved to Senate District 27 (which needed to *lose* 25,541 individuals).

c. In other senate districts (SD 16, SD 20, SD 22 and SD 28), although the 2010 census disclosed that the districts needed some decrease in population, the populations of these districts were decreased in substantially larger numbers than necessary to achieve equal population. For example, Senate District 22 needed to lose only 7,686 individuals and, instead, 72,431 individuals were moved out of the district and into Senate District 21 (which needed to gain only 5,598 individuals).

d. Finally, although Senate District 10 needed to lose 20,314 individuals, 19,360 of the individuals who were moved out of the district were moved into Senate District 31, which needed to *lose* 1,034 individuals.

**Answer to ¶ 42:** Defendants DENY ¶ 42. Defendants further ASSERT that 164,843 of the citizens who reside in territory that has shifted from even to odd numbered Senate Districts have had the opportunity to vote for the office of State Senator during 2011.

**Answer to ¶¶ 42(a-d):** Defendants DENY all sub-parts of ¶ 42 in their entirety.

43. If not otherwise enjoined or directed, the G.A.B. will carry out its statutory responsibilities involving the 2012 state legislative elections based on the impermissibly-drawn boundaries, which will harm the plaintiffs by violating their constitutional rights.

**Answer to ¶ 43:** Defendants DENY ¶ 43.

44. In the absence of the legislatively-enacted and constitutionally-permissible districts, any elections conducted under the G.A.B.'s supervision will deprive the individual plaintiffs of their civil rights under color of state law in violation of 42 U.S.C. §§ 1983 and 1988.

**Answer to ¶ 44**: Defendants DENY ¶ 44.

## FOURTH CLAIM

### Congressional Districts Are Not Compact and Fail to
### Preserve Communities of Interest.

45.     Plaintiffs incorporate by reference the allegations in paragraphs 1 through 44 above.

**Answer ¶ 45:**  Defendants incorporate their responses to ¶¶ 1 through 44 of the First Amended Complaint, above, as though fully set forth herein.

46.     The federal and state constitutions require that political districts be compact and preserve communities of interest.

**Answer to ¶ 46**:  Defendants ASSERT that the federal and Wisconsin Constitutions speak for themselves and further DENY any characterization of such constitutions contrary to their express terms.

47.     The compactness of a district refers both to the shape of the district as well as to the ability of citizens to relate to each other and their elected representative and the ability of the representative to relate to his or her constituents.

**Answer to ¶ 47:**  Defendants ASSERT that ¶ 47 contains purported statements of law in response to which no answer is required.  Further answering defendants DENY any and all allegations contained therein.

48.     The Congressional Districts fail to meet constitutional standards of compactness.

a. The 7th Congressional District unnecessarily spans a vast area-from Superior in the northwest to just north of Madison in the south and east into Forest County.

b. The 3rd Congressional District similarly and unnecessarily spans from the far southwest comer of the state north almost to the Twin Cities and west to the center of the state.

c. The large expanse covered by these districts results in districts that are difficult and quite costly for residents to effectively communicate with their

representative in Congress and for the elected member to effectively communicate with his or her constituents.

**Answer to ¶ 48:** Defendants DENY ¶ 48.

**Answer to ¶¶ 48(a-c):** Defendants DENY all sub-parts of ¶ 48 in their entirety. Further, defendants put plaintiffs to their proof regarding the allegations made in the sub-parts of ¶ 48.

49.     A related principle is that communities of interest be preserved. A "community of interest" refers to local government units and tribal boundaries and also includes considerations of a citizen's ethnicity, cultural affinity and traditional geographical boundaries, historical political representation, and the community's need for government services.

**Answer to ¶ 49:** Defendants ASSERT that ¶ 49 contains purported statements of law and/or legal conclusions in response to which no answer is required. Further answering defendants DENY any and all allegations contained therein.

50.     Fracturing communities of interest adversely affects the ability of citizens to relate to each other and to their representatives.

**Answer to ¶ 50:** Defendants ASSERT that ¶ 50 contains purported statements of law and/or legal conclusions in response to which no answer is required. Further answering defendants DENY any and all allegations contained therein.

51.     The Congressional Districts created by the legislature impermissibly divide communities of interest:

a. Fox Valley Area: The new legislation unnecessarily fractures the Fox Valley area. The City of Appleton is split between the 8th and 6th Congressional Districts, and the Cities of Neenah and Menasha are separated from the remaining Fox Valley municipalities.

b. Milwaukee Area: Milwaukee County is now fractured into four separate districts, compared with the 2002 boundaries where the county was represented by only three members of Congress.

**Answer to ¶ 51:** Defendants DENY ¶ 51.

**Answer to ¶ 51(a-b):** Defendants DENY all sub-parts of ¶ 51 in their entirety. Further, defendants put plaintiffs to their proof regarding the allegations made in the sub-parts of ¶ 51.

52.     If not otherwise enjoined or directed, the G.A.B. will carry out its statutory responsibilities involving the 2012 Congressional elections based on the impermissibly-drawn boundaries, which will harm the plaintiffs by violating their constitutional rights.

**Answer to ¶ 52:** Defendants DENY ¶ 52.

53.     In the absence of the legislatively-enacted and constitutionally-permissible districts, any elections conducted under the G.A.B.'s supervision will deprive the individual plaintiffs of their civil rights under color of state law in violation of 42 U.S.C. §§ 1983 and 1988.

**Answer to ¶ 53:** Defendants DENY ¶ 53.

## FIFTH CLAIM

### Congressional and Legislative Districts Constitute
### Unconstitutional Gerrymandering

54.     Plaintiffs incorporate by reference the allegations in paragraphs 1 through 53 above.

**Answer to ¶ 54:** Defendants incorporate their responses to ¶¶ 1 through 53 of the First Amended Complaint, above, as though fully set forth herein.

55.     The Equal Protection Clause and the First Amendment require that all citizens have an equally effective opportunity to elect their representatives and prohibit vote dilution in the form of partisan gerrymandering that substantially disadvantages voters of one party in their opportunity to influence the political process.

**Answer to ¶ 55:** Defendants ASSERT that the Equal Protection Clause, of the Fourteenth Amendment, and the First Amendment speak for themselves and further DENY any characterization of such Amendments contrary to their express terms.

56.     The majority's legislative leadership deliberately and systematically created Congressional and legislative districts to give their political party an unfair

electoral advantage in an attempt to preserve their political majorities and minimize the electoral prospects for the minority party. For example:

> a. For the last decade and more, Wisconsin's statewide partisan elections have been close, with four of the last five statewide Presidential and gubernatorial elections slightly favoring the Democratic candidates. Applying the election results from these five recent elections to the new political boundaries, however, would give Republicans 54 seats in the 99-seat assembly.

> b. Using the results from 2004, when the Presidential election results were virtually even, under the new boundaries Republicans would have won 58 assembly seats.

**Answer to ¶ 56:** Defendants DENY ¶ 56.

**Answer to ¶ 56(a-b):** Defendants DENY all sub-parts of ¶ 56 in their entirety.

57. The new Congressional and legislative districts will, consistently and impermissibly, degrade the influence of minority party voters on the political process as a whole. Under the legislation, Democrats have little chance of attaining and retaining a majority in either the senate or the assembly, or in the Congressional delegation, giving them little ability to overcome minority status at any point over the next decade.

**Answer to ¶ 57:** Defendants DENY ¶ 57.

58. The legislation places incumbents in shared legislative districts in a way that will likely result in the loss of at least five Democratic seats, with four additional Democratic incumbents able to retain a seat only if they move to an adjacent Democratic-leaning district. In contrast, no Republican incumbent will lose a seat and only two Republican incumbents would need to move to an adjacent, open Republican-leaning district. Under these boundaries, the assembly may go from a 59-39 Republican majority to a 64-34 Republican majority in 2012.

**Answer to ¶ 58:** Defendants DENY ¶ 58.

59. Plaintiffs in districts held by Democrats have been-and, as a result of the new legislation, will continue to be-denied fair representation in the state legislature and Congress in 2012 and beyond.

> a. The minority party was denied a fair chance to participate in the redistricting process.

> b. The minority party in the state legislature has been similarly denied access to the political process throughout the 2011-12 legislative term. Plaintiffs

and other Wisconsin residents also have been precluded from meaningful participation in the legislative process. As a result, plaintiffs have been unable to fully participate in the public debate on which the political system depends.

**Answer to ¶ 59:** Defendants DENY ¶ 59.

**Answer to ¶¶ 59(a-b):** Defendants DENY all sub-parts of ¶ 59 in their entirety. Further, defendants put plaintiffs to their proof regarding the allegations made in the sub-parts of ¶ 59.

60. If not otherwise enjoined or directed, the G.A.B. will carry out its statutory responsibilities involving the 2012 state legislative elections based on the impermissibly-drawn boundaries, which will harm the plaintiffs by violating their constitutional rights.

**Answer to ¶ 60:** Defendants DENY ¶ 60.

61. In the absence of the legislatively-enacted and constitutionally-permissible districts, any elections conducted under the G.A.B.'s supervision will deprive the individual plaintiffs of their civil rights under color of state law in violation of 42 U.S.C. §§ 1983 and 1988.

**Answer to ¶ 61:** Defendants DENY ¶ 61.

## SIXTH CLAIM

### Legislative Districts Unconstitutionally Use
### Race As A Predominant Factor

62. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 61 above.

**Answer to ¶ 62:** Defendants incorporate their responses to ¶¶ 1 through 61 of the First Amended Complaint, above, as though fully set forth herein.

63. The Voting Rights Act, 42 U.S.C. § 1973, precludes a state from minimizing the opportunities for minority groups to participate in the political process. Among other things, it precludes "packing" minorities into legislative districts and from fracturing minorities into several districts to dilute their influence.

**Answer to ¶ 63:** Defendants ASSERT that the Voting Rights Act speaks for itself and DENY any characterization of such document contrary to its express terms.

64. Federal law requires newly-drawn districts to reflect communities of interest along with race. Federal law further requires state legislatures to establish districts, where possible, with the minority citizens comprising a numerical majority of the citizen voting age population.

**Answer to ¶ 64:** The allegations in ¶ 64 constitute legal conclusions to which a responsive pleading is not required.

65. Although the new legislative boundaries establish minority-majority and minority influence districts, they do so by unnecessarily shifting populations, fracturing communities that have historically been represented by the same representative, and combining new communities without regard for any factors other than, on their face, race.

**Answer to ¶ 65:** Defendants DENY ¶ 65.

66. Under the new legislation, African Americans have less opportunity than other members of the electorate to participate in the political process:

a. Racial bloc voting is pervasive in the City of Milwaukee among both majority and African American groups.

b. African Americans comprise a sufficiently large and geographically compact group to constitute a majority of the voting age population in at least seven assembly districts.

c. The new legislation creates only six assembly districts where a majority of the voting age population is African American.

d. At least one additional assembly district comprised of a majority of African Americans of voting age population can be established in the City of Milwaukee without violating constitutional requirements.

e. The failure to create at least seven assembly districts with minority-majority populations violates section 2 of the Voting Rights Act of 1965 and the Fourteenth Amendment.

**Answer to ¶ 66:** Defendants DENY ¶ 66.

**Answer to ¶ 66(a):** Defendants lack knowledge or information sufficient to form a belief as to the truth of the matters asserted in ¶ 66(a) and, therefore, DENY the same.

**Answer to ¶ 66(b):** Defendants DENY ¶ 66(b).

**Answer to ¶ 66(c):** Defendants ADMIT that the new legislation creates six Assembly Districts where a majority of the voting age population is African American. Defendants further DENY any and all remaining allegations contained in ¶ 66(c).

**Answer to ¶ 66(d):** Defendants DENY ¶ 66(d).

**Answer to ¶ 66(e):** Defendants DENY ¶ 66(e).

67. Under the new legislation, Latinos have less opportunity than other members of the electorate to participate in the political process:

a. Racial bloc voting is pervasive in the City of Milwaukee among majority and Latino groups.

b. Latino populations comprise a large and geographically compact group.

c. The new legislation fails to create any district with sufficient Latino voting age citizen population.

d. The new legislation's failure to draw a district with sufficient Latino voting age citizen population violates section 2 of the Voting Rights Act of 1965.

**Answer to ¶ 67:** Defendants DENY ¶ 67.

**Answer to ¶ 67(a):** Defendants lack knowledge or information sufficient to form a belief as to the truth of the matters asserted in ¶ 67(a) and, therefore, DENY the same.

**Answer to ¶ 67(b):** Defendants DENY ¶ 67(b).

**Answer to ¶ 67(c):** Defendants DENY ¶ 67(c).

**Answer to ¶ 67(d):** Defendants DENY ¶ 67(d).

68.   The new legislation unconstitutionally ignores nonracial bases of identity.

a. The new Racine-Kenosha senate district includes populations that belong to the same race but otherwise have little common communities of interest.

b. In Milwaukee, by shifting existing districts based solely on race and ignoring other redistricting principles, the legislative districts include populations that belong to the same race but otherwise have little else in common.

**Answer to ¶ 68:**  Defendants DENY ¶ 68.

**Answer to ¶ 68(a-b):**  Defendants DENY all sub-parts of ¶ 68.

69.   Other legislative boundaries also unnecessarily shift populations and fracture Native American communities that have historically been represented by the same representative. For example:

a. Members of the Oneida Nation have historically been represented by one member of the assembly and one member of the senate. Under the 2002 boundaries, members of the Oneida Nation were primarily within Assembly District 5 and Senate District 2. Under the new legislation, members of the Oneida Nation have been fractured and now reside in at least two assembly districts. As a result, members of the Oneida Nation are now spread among multiple districts, lessening their political influence.

b. Members of the Stockbridge-Munsee and Menominee tribes have historically been represented by one member of the assembly and one member of the senate. Under the 2002 boundaries, members of these tribes were in Assembly District 36 and Senate District 12. The new legislation divides the tribes between the 36th and 6th Assembly Districts, which also places the members in different senate districts (12th and 2nd, respectively). As a result, members of the Stockbridge-Munsee and Menominee tribes are now spread among three assembly districts and two senate districts, lessening their political influence.

c. Members of the Forest County Potawatomi have historically been represented by one member of the assembly and one member of the senate. Under the 2002 boundaries, members of the tribe were in Assembly District 36 and Senate District 12. Under the new legislation, members of the Forest County Potawatomi are divided between the 36th and 34th Assembly Districts, lessening their political influence.

**Answer to ¶ 69:**  Defendants DENY ¶ 69.

**Answer to ¶ 69(a):**   Defendants lack knowledge or information sufficient to form a belief as to the truth of the matters asserted in the first two sentences of ¶ 69(a), and therefore DENY the same and put plaintiffs to their proof thereon.  Defendants DENY the remaining allegations of ¶ 69(a).

**Answer to ¶ 69(b):**   Defendants lack knowledge or information sufficient to form a belief as to the truth of the matters asserted in the first two sentences of ¶ 69(b), and therefore DENY the same and put plaintiffs to their proof thereon.  Defendants DENY the remaining allegations of ¶ 69(b).

**Answer to ¶ 69(c):**   Defendants lack knowledge or information sufficient to form a belief as to the truth of the matters asserted in the first two sentences of ¶ 69(c), and therefore DENY the same and put plaintiffs to their proof thereon.   Defendants DENY the remaining allegations of ¶ 69(c).

70.     If not otherwise enjoined or directed, the G.A.B. will carry out its statutory responsibilities involving the 2012 state legislative elections based on the impermissibly-drawn boundaries, which will harm the plaintiffs by violating their constitutional rights.

**Answer to ¶ 70:**  Defendants DENY ¶ 70.

71.     In the absence of the legislatively-enacted and constitutionally-permissible districts, any elections conducted under the G.A.B.'s supervision will deprive the individual plaintiffs of their civil rights under color of state law in violation of 42 U.S.C. §§ 1983 and 1988.

**Answer to ¶ 71:**  Defendants DENY ¶ 71.

## SEVENTH CLAIM

### New Congressional and Legislative Districts Are Not Justified
### By Any Legitimate State Interest

72.     Plaintiffs incorporate by reference the allegations in paragraphs 1 through 71 above.

**Answer to ¶ 72:**  Defendants incorporate their responses to ¶¶ 1 through 71 of the First Amended Complaint, above, as though fully set forth herein.

73.     The Equal Protection Clause allows some deviation from population equality in political boundaries if the deviations are based on established redistricting policies.

**Answer to ¶ 73:**  Defendants ASSERT that the Equal Protection Clause of the Fourteenth Amendment speaks for itself and DENY any characterization of such Clause contrary to its express terms.

74.     The legislature failed to take into account the well-established principles of compactness, maintaining communities of interest, and preserving core populations from prior districts in establishing new district boundaries.

**Answer to ¶ 74:**  Defendants DENY ¶ 74.

75.     The legislature failed to take into account the state constitution's requirement of basing legislative districts on municipal, ward and other local government boundaries.

**Answer to ¶ 75:**  Defendants DENY ¶ 75.

76.     Because the new legislation ignores established redistricting obligations, the state had no justification for any population deviation whatsoever; the population deviations – although modest – are greater than necessary because they do nothing to preserve communities of interest, preserve core populations, and are not based on local boundaries.

**Answer to ¶ 76:**  Defendants DENY ¶ 76.

77. There is no legitimate state interest that justifies the new Congressional and legislative districts.

**Answer to ¶ 77:** Defendants DENY ¶ 77.

78. If not otherwise enjoined or directed, the G.A.B. will carry out its statutory responsibilities involving the 2012 state legislative elections based on the impermissibly-drawn boundaries, which will harm the plaintiffs by violating their constitutional rights.

**Answer to ¶ 78:** Defendants DENY ¶ 78.

79. In the absence of the legislatively-enacted and constitutionally-permissible districts, any elections conducted under the G.A.B.'s supervision will deprive the individual plaintiffs of their civil rights under color of state law in violation of 42 U.S.C. §§ 1983 and 1988.

**Answer to ¶ 79:** Defendants DENY ¶ 79.

## AFFIRMATIVE DEFENSES

1. Plaintiffs have failed to state a claim for which relief may be granted as a matter of law.

2. Plaintiffs have failed to set forth a basis upon which they are entitled to declaratory or injunctive relief as there has been no violation of either the Wisconsin or Federal Constitution through the enactment of the new redistricting boundaries.

3. The new redistricting legislation directly advances state and/or governmental interests and it is not more extensive than necessary to serve those interests.

4. The redistricting Acts are presumed to be valid, *Davis v. Grover*, 166 Wis. 2d 501, 520, 480 N.W.2d 460 (1992), and the burden is on the challenger to prove beyond a reasonable doubt that they are unconstitutional. *State v. Chvala*, 2004 WI App 53, ¶ 9, 271 Wis. 2d 115, 678 N.W.2d 880; *State ex rel. Hammermill Paper Co. v. La Plante*, 58 Wis. 2d 32, 46, 205 N.W.2d 784 (1973). It is not enough that a challenger establish doubt as

to an act's constitutionality nor is it sufficient that a challenger establish the unconstitutionality of an act is a possibility. *Id.* If any doubt exists, it must be resolved in favor of constitutionality. *State ex rel. Thomson v. Giessel*, 265 Wis. 558, 564, 61 N.W.2d 903 (1953).

5. The State Constitution vests the State Legislature with the authority to reapportion the legislative boundaries every ten years. Wis. Const. art. IV, § 3; U.S. Const. art. I, § 2; *Growe v. Emison*, 507 U.S. 25, 34 (1993). "In the reapportionment context, the [United States Supreme] Court has required federal judges to defer consideration of disputes involving redistricting where the State, through its legislative *or* judicial branch, has begun to address that highly political task itself." *Growe*, 507 U.S. at 33 (emphasis in original). Here, the State Legislature has completed redistricting plans which have been signed into law. Even without 2011 Wisconsin Act 39 (which established the state court procedure to challenge redistricting maps), the state judiciary is the next appropriate venue for any constitutional challenges. Pursuant to the United States Supreme Court's dictates, first set forth in 1965 in *Scott v. Germano*, 381 U.S. 407 (1965) (*per curiam*), state legislatures and judiciaries are to have the primary redistricting responsibilities.

6. "Federal-court review of districting legislation represents a serious intrusion on the most vital of local functions." *Miller v. Johnson*, 515 U.S. 900, 915 (1995). "It is well settled that 'reapportionment is primarily the duty and responsibility of the State.'" *Id.* (quoting *Chapman v. Meier*, 420 U.S. 1, 27 (1975)). The State Legislature has broad power and vast discretion to make policy decisions as to the drawing of redistricting maps after a decennial census.

7. The legislative and congressional districts created in the new legislation do not unconstitutionally sacrifice redistricting principles.

8.     The legislative and congressional districts satisfy the requirement that they be as geographically compact as is practicable.  Wis. Const. art. IV, § 4; *Wisconsin State AFL-CIO v. Elections Board*, 543 F. Supp. 630, 634 (E.D. Wis. 1982) ("The constitutional requirement of compactness is not absolute . . .").

9.     The legislative districts created in the new legislation, to the extent possible, recognize local government boundaries.  "While maintaining the integrity of county lines may be a desirable objective, [the Courts] believe its general incompatibility with population equality makes it only a consideration of secondary importance."  *Wisconsin State AFL-CIO*, 543 F. Supp. at 635.

10.     The plaintiffs' claims of "disenfranchisement" do not form the basis for a claim for relief through the invalidation of the redistricting maps.  Courts have considered such postponement in the ability to vote in a staggered term system as the "inevitable consequences of redistricting[.]"  *Republican Party of Oregon v. Keisling*, 959 F.2d 144, 145 (9th Cir.), *cert. denied*, 504 U.S. 914 (1992). *See Mader v. Crowell*, 498 F. Supp. 226, 231 (M.D. Tenn. 1980) ("[t]he temporary disenfranchisement of these voters violates neither the equal protection clause nor any other constitutional provision"); *In re Reapportionment of the Colorado General Assembly*, 647 P.2d 191, 198 (Col. 1982) (*en banc*); *State Elections Board v. Bartolomei*, 434 N.E.2d 74, 78 (Ind. 1982) ("this impingement upon the right to vote is the natural and unavoidable consequence of redistricting and maintaining a system of staggered terms of office for members of the same governmental body"); and *People ex rel. Snowball v. Pendegast*, 31 P. 103, 105 (Cal. 1892) ("[u]ndoubtedly these [delays] are inconvenient and deplorable results, but it must be assumed that they were foreseen and deliberately accepted by the framers of the constitution").

11.    Additionally, 164,843 of the citizens who reside in territory that has shifted from even to odd numbered Senate Districts have had the opportunity to vote for the office of State Senator during 2011, thereby reducing by more than half the number of citizens whose opportunity to vote for the office of State Senator may be postponed.  The opportunity to vote for the office of State Senator in odd numbered districts may arise prior to 2014 in the event of additional special elections or recalls, thereby further reducing the number of citizens whose opportunity to vote for the office of State Senator may be postponed.

12.    There is no basis for plaintiffs' claims that the congressional and legislative districts unlawfully dilute votes or have been created as a form of partisan gerrymandering to substantially disenfranchise votes of one party in order to influence the political system.  Moreover, without conceding that there was a partisan basis for the new district boundaries, "[t]he fact that district boundaries may have been drawn in a way that minimizes the number of contests between present incumbents does not in and of itself establish invidiousness."  *Burns v. Richardson*, 384 U.S. 73, 89, n.16 (1966).  Finally, and of more import, the claim of political gerrymandering in a congressional redistricting plan is non-justiciable because there are no judicially discernable and manageable standards for adjudicating such a claim.   *Vieth v. Jubelirer*, 541 U.S. 267, 281 (2004) (plurality).  Accordingly, the Fifth Cause of Action should be dismissed as a matter of law.

13.    The redistricting maps do not violate any provisions of the Voting Rights Act.

14.    The legislative districts do not unconstitutionally use race as a predominant factor.

15.    Assuming, *arguendo*, that the new redistricting legislation is susceptible to two constructions, by one of which constitutional questions arise and by the other of which such questions are avoided, the courts are required to adopt the latter construction and to interpret the

redistricting legislation so as not to render it unconstitutional or void. *Basinas v. State*, 104 Wis. 2d 539, 546, 312 N.W.2d 483 (1981); *State ex rel. Harvey v. Morgan*, 30 Wis. 2d 1, 13, 139 N.W.2d 585 (1966).

WHEREFORE, defendants, the Members of the Wisconsin Government Accountability Board, Michael Brennan, David Deininger, Gerald Nichol, Thomas Cane, Thomas Barland, and Timothy Vocke, and Kevin Kennedy, Director and General Counsel, demand judgment as follows:

1.      Denying the declaratory relief sought by plaintiffs.

2.      Denying the injunctive relief sought by plaintiffs.

3.      Dismissing the First Amended Complaint on its merits and with prejudice.

4.      Awarding defendants their costs and reasonable attorneys' fees.

5.      Such other and further relief as the Court may deem appropriate.

Dated this 4th day of November, 2011.

J.B. VAN HOLLEN
Attorney General

s/Maria S. Lazar
MARIA S. LAZAR
Assistant Attorney General
State Bar #1017150

Attorneys for Defendants

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 267-3519
(608) 267-2223 (fax)
*lazarms@doj.state.wi.us*

baldus - redistricting\answer.amended.docx