# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

ALVIN BALDUS, CINDY BARBERA, CARLENE
BECHEN, RONALD BIENDSEIL, RON BOONE,
VERA BOONE, ELVIRA BUMPUS, EVANJELINA
CLEEREMAN, SHEILA COCHRAN, LESLIE W.
DAVIS III, BRETT ECKSTEIN, MAXINE HOUGH,
CLARENCE JOHNSON, RICHARD KRESBACH,
RICHARD LANGE, GLADYS MANZANET,
ROCHELLE MOORE, AMY RISSEEUW, JUDY       Civil Action
ROBSON, GLORIA ROGERS, JEANNE SANCHEZ-   File No. 11-cv-562
BELL, CECELIA SCHLIEPP, TRAVIS THYSSEN,

        Plaintiffs,       Three-judge panel
                28 U.S.C. § 2284

  v.

Members of the Wisconsin Government Accountability
Board, each only in his official capacity:
MICHAEL BRENNAN, DAVID DEININGER,
GERALD NICHOL, THOMAS CANE,
THOMAS BARLAND, and TIMOTHY VOCKE, and
KEVIN KENNEDY, Director and General Counsel for the
Wisconsin Government Accountability Board,

        Defendants.

---

## SECOND AMENDED COMPLAINT FOR DECLARATORY
## AND INJUNCTIVE RELIEF

---

Plaintiffs, for their second amended complaint, under 42 U.S.C. § 1983 and 28 U.S.C.

§ 2284(a)—and, as a matter of course under Rule 15(a)(1)(B), Fed. R. Civ. P. and the Court's

Scheduling and Discovery Order—allege that:

### SUMMARY

This is an action for a declaratory judgment and for injunctive relief, involving the rights

of plaintiffs under the U.S. Constitution and the Wisconsin Constitution and the

statutorily-mandated configuration of the eight congressional districts, 33 senate districts and

99 assembly districts in the State of Wisconsin for 2012 and beyond. These districts—reflected

in legislation adopted on July 19 and 20, 2011, Wisconsin Acts 43 and 44, and signed by the

Governor on August 9, 2011—are unconstitutional.

This case arises under the U.S. Constitution, Article I, Section 2, and the First, Fifth and

Fourteenth Amendments, Sections 1, 2 and 5; under 42 U.S.C. §§ 1983 and 1988; under the

Voting Rights Act, 42 U.S.C. § 1973; and, under article IV, sections 3 through 5 of the

Wisconsin Constitution. This second amended complaint supersedes the complaint filed on

June 10, 2011, and the amended complaint filed on July 21, 2011.

Plaintiffs seek a declaratory judgment that:

- The redistricting law in Act 43 violates the constitutional requirements that legislative districts be substantially equal in population while maintaining contiguity, compactness, communities of interest, and core district populations and that they be based upon county, precinct, town or ward lines;

- Act 43 violates the Equal Protection Clause and the Wisconsin Constitution in that it disenfranchises nearly 300,000 citizens by unnecessarily extending, for them, the time between elections of state senators from four to six years;

- The congressional redistricting statute in Act 44 violates the constitutional requirement that districts be compact and preserve communities of interest;

- Both the congressional and legislative redistricting laws violate the First and Fourteenth Amendments in that the districts reflect deliberate, systematic and impermissible partisan gerrymandering and impinge upon freedom of association and expression by penalizing voters and elected representatives solely because of their political affiliation and beliefs;

- The law in Act 43 violates the statutory and constitutional prohibitions against using race as a predominant factor in creating district boundaries;

- The congressional and legislative redistricting laws violate the Equal Protection Clause because they cannot be justified as furthering any legitimate state interest and are, therefore, unconstitutional; and

- Any special or recall elections cannot be conducted under Act 43 because plaintiffs would be deprived of equal protection and their right to mandate legislative elections and participate in them pursuant to the state constitution.

Upon such declarations, plaintiffs request injunctive relief prohibiting any elections, including recall or special elections, from being conducted under the boundaries created by the new statutes. Plaintiffs further request that in the event valid boundaries are not enacted in sufficient time for the 2012 candidate qualifying period and elections according to the statutory schedule, the Court formulate and implement congressional and state legislative districts that comport with constitutional and statutory requirements.

## JURISDICTION[1]

1. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1357 and 2284 to hear the claims for legal and equitable relief arising under the U.S. Constitution and federal law and supplemental jurisdiction under 28 U.S.C. § 1367 to hear claims under the Wisconsin Constitution and state law. It also has general jurisdiction under 28 U.S.C. §§ 2201 and 2202, the Declaratory Judgments Act, to grant the declaratory relief requested.

2. This action challenges the constitutionality of the statutorily-adopted boundaries for the state's congressional and legislative districts, found in chapters 3 and 4 of the Wisconsin Statutes. While these congressional and state legislative district boundaries are based on the 2010 census, they nevertheless are unconstitutional and violate state and federal law.

3. Accordingly, under 28 U.S.C. § 2284(a), a district court of three judges has been convened to hear the case. In 1982, 1992 and 2002, three-judge panels convened pursuant to 28 U.S.C. § 2284 and resolved complaints like this one, developing redistricting plans for the state legislature in the absence of valid plans enacted into law.

---

[1] On October 21, 2011, this Court denied the defendants' motion to dismiss the amended complaint on procedural and substantive grounds. *See* Dkt. #25.

**VENUE**

4.      Venue is properly in this Court under 28 U.S.C. § 1391(b) and (e).  At least one of the defendants resides in the Eastern District of Wisconsin.  In addition, at least 14 of the individual plaintiffs reside and vote in this judicial district.

**PARTIES**

*Plaintiffs*

5.      Plaintiffs are citizens, residents and qualified voters of the United States and the State of Wisconsin, residing in various counties and congressional and legislative districts (as now re-established by Acts 43 and 44).  Regardless of their place of residence, their rights are harmed or threatened with harm by political district boundaries that violate federal and state law.

a.      Alvin Baldus, a citizen of the United States and of the State of Wisconsin, is a resident and registered voter of Menomonie, Dunn County, Wisconsin, with his residence in the 3rd Congressional District, 67th Assembly District and 23rd Senate District as those districts have been established by law.

b.      Cindy Barbera, a citizen of the United States and of the State of Wisconsin, is a resident and registered voter of the City of Madison, Dane County, Wisconsin, with her residence in the 2nd Congressional District, 78th Assembly District and 26th Senate District as those districts have been established by law.

c.      Carlene Bechen, a citizen of the United States and of the State of Wisconsin, is a resident and registered voter of the Village of Brooklyn, Dane County, Wisconsin, with her residence in the 2nd Congressional District, 80th Assembly District and the 27th Senate District as those districts have been established by law.

d.      Ronald Biendseil, a citizen of the United States and of the State of Wisconsin, is a resident and registered voter of Middleton, Dane County, Wisconsin, with

his residence in the 2nd Congressional District, 79th Assembly District and 27th Senate District as those districts have been established by law.

     e.     Ross Boone, a citizen of the United States and of the State of Wisconsin, is a resident and registered voter of the Village of Twin Lakes, Kenosha County, Wisconsin, with his residence in the 1st Congressional District, 61st Assembly District and the 21st Senate District as those districts have been established by law.

     f.     Vera Boone, a citizen of the United States and of the State of Wisconsin, is a resident and registered voter of the Village of Twin Lakes, Kenosha County, Wisconsin, with her residence in the 1st Congressional District, 61st Assembly District and the 21st Senate District as those districts have been established by law.

     g.     Elvira Bumpus, a citizen of the United States and of the State of Wisconsin, is a resident and registered voter of the City of Racine, Racine County, Wisconsin, with her residence in the 1st Congressional District, 66th Assembly District and 22nd Senate District as those districts have been established by law.

     h.     Evanjelina Cleereman, a citizen of the United States and of the State of Wisconsin, is a resident and registered voter of the City of Milwaukee, Milwaukee County, Wisconsin, with her residence in the 4th Congressional District, 8th Assembly District and 3rd Senate District as those districts have been established by law.

     i.     Sheila Cochran, a citizen of the United States and of the State of Wisconsin, is a resident and registered voter of the City of Milwaukee, Milwaukee County, Wisconsin, with her residence in the 4th Congressional District, 17th Assembly District and the 4th Senate District as those districts have been established by law.

j.       Leslie W. Davis III, a citizen of the United States and of the State of Wisconsin, is a resident and registered voter of the City of Stoughton, Dane County, Wisconsin, with his residence in the 2nd Congressional District, 46th Assembly District and 16th Senate District as those districts have been established by law.

k.       Brett Eckstein, a citizen of the United States and of the State of Wisconsin, is a resident and registered voter of the Village of Sussex, Waukesha County, Wisconsin, with his residence in the 5th Congressional District, 22nd Assembly District and 8th Senate District as those districts have been established by law.

l.       Maxine Hough, a citizen of the United States and of the State of Wisconsin, is a resident and registered voter of the Town of East Troy, Walworth County, Wisconsin, with her residence in the 1st Congressional District, 32nd Assembly District and the 11th Senate District as those districts have been established by law.

m.       Clarence Johnson, a citizen of the United States and of the State of Wisconsin, is a resident and registered voter of the City of Milwaukee, Milwaukee County, Wisconsin, with his residence in the 4th Congressional District, 22nd Assembly District and the 8th Senate District as those districts have been established by law.

n.       Richard Kresbach, a citizen of the United States and of the State of Wisconsin, is a resident and registered voter of the Village of Wales, Waukesha County, Wisconsin, with his residence in the 1st Congressional District, 99th Assembly District and the 33rd Senate District as those districts have been established by law.

o.       Richard Lange, a citizen of the United States and of the State of Wisconsin, is a resident and registered voter of South Range, Douglas County,

Wisconsin, with his residence in the 7th Congressional District, 73rd Assembly District and 25th Senate District as those districts have been established by law.

      p.     Gladys Manzanet, a citizen of the United States and of the State of Wisconsin, is a resident and registered voter of the City of Milwaukee, Milwaukee County, Wisconsin, with her residence in the 4th Congressional District, 9th Assembly District and 3rd Senate District as those districts have been established by law.

      q.     Rochelle Moore, a citizen of the United States and of the State of Wisconsin, is a resident and registered voter of the City of Kenosha, Kenosha County, Wisconsin, with her residence in the 1st Congressional District, 64th Assembly District and the 22nd Senate District as those districts have been established by law.

      r.     Amy Risseeuw, a citizen of the United States and of the State of Wisconsin, is a resident and registered voter of the Town of Menasha, Outagamie County, Wisconsin, with her residence in the 8th Congressional District, 3rd state Assembly District and 1st Senate District as those districts have been established by law.

      s.     Judy Robson, a citizen of the United States and of the State of Wisconsin, is a resident and registered voter of the City of Beloit, Rock County, Wisconsin, with her residence in the 2nd Congressional District, 31st Assembly District and 11th Senate District as those districts have been established by law.

      t.     Gloria Rogers, a citizen of the United States and of the State of Wisconsin, is a resident and registered voter of the City of Racine, Racine County, Wisconsin, with her residence in the 1st Congressional District, 64th Assembly District and the 22nd Senate District as those districts have been established by law.

u.      Jeanne Sanchez-Bell, a citizen of the United States and of the State of Wisconsin, is a resident and registered voter of the City of Kenosha, Kenosha County, Wisconsin, with her residence in the 1st Congressional District, 65th Assembly District and 22nd Senate District as those districts have been established by law.

v.      Cecelia Schliepp, a citizen of the United States and of the State of Wisconsin, is a resident and registered voter of the Town of Erin, Washington County, Wisconsin, with her residence in the 5th Congressional District, 22nd Assembly District and the 8th Senate District as those districts have been established by law.

w.      Travis Thyssen, a citizen of the United States and of the State of Wisconsin, is a resident and registered voter of the Town of Grand Chute, Outagamie County, Wisconsin, with his residence in the 8th Congressional District, 56th Assembly District and the 19th Senate District as those districts have been established by law.

### Defendants

6.      Michael Brennan, resident of Marshfield, Wisconsin; David Deininger, resident of Monroe, Wisconsin; Gerald Nichol, resident of Madison, Wisconsin; Thomas Cane, resident of Wausau, Wisconsin; Thomas Barland, resident of Eau Claire, Wisconsin; and, Timothy Vocke, resident of Rhinelander, Wisconsin, each named as a defendant personally and individually but only in his official capacity, are all members of the Wisconsin Government Accountability Board ("G.A.B."). Kevin Kennedy, resident of Dane County, Wisconsin, also named only in his official capacity, is the Director and General Counsel for the G.A.B.

a.      The G.A.B. is an independent state agency under section 15.60 of the Wisconsin Statutes. The G.A.B. has "general authority" over and the "responsibility for the administration of … [the state's] laws relating to elections and election campaigns," Wis. Stat. § 5.05(1) (2009-10), including the election every two years of Wisconsin's

representatives in the assembly and every four years its representatives in the senate. It also has general responsibility for the administration of laws involving the election, every two years, of the eight members of the Wisconsin congressional delegation.

b.     Among its statutory responsibilities, the G.A.B. must notify each county clerk, under Wis. Stat. §§ 10.01(2)(a), 10.06(1)(f), and 10.72, of the date of the primary and general elections and the offices to be filled at those elections by the voters. The G.A.B. also transmits to each county clerk a certified list of candidates for whom the voters of that county may vote. Wis. Stat. § 7.08(2).

c.     The G.A.B. issues certificates of election under section 7.70(5) of the Wisconsin Statutes to the candidates elected to serve in the senate and assembly and in the U.S. House of Representatives. The G.A.B. also provides support to local units of government and their public employees, including the county clerks in each of Wisconsin's 72 counties, in administering and preparing for the election of members of the legislature and the U.S. House of Representatives. For purposes of the state's election law, the counties and their clerks are agents for the state and for the G.A.B.

### CONSTITUTIONAL AND STATUTORY PROVISIONS / FACTS

7.     The U.S. Constitution requires that the members of Congress be elected from districts with equal populations. The Wisconsin Constitution requires that state legislative districts be "substantially equal" in population, and both congressional and legislative districts must ensure continuity, compactness and, to at least a limited extent, competitiveness.

8.     The U.S. Constitution, in Article 1, Section 2, provides, in part, that "Representatives … shall be apportioned among the several states … according to their respective numbers…." It further provides that "[t]he House of Representatives shall be composed of members chosen every second year by the people of the several states…." These

9

provisions, as construed by the U.S. Supreme Court, establish a minimum constitutional guarantee of "one-person, one-vote."

9.      The Due Process Clause of the Fifth Amendment provides that "[n]o person shall … be deprived of life, liberty, or property, without due process of law."

10.     The Equal Protection Clause provides, in pertinent part:

> No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

This provision guarantees to the citizens of each state, among other rights, the right to vote in state and federal elections, including state recall and special elections, guaranteeing as well that the vote of each citizen shall be equally effective with the vote of any and every other citizen.

11.     Article IV, section 3, of the Wisconsin Constitution requires that the legislature "apportion and district anew" its senate and assembly districts following each federal census "according to the number of inhabitants."

12.     The Wisconsin Constitution also requires that legislative districts be "bounded by county, precinct, town or ward lines, [] consist of contiguous territory and be in as compact form as practicable."  Wis. Const. art. IV, § 4.  It further requires that state senators "shall be chosen" by the voters every four years.  It also gives citizens, in article XIII, section 12, the right to "petition for the recall of any incumbent elective officer…." and upon a recall election, the person receiving the "highest number of votes in the recall election shall be elected for the remainder of the term."

13.     Pursuant to 2 U.S.C. § 2a, the President transmits to Congress, based on the decennial census, "the number of persons in each State" and "the number of Representatives to which each State would be entitled under an apportionment of the then existing number of

Representatives…."  Under 2 U.S.C. § 2c, "there shall be established by law a number of districts equal to the number of Representatives to which such State is so entitled, and Representatives shall be elected only from districts so established…."

14.     The Bureau of the Census, U.S. Department of Commerce, conducted a decennial census in 2010 of Wisconsin and of all the other states under Article I, Section 2, of the U.S. Constitution.

15.     Under 2 U.S.C. §§ 2a and 2c and 13 U.S.C. § 141(c), the Census Bureau on December 21, 2010 announced and certified the actual enumeration of the population of Wisconsin at 5,686,986 as of April 1, 2010, a slight population increase from the 2000 census.  A copy of the Census Bureau's Apportionment Population and Number of Representatives, by state, is attached as Exhibit A.

### *Legislative Districts*

16.     Based on the April 2010 census, the precise ideal population for each senate district in Wisconsin is 172,333 and for each assembly district 57,444 (each a slight increase from 2000).

17.     Article IV, section 3, of the Wisconsin Constitution gives the legislature the primary responsibility for enacting a constitutionally-valid plan for legislative districts.  On August 9, 2011, the Governor signed into law Act 43 creating new legislative district boundaries.

    a.      The 2010 census populations in the newly adopted senate districts range from a low of 171,722 (611 fewer than the ideal population, the 18th Senate District) to a high of 172,798 (465 more than the ideal population, the 30th Senate District).  Thus, the total population deviation, from the most populous to the least populous district, is 1,076 persons.

b.     The 2010 census populations in the newly-adopted assembly districts range from a low of 57,220 (224 fewer than the ideal population, the 1st Assembly District) to a high of 57,658 (214 more than the ideal population, the 45th Assembly District).  Thus, the total population deviation, from the most populous to the least populous district, is 438 persons.

18.     Act 43 specifically and explicitly provides that it shall first apply ".... with respect to regular elections, to offices filled at the 2012 general election," and ".... with respect to special or recall elections, to offices filled or contested concurrently with the 2012 general election."

19.     The redistricting legislation was drafted on behalf and at the direction of the majority party's political leadership in the assembly and senate and first released to the public on July 8, 2011.

20.     The public aspects of the redistricting process were completed in just 12 days:

a.     On July 13, 2011, the legislature held the first and only public hearing to take testimony on the redistricting legislation.

b.     The Senate Judiciary Committee adopted the redistricting proposal, with minor amendments, and companion legislation on July 15, 2011.

c.     The senate approved the amended legislative redistricting proposal and companion legislation on July 19, 2011, and the assembly approved them on July 20, 2011.  They were signed into law on August 9, 2011.  A copy of Acts 43 and 44 are attached as Exhibit B.  (Copies of the original proposals were provided to this Court as Exhibits 1 and 2 attached to correspondence from defendants' counsel on July 14, 2011. *See* Dkt. #11.)

21.     At all times relevant to the redistricting process, state law established the procedures for redistricting under which local governments were first required to draw local political and ward boundaries.  Wis. Stats. §§ 5.15(1)(b) and 59.10(3)(b) (2009-10).  However, a companion bill, also passed on July 19 and 20, and signed into law on July 25, 2011, now requires local communities to draw or re-draw their local political boundaries to conform with state legislative redistricting, making it impossible for the new districts "to be bounded by county, precinct, town or ward lines …" as the state constitution requires.  A copy of this statute is attached as Exhibit C.

***Congressional Districts***

22.     Based on the April 2010 census, the precise ideal population for each congressional district in Wisconsin is 710,873.

23.     The state legislature has the primary responsibility—under Article I, Sections 2 and 4, and the Fourteenth Amendment, Section 2, of the U.S. Constitution and under 2 U.S.C. § 2c—to enact a constitutionally-valid plan establishing the boundaries for the state's eight congressional districts.

24.     On July 19 and 20, the Wisconsin legislature adopted Act 44, signed by the Governor, that created congressional district boundaries based on the 2010 census. Congressional redistricting resulted from the same legislative process and schedule described in paragraphs 19 and 20 above.

25.     The new congressional districts have minimal total population deviations.

**CLAIMS FOR RELIEF**

26.     While the new political districts contain small population deviations, the district boundaries violate the U.S. and Wisconsin constitutional and statutory requirements that each

district be compact, preserve the core population of prior districts, and preserve communities of interest—while still containing equal populations.

27.     The statutory boundaries impermissibly discriminate against plaintiffs in the political process, and the use of those boundaries for special elections, recall elections, and other elections in 2012 and beyond will deny plaintiffs equal protection and the opportunity for fair and effective representation in their state government and in their congressional districts.

**FIRST CLAIM**

**Legislative Boundaries Unconstitutionally Sacrifice
Redistricting Principles**

28.     Plaintiffs incorporate by reference the allegations in paragraphs 1 through 27 above.

29.     The federal and state constitutions require that legislative districts be apportioned with equal populations.

30.     Any deviation from exact population equality must be justified by the applicable state interest and policy.

31.     Wisconsin's traditional redistricting principles, set forth in the state's constitution, statutes and federal case law, require legislative districts to be compact, preserve core populations from prior districts, and preserve county and other political subdivision boundaries and communities of interest.  The state constitution also requires that legislative districts be based on districts first drawn by local units of government.

32.     The new legislative districts wholly and impermissibly ignore Wisconsin's traditional and mandatory redistricting principles.

        a.     They are not geographically compact—in fact, significantly less so than the 2002 boundaries established by this Court.  Legislative districts have taken bizarre

shapes, especially compared to their 2002 counterparts, including but not necessarily limited to Assembly Districts 6, 34, 37, 43, 45, 62, 64, 70, 87 and 93 and Senate Districts 8, 21 and 24. *See*, *e.g.*, Exhibit D, comparing the Racine/Kenosha districts to their 2002 counterparts.

b.      The 2011 assembly districts do not preserve core populations from prior districts. Based on the 2010 census, 323,026 individuals needed to move assembly districts; the new statute moves 2,357,592 individuals—two million more than necessary—into new assembly districts. As a result, the 2011 districts retain only 59 percent of the core population from the 2002 districts—in fact, in districts currently held by Democrats, only 49 percent of the core population is retained. (In contrast, the 2002 boundaries retained 76.7 percent of the core populations from the prior districts.) For example:

i.      According to the 2010 census, AD 81 was required to lose only 3,907 individuals to meet the ideal population; the new statute removes 57,932 individuals from the district and adds 53,984 individuals.

ii.      The 2010 census disclosed that AD 33 should have been reduced by 2,016 individuals; the new statute removes 54,763 individuals from the district and adds 52,868 individuals from other districts.

iii.      Based on the 2010 census, AD 62 needed to gain only 1,558 individuals to reach the ideal population; the new statute removes 50,983 individuals from the district and adds 52,442 individuals from other districts.

iv.     AD 37 was required to lose 1,521 individuals, according to the 2010 census; the new statute removes 52,142 individuals from the district and adds 50,684 individuals.

v.     AD 76 needed to lose 4,103 individuals to reach the ideal population; the new statute removes 54,583 individuals and adds 50,653 individuals.

c.     Many of the 2011 state senate districts also do not preserve core populations from prior districts.  The 2010 census disclosed that 231,341 individuals needed to shift senate districts; the new statute, however, moves 1,205,216 individuals. These unnecessary changes to the core populations include but are not limited to:

i.     According to the 2010 census results, SD 22, bordered on the east by Lake Michigan, had 7,686 individuals more than the ideal population; the new statute adds 66,837 individuals from a different district and removes 74,586 individuals from the existing district.

ii.     The 2010 census revealed that SD 21, which used to border SD 22 to the north, needed to increase by 5,598 individuals; the new statute adds 72,431 individuals to the district and removes 66,842 from its core 2002 population.

iii.     SD 17, bordered on the west by Minnesota and on the south by Illinois, did not need to lose any of its population; the 2010 census disclosed that its population was only 58 individuals above the ideal population—statistically and legally insignificant.  The new statute nonetheless adds 19,666 new individuals to the district and removes 19,507 individuals from the 2002 district.

iv.     Like its neighboring district, SD 32 runs along the Mississippi River on the western border of the state.  This district also did not need to be changed as the 2010 census disclosed its population at 46 individuals above the ideal population.  The new statute, however, adds 3,458 individuals to the district and removes 3,715.

v.     Also bordered by the Mississippi River to the west and SD 32 to the south, SD 31 was 1,034 individuals greater than the ideal population, according to the 2010 census.  The new statute nevertheless adds 50,132 individuals and removes 51,161 from its 2002 population.

vi.     SD 7 is in the City of Milwaukee and borders Lake Michigan to the east.  According to the 2010 census, SD 7 also did not need to change; it was only 330 below the ideal population.  However, the new statute adds 13,741 individuals to the district and removes 13,321 from the 2002 district population.

d.     The new legislative districts do not preserve communities of interest and, instead, needlessly divide cities and other local government units.  For example:

i.     The boundaries unnecessarily fracture the "Clark Square" neighborhood in Milwaukee by drawing the district boundary between the 8th and 9th Assembly Districts along Cesar E. Chavez Drive.

ii.     The assembly and senate districts in Racine and Kenosha Counties unnecessarily fracture the communities.  The City of Racine is split into six different assembly districts, including one that stretches into the City of Kenosha (AD 64) and another that stretches west to Wind Lake and the Racine County line (AD 62).  The statute also ignores the traditional and historical representation

afforded to the two counties, combining the cities into one senate district while another senate district is spread across the rural parts of both counties. While some communities of interest are fractured, other communities that have little in common are combined.

       iii.    In the Fox Valley, the City of Appleton, a majority of which has traditionally been contained within one assembly district (AD 57), is split in half with the northern half of the city now in the 56th Assembly District, which stretches west beyond the Outagamie County line and to the Winnebago County line. Residents of the City of Appleton have little in common with residents of, for example, Norwegian Bay on Lake Poygan.

       iv.    The City of Beloit has been contained traditionally and historically within one assembly district (AD 45). Act 43 splits the city in half with the western part of the city falling within AD 45 and the eastern portion within AD 31. This also places the City of Beloit in separate senate districts (SD 15 on the west and SD 11 on the east). The residents of the City of Beloit, which often has the highest unemployment rate in the state, have very little in common with residents of, for example, Lake Geneva.

       v.    In Milwaukee, three assembly districts that had historically been contained within Milwaukee County are now stretched from the edge of the city well into Waukesha County.

       e.    Other legislative boundaries also unnecessarily shift populations and fracture Native American communities that have historically been represented by the same representative. For example:

i.      Members of the Oneida Nation have historically been represented by one member of the assembly and one member of the senate.  Under the 2002 boundaries, members of the Oneida Nation were primarily within Assembly District 5 and Senate District 2.  Under the new statute, members of the Oneida Nation have been fractured and now reside in at least two assembly districts.  As a result, members of the Oneida Nation are now spread among multiple districts, lessening their political influence, and otherwise fracturing communities of interest.

ii.      Members of the Stockbridge-Munsee and Menominee tribes have historically been represented by one member of the assembly and one member of the senate.  Under the 2002 boundaries, members of these tribes were in Assembly District 36 and Senate District 12.  The new statute divides the tribes between the 36th and 6th Assembly Districts, which also places the members in different senate districts (12th and 2nd, respectively). As a result, members of the Stockbridge-Munsee and Menominee tribes are now spread among three assembly districts and two senate districts, lessening their political influence, and otherwise fracturing communities of interest.

33.     If not otherwise enjoined or directed, the G.A.B. will carry out its statutory responsibilities involving the 2012 state legislative elections—and any recall or special elections before then—based on the impermissibly-drawn boundaries, which will harm plaintiffs by violating their constitutional rights.

34.     In the absence of the statutorily- and constitutionally-permissible districts, any elections conducted under the G.A.B.'s supervision will deprive the individual plaintiffs of their civil rights under color of state law in violation of 42 U.S.C. §§ 1983 and 1988.

## SECOND CLAIM

### The Legislation Does Not Recognize
### Local Government Boundaries

35.     Plaintiffs incorporate by reference the allegations in paragraphs 1 through 34 above.

36.     The Wisconsin Constitution requires that, to the extent possible, counties, municipalities and wards be kept whole within legislative district boundaries.  It mandates that they be "bounded" by lines drawn for and by local political units.

37.     Although population equality is the primary goal of redistricting, Wisconsin's constitutional requirement of respecting political subdivisions—especially in light of the state's historically broad application of this requirement—remains a significant consideration and cannot be unnecessarily ignored; county and political subdivision divisions should be minimal.

38.     The 2011 legislative districts unconstitutionally fail to minimize the splitting of counties and political subdivisions, ignoring Wisconsin's long-established policy to maintain their integrity.

39.     The new districts are not bound by county, precinct, town or ward lines already established by local governments.  In addition, the statute splits significantly more counties, municipalities and wards than the 2002 boundaries.  The districts in Racine, Kenosha, Appleton, Beloit and Milwaukee, discussed above in paragraphs 32a through e, are examples of these impermissible divisions.

40. In creating district boundaries, the statute ignores local boundaries already established by local government and in the process of being established. Instead, the new law forces local municipalities to make their districts conform to the state's plan, violating the Wisconsin Constitution. *See* Exhibit C; *supra*, ¶ 21.

41. If not otherwise enjoined or directed, the G.A.B. will carry out its statutory responsibilities involving the 2012 state legislative elections—and any recall or special elections before then—based on the impermissibly-drawn boundaries, which will harm plaintiffs by violating their constitutional rights.

42. In the absence of the statutorily- and constitutionally-permissible districts, any elections conducted under the G.A.B.'s supervision will deprive the individual plaintiffs of their civil rights under color of state law in violation of 42 U.S.C. §§ 1983 and 1988.

## THIRD CLAIM

### Legislative Districts Unnecessarily Disenfranchise 300,000 Wisconsin Citizens[2]

43. Plaintiffs incorporate by reference the allegations in paragraphs 1 through 42 above.

44. State senators are elected to staggered four-year terms. Senators from even-numbered districts are elected in years corresponding to the presidential election cycle; senators in odd-numbered districts are elected during presidential mid-term elections.

45. In 2012, if voters are shifted from even to odd senate districts, they will face a two-year delay in electing their state senator. They are disenfranchised, unnecessarily and unconstitutionally, by being deprived of the opportunity to vote, as the Wisconsin Constitution requires, every four years for a senator to represent them.

---

[2] This Court already has determined that these allegations state a claim for relief. *See supra* p. 3 n.1.

46.     The districts adopted by the state legislature unconstitutionally disenfranchise at least 299,533 citizens.

a.     In two even-numbered senate districts (SD 2 and SD 32), although the 2010 census disclosed that only a few individuals (if any) needed to be moved, thousands of individuals were unnecessarily moved into odd-numbered districts.  For example, Senate District 2 needed to gain 286 individuals, yet 19,859 individuals were moved out of the district and into Senate District 1 (which needed to *lose* 8,656 individuals).

b.     In other even-numbered senate districts (SD 12, SD 14 and SD 24), although the 2010 census disclosed that the districts needed an increase in population, thousands of individuals were unnecessarily moved out of those districts and into odd-numbered districts.  For example, Senate District 14 needed to gain 3,554 individuals, yet 33,046 were unnecessarily moved to Senate District 27 (which needed to *lose* 25,541 individuals).

c.     In other senate districts (SD 16, SD 20, SD 22 and SD 28), although the 2010 census disclosed that the districts needed some decrease in population, the populations of these districts were decreased in substantially larger numbers than necessary to achieve equal population.  For example, Senate District 22 needed to lose only 7,686 individuals and, instead, 72,431 individuals were moved out of the district and into Senate District 21 (which needed to gain only 5,598 individuals).

d.     Finally, although Senate District 10 needed to lose 20,314 individuals, 19,360 of the individuals moved out of the district were moved into Senate District 31, which needed to *lose* 1,034 individuals.

47. If not otherwise enjoined or directed, the G.A.B. will carry out its statutory responsibilities involving the 2012 state legislative elections—and any recall or special elections before then—based on the impermissibly-drawn boundaries, which will harm plaintiffs by violating their constitutional rights.

48. In the absence of the statutorily- and constitutionally-permissible districts, any elections conducted under the G.A.B.'s supervision will deprive the individual plaintiffs of their civil rights under color of state law in violation of 42 U.S.C. §§ 1983 and 1988.

### FOURTH CLAIM

**Congressional Districts Are Not Compact and Fail to Preserve Communities of Interest**

49. Plaintiffs incorporate by reference the allegations in paragraphs 1 through 48 above.

50. The federal and state constitutions require that political districts be compact and preserve communities of interest, including core populations that historically have been in the same district.

51. The compactness of a district refers both to the shape of the district as well as to the ability of citizens to relate to each other and their elected representative and the ability of the representative to relate to his or her constituents.

52. The congressional districts fail to meet constitutional standards of compactness.

a. The 7th Congressional District unnecessarily spans a vast area—from Superior in the northwest to just north of Madison in the south, and from the Minnesota boarder in the west to Florence County in the east.

b.     The 3rd Congressional District similarly and unnecessarily spans the far southwest corner of the state north almost to the Twin Cities and west to the center of the state.

c.     The large expanse covered by these new districts results in districts that are difficult and quite costly for residents to effectively communicate with their representative in Congress and for the elected member to effectively communicate with his or her constituents.

d.     Act 44 unnecessarily shifts congressional district populations to satisfy partisan political goals.

53.     A related principle is that communities of interest be preserved.  A "community of interest" refers to local government units and tribal boundaries and also includes, but is not limited to, considerations of a citizen's ethnicity, cultural affinity and traditional geographical boundaries, historical political representation, and the community's need for government services.

54.     Fracturing communities of interest adversely affects the ability of citizens to relate to each other and to their representatives.

55.     The congressional districts created by Act 44 impermissibly divide communities of interest:

a.     Fox Valley Area:  The new statute unnecessarily fractures the Fox Valley area.  The City of Appleton is split between the 8th and 6th Congressional Districts, and the Cities of Neenah and Menasha are separated from the remaining Fox Valley municipalities.

b.      Milwaukee Area:  Milwaukee County is now fractured into four separate districts, compared with the 2002 boundaries established by this Court where the county was represented by only three members of Congress.

56.      If not otherwise enjoined or directed, the G.A.B. will carry out its statutory responsibilities involving the 2012 congressional elections based on the impermissibly-drawn boundaries, which will harm plaintiffs by violating their constitutional rights.

57.      In the absence of the statutorily- and constitutionally-permissible districts, any elections conducted under the G.A.B.'s supervision will deprive the individual plaintiffs of their civil rights under color of state law in violation of 42 U.S.C. §§ 1983 and 1988.

## FIFTH CLAIM

### Congressional and Legislative Districts Constitute Unconstitutional Gerrymandering

58.      Plaintiffs incorporate by reference the allegations in paragraphs 1 through 57 above.

59.      The Equal Protection Clause and the First Amendment require that all citizens have an equally effective opportunity to elect representatives of their choice and prohibit vote dilution in the form of partisan gerrymandering that substantially disadvantages voters of one party in their opportunity to influence the political process.

60.      The new districts violate the requirements of the Equal Protection Clause and First Amendment because the districts are not justified by neutral or applicable state interests, and constitute an impermissible partisan gerrymander.

a.      Act 43 explicitly eliminates the statutory provision that sets forth the legislature's justification for failing to attain precise population equality through the legislature's "good faith effort to apportion the legislature giving due consideration to the

need for contiguity and compactness of area, the maintenance of the integrity of political subdivisions and of communities of interest, and competitive legislative districts."

b.      The partisan effects of Acts 43 and 44 evince a systematic and deliberate effort by the Republican legislative leadership to draw districts with a distinct partisan advantage for Republican officials and candidates to the exclusion of Wisconsin's redistricting principles—including compactness, and preservation of local boundaries, communities of interest and core populations of prior districts.  For example, although on average the assembly districts retain approximately 59 percent of the core populations of prior districts, the average core population retention for districts held by Republican officials is actually 64 percent, while the average core population retention for districts held by Democratic officials is just 49 percent.

61.      The intent of the majority in enacting Acts 43 and 44 is to deny plaintiffs and other citizens inclined to vote for Democratic candidates fair representation in the state legislature and congress in 2012 and beyond, including any special or recall elections.

a.      The minority party in the state legislature was denied a fair chance to participate in the hurried and largely secret redistricting process described in paragraphs 19 and 20.

b.      The minority party in the state legislature has been similarly denied access to the political process throughout the 2011-12 legislative term.

c.      Plaintiffs and other Wisconsin residents also have been precluded from meaningful participation in the legislative process.  As a result, plaintiffs have been unable to fully participate in the public debate on which the political system depends.

62. The effect of Acts 43 and 44 is to give the Republican majority an unfair electoral advantage, disproportionate to its historical success, in an attempt to preserve their political majorities and minimize the prospects for the minority party. For example:

a. For the last decade and more, Wisconsin's partisan elections have been close, with four of the last five statewide presidential and gubernatorial elections slightly favoring the Democratic candidates. Applying the election results from these five recent elections to the new political boundaries, however, would give Republicans 54 seats in the 99-seat assembly.

b. Using the results from 2004, when the presidential election results were virtually even, under the new boundaries Republicans nevertheless would win 58 assembly seats.

63. The statute places incumbents in shared legislative districts in a way that will likely result in the loss of at least five Democratic seats, with four additional Democratic incumbents able to retain a seat only if they move to an adjacent district. In contrast, no Republican incumbent will lose a seat and only two Republican incumbents would need to move to an adjacent, open Republican-leaning district.

64. Under these boundaries, and as a direct effect of partisan gerrymandering, the assembly may go from a 59-39 Republican majority to a 64-34 Republican majority in 2012.

65. The new congressional and legislative districts will, consistently and impermissibly, degrade the influence of minority party voters on the political process as a whole. Under Acts 43 and 44, Democrats have little chance of attaining and retaining a majority in either the senate or the assembly, or in the congressional delegation, giving them little ability to

overcome minority status at any point over the next decade. This infringes upon plaintiffs' freedoms of association and expression, including campaigning and voting.

66.     The new districts will impair the minority party's association and expression rights as well by limiting the ability to recruit candidates, and it will deter potential candidates from exercising their right to run for office by making a Democratic candidacy futile. The new districts also will deter potential Democratic voters from casting ballots that, by definition, are likely to be meaningless.

67.     A political candidate with less chance of winning an election will usually receive less in campaign contributions, a form of political speech, than a candidate with a greater chance of winning. Accordingly, the new districts impair the ability of Democratic candidates or donors to raise campaign contributions and thereby engage in political speech.

68.     The legislature's districting is arbitrary and discriminatory.

69.     The legislature's districting implicates First Amendment rights and is not narrowly tailored to achieve a compelling state interest.

70.     If not otherwise enjoined or directed, the G.A.B. will carry out its statutory responsibilities involving the 2012 state legislative and congressional elections, and any state recall or special elections that precede them, based on the impermissibly-drawn boundaries, which will harm plaintiffs by violating their constitutional rights.

71.     In the absence of the statutorily- and constitutionally-permissible districts, any elections conducted under the G.A.B.'s supervision will deprive the individual plaintiffs of their civil rights under color of state law in violation of 42 U.S.C. §§ 1983 and 1988.

## SIXTH CLAIM

### Legislative Districts Violate the Federal Voting Rights Act

72.     Plaintiffs incorporate by reference the allegations in paragraphs 1 through 71 above.

73.     The Voting Rights Act, 42 U.S.C. § 1973, precludes a state from minimizing the opportunities for minority groups to participate in the political process.  Among other things, it precludes "packing" minorities into legislative districts and fracturing minorities into several districts to dilute their influence.

74.     Federal law requires newly-drawn districts to reflect communities of interest along with race.  It further requires state legislatures to establish districts, where possible, with the minority citizens comprising a numerical majority or near majority of the citizen voting age population.

75.     Although the new legislative boundaries establish minority-majority and minority influence districts, they do so by unnecessarily shifting populations, fracturing communities that have historically been represented by the same representative, and combining communities without regard for any factors other than, on their face, race.

76.     Under the new statute, African Americans, including but not limited to Sheila Cochran and Clarence Johnson, have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.

    a.     Racial bloc voting is pervasive in the City of Milwaukee among both majority and African American groups.  Majority bloc voting is almost invariably sufficient to defeat the minority's preferred candidate.

b.      African Americans comprise a sufficiently large and geographically compact group to constitute a majority of the voting age population in at least seven assembly districts.

c.      The new statute, however, creates only six assembly districts where a majority of the voting age population is African American.

d.      It is possible to create a redistricting plan that will provide more African Americans a more equal opportunity to elect candidates of their choice.

e.      At least one additional assembly district comprised of a majority of African Americans of voting age population can be established in the City of Milwaukee without violating constitutional and statutory requirements.

f.      The statute's failure to create at least seven assembly districts with minority-majority populations violates section 2 of the Voting Rights Act of 1965 and the Fourteenth Amendment.

77.     Under the new statute, Latinos, including but not limited to Evanjelina Cleereman and Gladys Manzanet, have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice:

a.      Racial bloc voting is pervasive in the City of Milwaukee among both majority and Latino groups.  Majority bloc voting is almost invariably sufficient to defeat the minority's preferred candidate.

b.      Latino populations comprise a sufficiently large and geographically compact group to elect at least one legislator of their choice, yet the statute fails to create any district with sufficient Latino voting age citizen population.

    c.     It is possible to create a redistricting plan that will provide Latinos a more equal opportunity to elect at least one legislator of their choice.

    d.     The statute's failure to draw a district with sufficient Latino voting age citizen population violates section 2 of the Voting Rights Act of 1965 and the Fourteenth Amendment.

78.     If not otherwise enjoined or directed, the G.A.B. will carry out its statutory responsibilities involving the 2012 state legislative elections—and any recall or special elections before then—based on the impermissibly-drawn boundaries, which will harm plaintiffs by violating their constitutional rights.

79.     In the absence of the statutorily- and constitutionally-permissible districts, any elections conducted under the G.A.B.'s supervision will deprive the individual plaintiffs of their civil rights under color of state law in violation of 42 U.S.C. §§ 1973, 1983 and 1988.

## SEVENTH CLAIM

### Legislative Districts Unconstitutionally Use
### Race As A Predominant Factor

80.     Plaintiffs incorporate by reference the allegations in paragraphs 1 through 79 above.

81.     The Equal Protection Clause prohibits a state from using race as the predominant basis for splitting voters into districts to the exclusion of other redistricting criteria.

82.     The legislative process and information available to the legislature at the time Act 43 was passed, and the demographics of the 2011 legislative districts, demonstrate that race was the predominant factor in the drawing of certain legislative districts.

    a.     The new Racine-Kenosha senate district includes populations that belong to the same race, but otherwise does not take into consideration communities of interest.

b. In Milwaukee, by shifting existing districts based predominantly on race and ignoring other redistricting principles, the legislative districts include populations that belong to the same race, but otherwise have little else in common and do not take into consideration communities of interest.

83. The statute unconstitutionally considered race as the predominant factor to the exclusion of Wisconsin's traditional redistricting principles.

84. The legislature's race-based districting is not narrowly tailored to achieve a compelling state interest.

85. If not otherwise enjoined or directed, the G.A.B. will carry out its statutory responsibilities involving the 2012 state legislative elections—and any recall or special elections before then—based on the impermissibly-drawn boundaries, which will harm plaintiffs by violating their constitutional rights.

86. In the absence of the statutorily- and constitutionally-permissible districts, any elections conducted under the G.A.B.'s supervision will deprive the individual plaintiffs of their civil rights under color of state law in violation of 42 U.S.C. §§ 1983 and 1988.

## EIGHTH CLAIM

### New Congressional and Legislative Districts Are Not Justified
### By Any Legitimate State Interest

87.     Plaintiffs incorporate by reference the allegations in paragraphs 1 through 86 above.

88.     The Equal Protection Clause allows some deviation from precise population equality in political boundaries if the deviations are based on established redistricting policies and compelling state interests.

89.     The state failed to take into account the well-established principles of compactness, maintaining communities of interest, and preserving core populations from prior districts in establishing new district boundaries.

90.     The new law failed to take into account the state constitution's requirement of basing legislative districts on municipal, ward and other local government boundaries.

91.     Because the new law ignores established redistricting obligations, the state had no justification for any population deviation whatsoever; the population deviations—although modest—are greater than necessary because they do nothing to retain compactness, preserve communities of interest, preserve core populations, and are not based on local boundaries.

92.     There is no apolitical state interest that justifies the new congressional and legislative districts.

93.     If not otherwise enjoined or directed, the G.A.B. will carry out its statutory responsibilities involving the 2012 state legislative elections—and any recall or special elections before then—based on the impermissibly-drawn boundaries, which will harm plaintiffs by violating their constitutional rights.

94. In the absence of the statutorily- and constitutionally-permissible districts, any elections conducted under the G.A.B.'s supervision will deprive the individual plaintiffs of their civil rights under color of state law in violation of 42 U.S.C. §§ 1983 and 1988.

## NINTH CLAIM

### Any Special or Recall Elections Cannot Be Conducted Under Act 43

95. Plaintiffs incorporate by reference the allegations in paragraphs 1 through 94 above.

96. Defendants have approved a guideline (attached as Exhibit E) that, consistent with the mandate of Act 43, any special or recall elections scheduled before the fall 2012 general elections shall be conducted under the boundaries established by this Court in 2002 and in effect since then.

97. Any effort to conduct special or recall elections under the boundaries established by Act 43 would violate that policy, and pending the resolution of this litigation, disrupt the status quo and the electoral boundaries of a decade established by this Court. It will deprive plaintiffs of equal protection and their constitutional right to participate in legislative elections pursuant to recall.

98. The constitutionality of the 2011 legislative districts is at issue in this lawsuit. Defendants challenged only one substantive claim in their motion to dismiss plaintiffs' first amended complaint, thereby (at least tacitly) recognizing that the other allegations state a claim upon which relief may be granted.

99. In rejecting defendants' motion to dismiss, this Court recognized the unconstitutionality of potentially disenfranchising, unnecessarily, nearly 300,000 Wisconsin citizens.

100.    The challenged 2011 districts cannot serve as districts for any future elections, whether regular, special or recall elections, unless and until this Court rules on the constitutionality of the districts.

101.    The 2002 districts, therefore, are the only legal, valid and proper districts for any election prior to final disposition in this case.

## RELIEF SOUGHT

WHEREFORE, plaintiffs ask that the Court:

1.    Declare Wisconsin's eight congressional districts, as established by Act 44, unconstitutional and invalid and the maintenance of those districts for the 2012 primary election and November 6, 2012 general election a violation of plaintiffs' federal and state legal rights;

2.    Declare Wisconsin's 33 Senate Districts and 99 Assembly Districts, established by Act 43, unconstitutional and invalid and the maintenance of those districts for the 2012 primary election and November 6, 2012 general election—and any recall or special elections before then—a violation of plaintiffs' federal and state legal rights;

3.    Enjoin defendants and the G.A.B.'s employees and agents, including the county clerks in each of Wisconsin's 72 counties, from administering, preparing for and in any way permitting the nomination or election of members of the U.S. House of Representatives or of the state legislature from the unconstitutional districts that now exist in Wisconsin for the 2012 primary election and November 6, 2012 general election—and any recall or special elections before then;

4.    In the absence of constitutional state laws, adopted by the legislature and signed by the Governor in a timely fashion, establish a judicial redistricting plan to make the state's congressional and legislative districts substantially equal in population, and, in addition, meet the requirements of the U.S. Constitution and statutes and the Wisconsin Constitution and statutes;

5.    Declare as unconstitutional and enjoin the conduct of any special or recall elections under Act 43 prior to November 6, 2012;

6.    Award plaintiffs their costs, disbursements, and reasonable attorneys' fees incurred in bringing this action; and,

7.    Grant such other relief as the Court deems proper.

Dated:  November 18, 2011.

GODFREY & KAHN, S.C.

By:      *s/ Rebecca Kathryn Mason*
Rebecca Kathryn Mason
State Bar No. 1055500
Wendy K. Arends*
One East Main Street, Suite 500
P.O. Box 2719
Madison, WI  53701-2719
608-257-3911
rmason@gklaw.com

*Attorneys for Plaintiffs*

*\*Admission to the United States District Court for the Eastern District of Wisconsin is pending.*

7089526_4