1

2                    UNITED STATES DISTRICT COURT

3                    EASTERN DISTRICT OF WISCONSIN

4    _____

5    ALVIN BALDUS, CARLENE BECHEN, ELVIRA      )
     BUMPUS, RONALD BIENDSEIL, LESLIE W.       )
6    DAVIS, III, BRETT ECKSTEIN, GLORIA        )
     ROGERS, RICHARD KRESBACH, ROCHELLE        )
7    MOORE, AMY RISSEEUW, JUDY ROBSON, JEANNE  )
     SANCHEZ-BELL, CECELIA SCHLIEPP, TRAVIS    )
8    THYSSEN, CINDY BARBERA, RON BOONE, VERA   )
     BOONE, EVANJELINA CLEERMAN, SHEILA        )
9    COCHRAN, MAXINE HOUGH, CLARENCE JOHNSON,  )Case No. 11-CV-562
     RICHARD LANGE, and GLADYS MANZANET,       )  JPS-DPW-RMD
10                                             )
                     Plaintiffs,               )Milwaukee, Wisconsin
11                                             )
     TAMMY BALDWIN, GWENDOLYNNE MOORE and      )February 21, 2012
12   RONALD KIND,                              )8:30 a.m.
                                               )
13                   Intervenor-Plaintiffs,    )**VOLUME II**
                                               )**P.M. SESSION**
14   v.                                        )
                                               )
15   Members of the Wisconsin Government       )
     Accountability Board, each only in his    )
16   official capacity:  MICHAEL BRENNAN,      )
     DAVID DEININGER, GERALD NICHOL, THOMAS    )
17   CANE, THOMAS BARLAND, and TIMOTHY VOCKE,  )
     and KEVIN KENNEDY, Director and General   )
18   Counsel for the Wisconsin Government      )
     Accountability Board,                     )
19                                             )
                     Defendants,               )
20                                             )
     (caption continued on next page)          )
21   _____

22              **TRANSCRIPT OF COURT TRIAL**

23      BEFORE DIANE WOOD, CIRCUIT JUDGE, ROBERT DOW, JR., DISTRICT
             JUDGE, and J. P. STADTMUELLER, DISTRICT JUDGE
24
     Contract Reporters:        Halma-Jilek Reporting 414-271-4466
25
     Proceedings recorded by computerized stenography, transcript

produced by computer aided transcription.

```
F. JAMES SENSENBRENNER, JR., THOMAS E.   )
PETRI, PAUL D. RYAN, JR., REID J.        )
RIBBLE, and SEAN P. DUFFY,               )
                                         )
                Intervenor-Defendants.   )
_____  )
                                         )
VOCES DE LA FRONTERA, INC., RAMIRO       )
VARA, OLGA VARA, JOSE PEREZ, and         )
ERICA RAMIREZ,                           )
                                         )
                Plaintiffs,              )
                                         )
v.                                       )Case No. 11-CV-1011
                                         )  JPS-DPW-RMD
Members of the Wisconsin Government      )
Accountability Board, each only in his   )
official capacity: MICHAEL BRENNAN,      )
DAVID DEININGER, GERALD NICHOL, THOMAS   )
CANE, THOMAS BARLAND, and TIMOTHY        )
VOCKE, and KEVIN KENNEDY, Director and   )
General Counsel for the Wisconsin        )
Government Accountability Board,         )
                                         )
                Defendants.              )
_____
```

A P P E A R A N C E S

For the Plaintiffs:          **DOUGLAS M. POLAND**
                             Godfrey & Kahn, S.C.
                             780 North Water Street
                             Milwaukee, WI 53202-3590
                             414-273-3500
                             Fax: 414-273-5198
                             Email: dpoland@gklaw.com

                             **DUSTIN B. BROWN**
                             Godfrey & Kahn, S.C.
                             1 East Main Street - Suite 500
                             Madison, WI 53701-2719
                             608-257-3911
                             Fax: 608-257-0609
                             Email: dbrown@gklaw.com

```
 1

 2    FOR THE CONSOLIDATED
      PLAINTIFFS:                    JACQUELINE E. BOYNTON
 3                                   Law Offices of Jacqueline Boynton
                                     2266 N. Prospect Ave - Ste. 505
 4                                   Milwaukee, WI 53202-6306
                                     414-276-1066
 5                                   Fax:414-276-9119
                                     Email: jackie@jboynton.com
 6
                                     PETER G. EARLE
 7                                   Law Offices of Peter Earle, LLC
                                     839 North Jefferson - Suite 303
 8                                   Milwaukee, WI 53202
                                     414-276-1076
 9                                   Fax: 414-276-0460
                                     Email: peter@earle-law.com
10
      FOR THE DEFENDANTS:            DANIEL KELLY
11                                   Reinhart Boerner Van Deuren, S.C.
                                     1000 North Water Street
12                                   Milwaukee, WI 53202
                                     414-298-1000
13                                           Fax: 414-298-8097
                                     Email: dkelly@reinhartlaw.com
14
                                     PATRICK J. HODAN
15                                   Reinhart Boerner Van Deuren, S.C.
                                     1000 North Water Street
16                                   Milwaukee, WI 53202
                                     414-298-1000
17                                   Fax: 414-298-8097
                                     Email: phodan@reinhartlaw.com
18
                                     COLLEEN E. FIELKOW
19                                   Reinhart Boerner Van Deuren, S.C.
                                     1000 North Water Street
20                                   Milwaukee, WI 53202
                                     414-298-1000
21                                   Fax: 414-298-8097
                                     Email: cfielkow@reinhartlaw.com
22
                                     MARIA S. LAZAR
23                                   Wisconsin Department of Justice
                                     Office of Attorney General
24                                   17 West Main Street
                                     Madison, WI 53707-7857
25                                   608-267-3519
                                     Fax: 608-267-2223
```

```
 1                              Email: lazarms@doj.state.wi.us

 2    FOR INTERVENOR PLAINTIFFS:    SCOTT HASSETT
                                   Lawton & Cates, S.C.
 3                                 10 East Doty Street - Suite 400
                                   P.O. Box 2965
 4                                 Madison, WI 53701-2965
                                   608-282-6200
 5                                 Fax:  608-282-6252
                                   Email: shassett@lawtoncates.com
 6
      FOR THE INTERVENOR
 7    DEFENDANTS:                   KELLEN C. KASPER
                                   Foley & Lardner, LLP
 8                                 777 East Wisconsin Avenue
                                   Milwaukee, WI 53202-5300
 9                                 414-297-5783
                                   Fax: 414-297-4900
10                                 Email: kkasper@foley.com

11                                  THOMAS L. SHRINER, JR.
                                   FOLEY & LARDNER, LLP
12                                 777 East Wisconsin Avenue
                                   Milwaukee, WI 53202-5300
13                                 414-297-5601
                                   Fax: 414-297-4900
14                                 Email: tshriner@foley.com

15    FOR THE MOVANTS:              JOSEPH LOUIS OLSON
                                   Michael Best & Friedrich, LLP
16                                 100 East Wisconsin Avenue
                                   Suite 3300
17                                 Milwaukee, WI 53202-4108
                                   414-271-6560
18                                 Fax: 414-277-0656
                                   Email: jlolson@michaelbest.com
19

20

21

22

23

24

25
```

1          P R O C E E D I N G S

2          THE BAILIFF:   All rise.  Court is now in session,

3     the Honorable Judges J. P. Stadtmueller, Diane P. Wood and

4     Robert M. Dow, Jr., presiding.  Please be seated.

5          THE CLERK:  The court calls Alvin Baldus, et al,

6     versus Michael Brennan, et al, Case No. 11-CV-562 for the

7     continuation of the court trial.  May I please have the

8     appearances of the attorneys appearing in court, beginning with

9     the plaintiffs.

10          MR. POLAND:  Good afternoon, Your Honors.  Doug

11     Poland, Dustin Brown and Wendy Arends appearing for the Baldus

12     Plaintiffs.

13          MR. EARLE:  Peter Earle and Jackie Boynton appearing

14     for the Voces de la Frontera Plaintiffs.

15          MR. HASSETT:  Scott Hassett and Jim Olson of Lawton &

16     Cates appearing for the Plaintiff Intervenors.

17          MS. LAZAR:  Good afternoon, Your Honor.  Assistant

18     Attorney General Maria Lazar.  Also appearing is Dan Kelly and

19     Patrick Hodan for the Defendants, the Government Accountability

20     Board and its Director and General Counsel in their official

21     capacity only.

22          MR. SHRINER:  Good evening, Your Honor.  Thomas L.

23     Shriner, Jr., and Kellen C. Kasper for the Intervenor

24     Defendants.

25          JUDGE STADTMUELLER:  Thank you.  Good afternoon,

 1  Counsel.  While you have been conferring with your respective

 2  clients, the court has had a busy day beginning the review of

 3  the multitude of documents that are before us, and so we are at

 4  that point at this hour to learn from counsel where we are with

 5  respect to the suggestion that the court made this morning

 6  before we recessed.  So beginning with you, Ms. Lazar or

 7  Mr. Kelly, if you would be so kind to update the court.

 8          MS. LAZAR:  Thank you, Your Honor.  Mr. Kelly will

 9  address this point further, Your Honor, this afternoon.

10          MR. KELLY:  Your Honor, as you know, we do not

11  represent the Legislature, but we have been in contact with

12  them to discuss the court's comments this morning.  We are

13  pleased to report that the Legislature, legislative leaders,

14  were interested in the suggestion that you made, but there was

15  an impediment that we have come across that will prevent them

16  from going forward with this.  In particular, the impediment is

17  the Wisconsin Constitution Article 4, Section 3.  We have

18  copies of the case.  May we approach the bench, Your Honor?

19          JUDGE STADTMUELLER:  I think we have already been

20  provided with the cases.

21          MR. KELLY:  Thank you.

22          JUDGE STADTMUELLER:  State ex rel. Smith versus

23  Zimmerman?

24          MR. KELLY:  That's correct, Your Honor.  The concern

25  is this.  The Wisconsin Supreme Court has ruled there can be

1   only one redistricting per decade following the federal census.

2   The Zimmerman case came up in the context of a legislative

3   attempt to go back and amend a legislative district map

4   subsequent to the first redistricting effort, and the court in

5   no uncertain terms stated that that was beyond legislative

6   authority.  In fact, it said that once the Legislature has

7   adopted the redistricting plan, it has exercised and exhausted

8   its full amount of responsibility and authority with respect to

9   redistricting, and that it may not do so again until the

10  following federal census.

11          The only exception that it recognized was the one in

12  the Slauson case, which it did cite in this opinion, and that

13  was when the Legislature is engaged in something completely

14  unrelated to redistricting, but it has the incidental effect of

15  changing a district boundary, that's acceptable, but if there

16  were -- if they were to attempt to pass a law that had the

17  purpose and effect of redistricting, that would be beyond the

18  scope of what the Wisconsin Constitution allows.  So in the

19  Zimmerman case the court struck down the legislators attempt to

20  adopt a new district map, or at least a small change to it.

21          So while the Legislature is always open to thoughts

22  on the legislation that it considers and adopts, there is,

23  unfortunately, this impediment to proceeding in that fashion.

24          JUDGE STADTMUELLER:  All right.  Well, just having

25  been provided with a copy of the decision, I, frankly, am not

1    in a position to agree or disagree with you and the

2    Legislature's analysis, but given the fact that there is a

3    justiciable controversy before the court, I guess where that

4    leaves us is, frankly, to proceed tomorrow with opening

5    statements and the various witnesses that each side expects to

6    call.

7              MR. POLAND:  Your Honor, may I be heard?

8              JUDGE STADTMUELLER:  Certainly.

9              MR. POLAND:  This is Doug Poland for the Baldus

10   plaintiffs.

11             THE WITNESS:  Your Honor, we did have a conversation

12   with counsel for the GAB this afternoon.  We conferred with the

13   appropriate people, and we understood that the minority

14   legislative leadership was certainly ready, willing and able to

15   engage in these discussions.  We conveyed that to counsel for

16   the GAB, and it's my understanding that the minority

17   legislative leadership conveyed that to the majority, as well.

18             Counsel for the GAB provided us with the citation to

19   the Smith versus Zimmerman opinion, and we read it and we

20   informed them that we believe the case is the opposite.  The

21   Wisconsin Constitution says that at its first session the

22   Legislature must do this.  Well, the Legislature is still in

23   its first session.  We believe that it can easily go back and

24   it could redo this.  The Legislature has actually said so

25   itself.  We have two documents that are marked as trial

1  exhibits, one that was written by a legislative aide which says

2  that the map is a placeholder map; if the Senate comes back as

3  the majority, that was the recall elections last August, we may

4  come back and adjust.

5          There's an email from Mr. Troupis last summer after

6  the maps were adopted by the Legislature on July 20th that says

7  the alternative of simply redrawing within the area remains a

8  real possibility.  We think that the Legislature has no doubt

9  that it could do this.  We think that there is a good faith

10 effort that ought to be made by both parties to go forth and do

11 this.

12         In addition, we think that to the extent that there

13 is a timing issue here, a problem that we face with proceeding

14 tomorrow, and I believe that Mr. Earle is prepared to address

15 that, if Your Honors are inclined to hear what Mr. Earle has to

16 say.

17         MR. EARLE:  May I be heard one more moment on

18 Zimmerman, Your Honor?

19         JUDGE STADTMUELLER:  Go ahead.

20         MR. EARLE:  The Zimmerman case itself says that it

21 recognized -- it stood for the proposition cited by counsel,

22 but it said both houses of the Legislature passed the bill, the

23 Governor signed it, the Secretary of State published it.

24         JUDGE WOOD:  Where are you reading from in the

25 opinion?

1          MR. EARLE:  Your Honor, on Page 5 in the right-hand

2     column, it's Paragraphs 2 and 3 combined.  It says "...the

3     Legislature adjourned sine die, and the citizens of the state

4     by their action in the referendum brought to pass the condition

5     upon which the finality of the Rosenberry apportionment

6     depended.  So the Zimmerman case itself hinged this idea of one

7     time in a decennial cycle on the first session.  This reference

8     to the Legislature having adjourned I think is in direct

9     reference to the language of the state constitutional provision

10    itself which says that the decennial reapportionment plan must

11    be done in the first session after the census.  So, you know,

12    we --

13         JUDGE WOOD:  So you are looking at the first couple

14    of words of Section 3, "As amended November 1910 at their first

15    session?"

16         MR. EARLE:  Yes.  Yes, Your Honor.  Yes, so we do not

17    believe that the Zimmerman case is a significant obstacle.  We

18    thought that in the spirit offered by the court in mandating

19    that we confer, that this is something that merited further

20    consideration in an effort to see if we can get around this

21    given the stakes, given the importance that this be done first

22    and foremost in the Legislature in a public way.

23         JUDGE DOW:  Did I understand Mr. Kelly to be saying

24    that the Legislature, at least the folks you conferred with,

25    were open to discussion but for this, their interpretation or

1   your interpretation of this Zimmerman case?

2           MR. KELLY:  Correct, Your Honor.  If I might just

3   respond to Mr. Earle for a moment.  Certainly the case didn't

4   recite a history of the Rosenberry Act, but what it relied on

5   is not the fact that the Legislature had gone out of session.

6   What it says, just backing up in that paragraph now, so we are

7   on the same page, left-hand column at the bottom, it says --

8   And this is not the first time, by the way, that the court had

9   addressed this act.  It says, "In discussing the Legislature's

10  attempt to change senate districts by Chapter 242, Laws of

11  1953, we stated expressly that under the present state

12  constitution the passage of the Rosenberry Act exercised and

13  exhausted the power of the Legislature to redistrict during the

14  present interval between censuses except in the cases of

15  districts whose boundaries did not preserve the constitutional

16  mandate."  So it did not speak to this in terms of sessions, it

17  spoke to it in terms of passage.  Act 43 has passed.  That is

18  to say the Legislature has exercised and exhausted until the

19  year 2020 the Legislature's authority on the topic of

20  redistricting.

21          JUDGE WOOD:  It's not clear to me that that is

22  consistent with the reference to boundaries that didn't observe

23  the constitutional mandate, if you think that this is a 1954

24  decision, since the act before us hasn't taken effect yet.  We

25  haven't had the 2012 election yet.

1    MR. KELLY:  That's correct, Judge Wood, we have not

2  had the election under the present act, but the Zimmerman court

3  spoke not in terms of having had an election under that map, it

4  spoke in terms of passage of the bill creating those districts.

5  So once the Legislature passed -- enacted the law, that

6  exhausted their authority on the subject.

7    JUDGE STADTMUELLER:  Mr. Kelly, what if we follow the

8  balance of that sentence and you and your colleagues in the

9  Legislature agreed that what they enacted did not pass

10  constitutional muster.  Are they left saddled with the

11  inability to correct it?  Because, in effect, that's what we

12  are theoretically talking about here, is correcting something

13  that may have been wrong in the first instance, without so much

14  as saying so.

15    MR. KELLY:  Judge Stadtmueller, we have no question

16  about the court's authority to pass on the constitutionality of

17  Act 43 in terms of the Federal Constitution.  If the court were

18  to take the position that Act 43 is invalid under the Federal

19  Constitution, then the act would cease to exist, essentially.

20  Of course, at that point in the later part of the sentence that

21  we read the Legislature would then have authority to go back

22  and adopt a new map, but that's predicated on the court

23  exercising its judicial authority to find the act

24  unconstitutional.

25    The GAB does not believe that the map is

1   unconstitutional, they believe it's perfectly sound, and that

2   is a position that they take wholeheartedly.  That's from the

3   top of the Department of Justice on down.  That is the position

4   of the GAB, and that is our considered analysis, is that the

5   maps are constitutionally sound.  So if the court were to take

6   this step to find it unconstitutional, the Legislature would

7   have the authority to address it, but absent that, there's no

8   authority to revisit the topic before the next census.

9           JUDGE WOOD:  But the Supreme Court of Wisconsin would

10  have the authority to decide whether this Wisconsin

11  constitutional language has the drastic comedy in federalism

12  implications that you are attributing to it.

13          MR. KELLY:  If I understand your question, it is

14  whether the Wisconsin Supreme Court has the ability to set down

15  the authority saying the Wisconsin Constitution prohibits a

16  second redistricting.

17          JUDGE WOOD:  No, actually I was saying the Wisconsin

18  Supreme Court is the institution that has the authority to

19  decide how broadly Smith versus Zimmerman was to be read, and,

20  therefore, what the Wisconsin Constitution requires in this

21  situation.

22          MR. KELLY:  That's true.  If the Wisconsin Supreme

23  Court were of the mind to revisit this question, they could

24  certainly modify the holding that they have made in Zimmerman.

25          JUDGE WOOD:  Or perhaps reinterpret it.  So the

1  Wisconsin Supreme Court accepts certifications from the federal

2  courts, does it not?

3          MR. SHRINER:  Not from the district court, Your

4  Honor.

5          JUDGE WOOD:  Only from --

6          MR. SHRINER:  Only from the Court of Appeals or the

7  Supreme Court.

8          JUDGE WOOD:  Has it ever considered a three-judge

9  court?

10          MR. SHRINER:  No, it doesn't fit.  Chapter 821 of the

11  Wisconsin Statutes is very clear on that.  The Wisconsin

12  Supreme Court did not adopt the option under the Uniform Act to

13  allow certification for district courts.  If I may, the

14  question you asked earlier about the language, just for your

15  information because we're all reading this in a hurry, but

16  there were actually two cases, State ex rel. Smith versus

17  Zimmerman, I think the one you have in front of you, 266, but

18  an earlier one the previous year State ex rel. Thomson versus

19  Zimmerman, 264, which is referred to in here.

20          When the decision referred to boundary problems that

21  render the act unconstitutional, it referred to a separate

22  issue in which some of the districts were not contiguous and,

23  therefore, violated a different provision of the Wisconsin

24  Constitution, and the Wisconsin Supreme Court said in one of

25  these cases that the Legislature could correct that.  That was

1    the issue before them.

2         MR. POLAND:  Your Honor, if I may, picking up on a

3    point that Judge Stadtmueller had made, if we look at the

4    sentence after that, as well, there's a distinction where the

5    court states, "There is no claim here that the Brown County

6    reapportionment in 1951 did not comply with all constitutional

7    demands."  So I think that what we are looking at is a

8    distinction between that case and this case.  The court refers

9    to a claim.  There certainly is a claim here that the plan in

10   question did not observe -- did not comply with all

11   constitutional demands, and so I think that it does not prevent

12   a barrier.  That's a clear distinction between the Smith versus

13   Zimmerman case and the situation we have here.

14        JUDGE DOW:  What's the date of the referendum they

15   are referring to?  I'm in the same paragraph you guys were in

16   before.  "Nothing in the facts now called to our attention

17   disposes us to reverse our statement in the Thomson case,"

18   which I take it is the case that Mr. Shriner was referring to?

19        MR. SHRINER:  Yes, Your Honor.

20        THE COURT:  "...supra, and to hold that the

21   Rosenberry act was not completed legislation.  In the absence

22   of a successful attack upon its constitutionality (not

23   attempted here)," that's the statement you were just picking

24   upon, Mr. Poland?

25        MR. POLAND:  Yes.

1          JUDGE DOW:  Okay.  "...it was a reapportionment,

2    directed by the Constitution to be done once and only once

3    following each federal census, which passed beyond the

4    Legislature's power of revision at the date of the referendum

5    at that time very latest.  Is it is not necessary to decide now

6    whether it so passed at an earlier date."  What was the date on

7    the referendum?

8          MR. KELLY:  Your Honor, if I may.

9          MR. SHRINER:  Before '54.  It was unusually past the

10   statute, and they said it was subject to a condition.

11         MR. KELLY:  The condition was passage of the

12   referendum in November of 1952.  That's on Page 2 of the

13   opinion in the right column, second full paragraph towards the

14   end.

15         JUDGE DOW:  I'm sorry.  I was focusing on the

16   paragraphs, and this information is two pages before.  But I

17   guess my question is is there any room in that this date of the

18   referendum, leaving open the question about whether the

19   Legislature's power of revision passed at an earlier date, is

20   there any wiggle room there that would dovetail with this

21   notion of the first session still being open?

22         MR. SHRINER:  I think that's the holding in Smith,

23   that there isn't, but you may read it differently.  The

24   argument made in Smith was you consider it not having come into

25   effect until the referendum passed, and what the court held in

1  Smith was that it went into effect when it passed, even though

2  it was subject to a later condition, and that then exhausted.

3      MR. KELLY:  If I may, the distinction about whether

4  there's a claim, there was a claim in Zimmerman of

5  unconstitutionality, whereas there is here, I don't think

6  that's an operative distinction for a very important reason.

7  If all it took was a claim about constitutionality, not a

8  judgment, but just a claim that a statute is unconstitutional,

9  that would invite a whole segment of litigation.  Whenever

10  there was a party who was aggrieved by a statute, wanted it to

11  change and couldn't get it done in the Legislature, but perhaps

12  the Attorney General was friendly to the position, they would

13  simply bring it -- they would bring a lawsuit and then have the

14  Attorney General settle the claim, giving them authority to

15  revisit this.  The simple existence of a claim does not open

16  the door to an invasion of the Wisconsin Constitution.  There

17  has to be an adjudication.

18      JUDGE STADTMUELLER:  All right.  Setting this whole

19  issue aside for a moment, Mr. Earle, you wanted to say

20  something about tomorrow.  Let's get that out on the table, as

21  well.

22      MR. EARLE:  Certainly, Your Honor.  It has to do with

23  the issues related to Attorney Troupis.  Attorney Troupis is a

24  very significant witness for the plaintiffs, the Voces

25  plaintiffs, on the Section 2 claim.  We have a straight effects

1  case under Section 2, but as a result of these documents that
2  we have been discovering, it's starting to become clear to us
3  that we have a theory that would implicate intent.  The theory
4  is basically, if I may just simply describe why it's relevant,
5  is the theory that the Latino community was corralled by
6  partisan gerrymandering considerations external to the
7  community, and as a result the redistricting had to happen.
8  The relationship of Assembly 8 and Assembly 9 had to happen
9  within a certain confined area.

10         Many of the emails that have been discovered as a
11  result of the orders that have come out implicate this, and we
12  were able to explore it to a limited degree with Adam Foltz,
13  Tad Ottman and Joseph Handrick when they were asked, "Well,
14  yes, you can move 8 and 9 around however you wish, as long as
15  you stay within these boundaries."  When the last round of
16  emails came out, Your Honor, we discovered that there was an
17  interaction between MALDEF and Attorney Troupis where the
18  concern was that MALDEF had drawn a map that didn't -- wasn't
19  confined to those boundaries, and the emails between Attorney
20  Troupis and the other members of the legal team and the
21  legislative aides to the leadership of the Legislature dealt
22  with this question of, well, that's going to have a ripple
23  effect, and we can't have that.  They then went about
24  convincing MALDEF to go along with a map that had a vertical
25  horizontal -- north/south configuration, and as a result of

1   that --

2           MR. KELLY:  Your Honor, I object.  I object.  He's

3   arguing his case before we have had any evidence come in.  He's

4   making representations of fact that have no support.  If he has

5   a question about our procedure starting in court tomorrow

6   morning, I think that's germane, but having his closing

7   argument before we even get to start the case I think is

8   inappropriate.

9           JUDGE STADTMUELLER:  First of all, we did receive a

10  response from Mr. Troupis' counsel, Mr. Daughtery, and his

11  associate at Whyte Hirschboeck.  Mr. Earle, are you prepared to

12  file your response to their opening brief in the morning?

13          MR. EARLE:  Yes, we are, Your Honor, but if I may, on

14  Friday we received an email from Eric McLeod that attached to

15  it a very large number of emails that had been overlooked and

16  that had not been submitted to the court in connection with the

17  privilege log.  Many of these emails involve Attorney Troupis.

18  Many of these emails go to the same issues that I was referring

19  to before Attorney Kelly objected.  So the question here is

20  it's not about what kind of advice Mr. Troupis got from MALDEF,

21  it's a question about what kind of interactions Mr. Troupis had

22  with Eric McLeod, Tad Ottman and the others about how and why

23  they configured 8 and 9 the way they did.  We think it goes to

24  intent that subordinated -- intentionally subordinated and

25  knowingly subordinated the interests of the Latino community.

1          It's absolutely critical that we be able to depose

2     Attorney Troupis before we proceed with the trial, and it's

3     that proposition that I'm raising here.  Since it appears that

4     our opponents are not prepared to pursue further settlement

5     discussions or review by the Legislature, we would then ask

6     that the trial be adjourned at least long enough to allow us to

7     conduct the deposition of Attorney Troupis, assuming the court

8     would be so inclined to do so after we submit our writing

9     tomorrow.  I raise it because it's a scheduling consideration

10    that we now have before us.

11          MR. KELLY:  Your Honor, the discovery deadline passed

12    two weeks ago.

13          JUDGE STADTMUELLER:  Mr. Kelly, in the interest of

14    fairness and justice, we have had enough of the charade and

15    mischaracterization.  I don't mean to impugn either you or

16    anyone associated with this case, but as they say, the facts

17    are the facts.  What has occurred here is beyond the pale in

18    terms of lack of transparency, secrecy, and at the end of the

19    day, as the court has commented earlier, it may not have

20    anything to do with the price of tea in China, but appearances

21    are everything, and Wisconsin has prided itself for one

22    generation after another on openness and fairness and doing the

23    right thing.

24          To be candid, we have seen everything but that in the

25    way this case has progressed.  Not because of anything that you

did or Maria Lazar or anybody else, but the facts are the

facts, and so we're going to get to the bottom of the facts so

that the judges who are called upon to discharge their function

have all of the information before us that will result in a

fair, just and complete opinion. That's what this case is all

about. So to the extent that additional discovery is required,

it's going to happen. There may be some areas about which

Mr. Troupis will not have to testify because the

attorney-client privilege is appropriate, but we're not there

yet. We don't have all of the facts even to make that

determination this evening. Consistent with the way the judges

have approached this case, you are going to get a decision at

some point tomorrow, whether it's at 10:00 o'clock or

3:00 o'clock or some other time.

In the meantime, I'm going to direct that counsel

further brief this question whether this court has any

authority to rule on the concerns of the Legislature. I'm not

sure at this moment, because we're just beginning the analysis

as a result of your comments and some of my questions and my

colleagues' questions. As they say, a little bit of knowledge

can be a very dangerous thing, so we need to get a thorough

analysis, a thorough appreciation before we tread further into

what has become a rather treacherous course that we're

embarking on with what appears to be not an awful good look at

the road ahead because of one obstacle after another.

1          Again, I don't ascribe anything improper to any

2    lawyer or client, but many of these issues, had they been

3    discussed openly during the entire redistricting process, may

4    have led at the end of the process to an entirely different

5    result in terms of doing the right thing.  Hopefully with

6    whether it's the guidance of this court or the guidance of good

7    lawyering and advocates to respective clients, hopefully we can

8    get there, but we can't get their on Tuesday evening,

9    February 21st.

10          MR. POLAND:  Your Honor, may I make one other

11   request, please, if I may.  In light of the e-mails that we did

12   just receive last week on Friday, some of them also involve

13   names of witnesses who the defendants are going to be calling

14   as experts.  Professor Keith Gaddie was involved in the

15   redistricting process, and there are communications between

16   Mr. Gaddie and Troupis.  Dr. Grafman, who's also a defendant

17   expert who will testify in the trial as an expert, also

18   received emails at some point in the process.  We would very

19   much like to explore those communications in Mr. Troupis'

20   deposition, and so we think that it's appropriate that that be

21   done before those witnesses testify.

22          In addition, given the number of documents that have

23   come out in dribs and drabs along the way, including this last

24   slug of documents last Friday, we believe it would be

25   appropriate for the court to issue an order to the Legislature

1    to make a certification that its production is complete.  We

2    think that would be appropriate here to avoid any additional

3    questions about whether it is, in fact, complete.  Thank you.

4         THE COURT:  All right.  Well, on that score,

5    Mr. Poland, I would invite you to put that request in writing,

6    and perhaps the Legislature's counsel can respond to it

7    tomorrow morning.  They are on the email list for motions, and

8    this transcript will be available in the morning, and we need

9    to get that.

10        MR. POLAND:  Your Honor, I did make that request to

11   Mr. McLeod.  He did send me an email saying that it was

12   complete.  I don't recall exactly which day it was.  I think it

13   might have been after I got the last of these emails.  I think

14   that the force of a court order is probably more likely than my

15   simple email to get a serious response.  I'm not suggesting it

16   wasn't serious, I believe Mr. McLeod was serious in his

17   response, but I am concerned about the completeness of the

18   production.

19        MR. EARLE:  Your Honor, may I address the court?

20        JUDGE STADTMUELLER:  Certainly.

21        MR. EARLE:  Sharing the same concerns as Mr. Poland

22   and in light of Paragraph 12 in the Motion for Clarification

23   submitted by Mr. Troupis' attorneys, a certification request

24   has even more force because the question is whether Mr. Troupis

25   has, in fact, contributed his documents as counsel for the

1  Legislature and a participant in all of these myriad of

2  discussions.  We have copies of emails from the recipients,

3  Eric McLeod and Tad Ottman and so forth, but it's not clear

4  that there's been a primary production from Mr. Troupis

5  himself.

6         JUDGE STADTMUELLER:  All right.  Well, I would

7  suggest, given the breadth and depth of our colloquy this

8  afternoon, that to the extent that there be further orders with

9  regard to the matter of production of documents or

10  certification that all documents requested have, in fact, been

11  produced, that those requests be put in writing and filed under

12  CMECF, and with what Mr. Poland has represented and so forth, I

13  have no doubt that Mr. McLeod will appropriately so certify.

14         Insofar as Mr. Troupis is concerned, until we resolve

15  the issue of the breadth and depth of any attorney/client

16  privilege, I think it would be inappropriate to drop the

17  gauntlet until we resolve that matter.  If we receive your

18  response in the morning, we ought to be able to get something

19  out posthaste.

20         Insofar as Mr. Kelly's concerns and all of your

21  concerns, for that matter, and that is the question of whether

22  or not the Legislature can or cannot or has the authority or

23  doesn't have the authority to revisit the acts that are before

24  us, principally Act 43, I'm going to direct that counsel file

25  with the court not later than 8:00 o'clock tomorrow morning any

analysis or authority that deal with the question, because for
the moment, at least, I believe in conferring with my
colleagues through notes during this presentation, at least for
the moment the court has the authority to interpret state law,
and unless and until somebody suggests that we don't, then I
think whether the court -- that is, whether the Legislature
wants to opt in as opposed to continuing this litigation,
because it appears to the court that at the very earliest,
assuming we get the attorney-client privilege issue resolved,
at some point tomorrow there will be a discovery deposition
taken, which is going to draw counsel away from a trial
presentation, which means that in the best circumstance we're
not going to be prepared to proceed with the taking of
testimony in this case until Thursday.  Then it becomes a
question of whether we can finish this week or whether it's
going to be continued, whether into next week or the week
after, because pretty soon, because of my colleagues' schedules
and my own schedule, we're now finding ourselves backed into
completing the trial the week of either March 12th or
March 19th.

       So these are all imponderables at the moment, but at
some point they are going to become very ripe, and I hope,
unlike three-day-old fish, they won't become smelly.

       JUDGE DOW:  Wisconsin has always had two year
assembly sessions, is that right?

1        MR. SHRINER:  Always is a long time, Your Honor.

2        JUDGE DOW:  Since 1951?

3        MR. SHRINER:  Since 1900 anyway.

4        JUDGE DOW:  Okay.  Because I see this act being

5    passed in 1951 and the new act coming along in 1953, which

6    would definitely be a new assembly session, and I see some

7    language in here saying at the very latest the Legislature's

8    power of revision passed at the day of the referendum, which

9    was November of 1952, which I believe would be the next

10   election.  So I think there's probably an argument to be made

11   there, which you guys can make by the morning.

12       MR. SHRINER:  Your Honor, I hate to be a squeaky

13   wheel here in the back, but if I may, it's my job, I'd like to

14   observe that I think none of the issues that are slowing things

15   down in Act 43 need slow us down in Act 44.  Mr. Hassett has a

16   witness in town, Mr. Obey, who we can put on tomorrow.  I can

17   bring Mr. Speth up.  I think they are going to be the only fact

18   witnesses on Act 44.  Again, you know what you want to do and

19   you will tell us, but I also continue respectfully to urge you

20   that we don't even need a trial on that, because it really

21   ought to be dismissed on the pleadings.  It would uncomplicate

22   this case a bit, and I can see that that's something that the

23   court might be interested in, and I just make the suggestion

24   again.

25       JUDGE STADTMUELLER:  All right.  Well, I appreciate

1  the suggestion, Mr. Shriner, and we will, through staff, give

2  counsel some word on how we're going to deal with that perhaps

3  as soon as tomorrow afternoon.  But, again, if Mr. Earle is

4  involved in a discovery deposition with Mr. Troupis, I can't

5  expect him to be here and there at the same time.

6          MR. SHRINER:  He's not made any complaints against

7  Act 44.

8          MR. POLAND:  I am, and the Baldus plaintiffs have a

9  Section 2 claim based on the Latino districts, as well, so any

10  deposition of Mr. Troupis that goes forward, I will need to be

11  there as lead counsel for the Baldus plaintiffs.

12          JUDGE STADTMUELLER:  The other option, and knowing

13  your reputation in the area, I would really strenuously

14  encourage you to see if you can reach some sort of a

15  stipulation as to the testimony of these witnesses and we deal

16  with it on a written submission, if that's at all possible.

17          MR. SHRINER:  We will talk about it, Your Honor.  We

18  thought it would be easier all said, but that was then and this

19  is now.  We will see what we can do.

20          JUDGE STADTMUELLER:  All right.  So the way we are

21  leaving it is there is no court call at 9:00 tomorrow morning,

22  but I would tell you all to be available on 45 minutes notice,

23  if the court is going to address the attorney-client issue here

24  in open court as opposed to a written opinion.  Mr. Troupis and

25  his counsel should be made aware that the court may deal with

1    this from the bench as opposed to a written opinion.  We're not

2    taking his testimony tomorrow, but it appears, at least from my

3    preliminary 10-minute scan of the emails, he is certainly going

4    to have to testify.  The areas of inquiry still need to be fine

5    tuned.  So there will be a deposition.  Anything else anybody

6    wants to raise before we recess for the evening?

7              MR. KELLY:  Not at this time, Your Honor.

8              JUDGE STADTMUELLER:  Hearing none, the court stands

9    adjourned.

10              THE BAILIFF:  All rise.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT  )
                              )SS
EASTERN DISTRICT OF WISCONSIN )

            I, KATHY A. HALMA, Official Court Reporter

for the United States District Court, Eastern District of

Wisconsin, do hereby certify that I reported the foregoing

proceedings and that the same is true and correct in accordance

with my original shorthand notes taken at said time and place.


            _____

KATHY A. HALMA
Official Court Reporter
United States District Court