UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

_____

ALVIN BALDUS, CARLENE BECHEN, ELVIRA      )
BUMPUS, RONALD BIENDSEIL, LESLIE W.       )
DAVIS, III, BRETT ECKSTEIN, GLORIA        )
ROGERS, RICHARD KRESBACH, ROCHELLE        )
MOORE, AMY RISSEEUW, JUDY ROBSON, JEANNE  )
SANCHEZ-BELL, CECELIA SCHLIEPP, TRAVIS    )
THYSSEN, CINDY BARBERA, RON BOONE, VERA   )
BOONE, EVANJELINA CLEERMAN, SHEILA        )
COCHRAN, MAXINE HOUGH, CLARENCE JOHNSON,  )Case No. 11-CV-562
RICHARD LANGE, and GLADYS MANZANET,       )  JPS-DPW-RMD
                                          )
                Plaintiffs,               )Milwaukee, Wisconsin
                                          )
TAMMY BALDWIN, GWENDOLYNNE MOORE and      )February 22, 2012
RONALD KIND,                              )8:30 a.m.
                                          )
                Intervenor-Plaintiffs,    )**VOLUME** III
                                          )**A.M. SESSION**
v.                                        )
                                          )
Members of the Wisconsin Government       )
Accountability Board, each only in his    )
official capacity:  MICHAEL BRENNAN,      )
DAVID DEININGER, GERALD NICHOL, THOMAS    )
CANE, THOMAS BARLAND, and TIMOTHY VOCKE,  )
and KEVIN KENNEDY, Director and General   )
Counsel for the Wisconsin Government      )
Accountability Board,                     )
                                          )
                Defendants,               )
                                          )
(caption continued on next page)          )
_____

### TRANSCRIPT OF COURT TRIAL

BEFORE DIANE WOOD, CIRCUIT JUDGE, ROBERT DOW, JR., DISTRICT
      JUDGE, and J. P. STADTMUELLER, DISTRICT JUDGE

Contract Reporters:        Halma-Jilek Reporting 414-271-4466

Proceedings recorded by computerized stenography, transcript
produced by computer aided transcription.

```
 1  F. JAMES SENSENBRENNER, JR., THOMAS E.    )
    PETRI, PAUL D. RYAN, JR., REID J.          )
 2  RIBBLE, and SEAN P. DUFFY,                 )
                                               )
 3                 Intervenor-Defendants.      )
    _____)
 4                                             )
    VOCES DE LA FRONTERA, INC., RAMIRO         )
 5  VARA, OLGA VARA, JOSE PEREZ, and           )
    ERICA RAMIREZ,                             )
 6                                             )
                   Plaintiffs,                 )
 7                                             )
    v.                                         )Case No. 11-CV-1011
 8                                             )   JPS-DPW-RMD
    Members of the Wisconsin Government        )
 9  Accountability Board, each only in his     )
    official capacity: MICHAEL BRENNAN,        )
10  DAVID DEININGER, GERALD NICHOL, THOMAS     )
    CANE, THOMAS BARLAND, and TIMOTHY          )
11  VOCKE, and KEVIN KENNEDY, Director and     )
    General Counsel for the Wisconsin          )
12  Government Accountability Board,           )
                                               )
13                 Defendants.                 )
    _____
14
15  A P P E A R A N C E S
16  For the Plaintiffs:        DOUGLAS M. POLAND
                               Godfrey & Kahn, S.C.
17                             780 North Water Street
                               Milwaukee, WI 53202-3590
18                             414-273-3500
                               Fax: 414-273-5198
19                             Email: dpoland@gklaw.com
20                             DUSTIN B. BROWN
                               Godfrey & Kahn, S.C.
21                             1 East Main Street - Suite 500
                               Madison, WI 53701-2719
22                             608-257-3911
                               Fax: 608-257-0609
23                             Email: dbrown@gklaw.com
24
25
```

```
 1   FOR THE CONSOLIDATED
     PLAINTIFFS:                    JACQUELINE E. BOYNTON
 2                                  Law Offices of Jacqueline Boynton
                                    2266 N. Prospect Ave - Ste. 505
 3                                  Milwaukee, WI 53202-6306
                                    414-276-1066
 4                                  Fax:414-276-9119
                                    Email: jackie@jboynton.com
 5
                                    PETER G. EARLE
 6                                  Law Offices of Peter Earle, LLC
                                    839 North Jefferson - Suite 303
 7                                  Milwaukee, WI 53202
                                    414-276-1076
 8                                  Fax: 414-276-0460
                                    Email: peter@earle-law.com
 9
     FOR THE DEFENDANTS:            DANIEL KELLY
10                                  Reinhart Boerner Van Deuren, S.C.
                                    1000 North Water Street
11                                  Milwaukee, WI 53202
                                    414-298-1000
12                                  Fax: 414-298-8097
                                    Email: dkelly@reinhartlaw.com
13
                                    PATRICK J. HODAN
14                                  Reinhart Boerner Van Deuren, S.C.
                                    1000 North Water Street
15                                  Milwaukee, WI 53202
                                    414-298-1000
16                                  Fax: 414-298-8097
                                    Email: phodan@reinhartlaw.com
17
                                    COLLEEN E. FIELKOW
18                                  Reinhart Boerner Van Deuren, S.C.
                                    1000 North Water Street
19                                  Milwaukee, WI 53202
                                    414-298-1000
20                                  Fax: 414-298-8097
                                    Email: cfielkow@reinhartlaw.com
21
                                    MARIA S. LAZAR
22                                  Wisconsin Department of Justice
                                    Office of Attorney General
23                                  17 West Main Street
                                    Madison, WI 53707-7857
24                                  608-267-3519
                                    Fax: 608-267-2223
25                                  Email: lazarms@doj.state.wi.us
```

```
 1    FOR INTERVENOR PLAINTIFFS:      SCOTT HASSETT
                                      Lawton & Cates, S.C.
 2                                    10 East Doty Street - Suite 400
                                      P.O. Box 2965
 3                                    Madison, WI 53701-2965
                                      608-282-6200
 4                                    Fax:  608-282-6252
                                      Email: shassett@lawtoncates.com
 5
      FOR THE INTERVENOR
 6    DEFENDANTS:                     KELLEN C. KASPER
                                      Foley & Lardner, LLP
 7                                    777 East Wisconsin Avenue
                                      Milwaukee, WI 53202-5300
 8                                    414-297-5783
                                      Fax: 414-297-4900
 9                                    Email: kkasper@foley.com

10                                    THOMAS L. SHRINER, JR.
                                      FOLEY & LARDNER, LLP
11                                    777 East Wisconsin Avenue
                                      Milwaukee, WI 53202-5300
12                                    414-297-5601
                                      Fax: 414-297-4900
13                                    Email: tshriner@foley.com

14    FOR THE MOVANTS:                JOSEPH LOUIS OLSON
                                      Michael Best & Friedrich, LLP
15                                    100 East Wisconsin Avenue
                                      Suite 3300
16                                    Milwaukee, WI 53202-4108
                                      414-271-6560
17                                    Fax: 414-277-0656
                                      Email: jlolson@michaelbest.com
18
      FOR ATTORNEY JIM TROUPIS        DONALD DAUGHERTY
19                                    Whyte Hirshboeck Dudek, S.C.
                                      555 East Wells Street
20                                    Suite 1900
                                      Milwaukee, WI 53202
21                                    414-978-5443
                                      Fax: 414-223-5000
22                                    Email: ddaughtery@whdlaw.com

23

24

25
```

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**JOHN B. TUFFNELL**
Whyte Hirschboeck Dudek, S.C.
555 East Wells Street
Suite 1900
Milwaukee, Wi 53202
414-978-5616
Fax: 414-223-5000
Email: jtuffnell@whdlaw.com

```
 1              P R O C E E D I N G S

 2         THE BAILIFF:  Hear Ye, Hear Ye, Hear Ye, the United

 3    States District Court for the Eastern District of Wisconsin is

 4    now open, the Honorable Judges J. P. Stadtmueller, District

 5    Judge, Eastern District of Wisconsin, Diane P. Wood, Circuit

 6    Court Judge, United States Court of Appeals for the Seventh

 7    Circuit, and Robert M. Dow, Jr., District Judge, Northern

 8    District of Illinois, presiding.

 9         All persons having business before this Honorable

10    Court are admonished to draw near and give their attention for

11    this special three-judge court convened pursuant to Title 28,

12    United States Code, Section 2284 is now in session.

13         God save the United States and this Honorable Court.

14    Please be seated and come to order.

15         THE BAILIFF:  The court calls Alvin Baldus, et al,

16    versus Michael Brennan, et al, Case No. 11-CV-526, for the

17    continuation of a court trial.  May I please have the

18    appearances, beginning with the plaintiffs.

19         MR. POLAND:  Good morning, Your Honor.  Doug Poland

20    Dustin Brown and Wendy Arends appearing on behalf of the Baldus

21    Plaintiffs.

22         MR. EARLE:  Good morning, Your Honors.  Peter Earle

23    and Jackie Boynton appearing on behalf of Voces de la Frontera,

24    Plaintiffs.

25         MR. HASSETT:  Good morning.  Scott Hassett and Jim
```

1    Olson of Lawton & Cates on behalf of the Intervenor Plaintiffs.

2              MS. LAZAR:  Good morning, Your Honors.  Assistant

3    Attorney General Maria Lazar appearing on behalf of the

4    Defendants, the Members of the Wisconsin Government

5    Accountability Board, and their director and general counsel.

6    Also appearing with me are attorneys Dan Kelly, Patrick Hodan,

7    Colleen Fielkow and Jack Curtis.

8              In addition, Your Honor, we just wanted to point out

9    one minor point.  The defendants in this case are the

10   Government Accountability Board.  The Department of Justice,

11   through the Attorney General's Office with its special counsel,

12   represents the Government Accountability Board, not the

13   Legislature, as is noted one more time on the Plaintiffs'

14   pleadings.  We just wanted to make sure that everyone knows who

15   the players are and just bring that to the court's attention

16   again.  Thank you.

17             MR. SHRINER:  Good morning, Your Honor.  Thomas

18   Shriner and Kellen Kasper for the Intervenor Defendants.

19             JUDGE STADTMUELLER:  Thank you.  Good morning,

20   Counsel.  As we left yesterday afternoon, the court had asked

21   for further briefing on the matter of the attorney-client

22   privilege issue with respect to any testimony to be taken from

23   Attorney James Troupis, as well as some further briefing on the

24   subject that we spent a bit of time on last evening with

25   respect to whether or not the Legislature, indeed, has the

1    authority, if they chose to do so, to revisit the subject of

2    the redistricting legislation, in particular Act 43. At the

3    outset I want to again extend on behalf of myself and my

4    colleagues and our staff our sincere appreciation for the

5    parties and their counsel having taken the time, on relatively

6    short notice, to make further written submissions in response

7    to the concerns expressed by the court.

8         We have had an opportunity both last evening and

9    again this morning to consider these subjects, and I'm going to

10   defer to my colleague, Judge Dow, who will deliver the opinion

11   of the court with respect to the matter of the attorney-client

12   privilege issue and the clarification that Mr. Troupis and his

13   counsel sought. Judge Dow?

14        JUDGE DOW:  Thank you, Judge Stadtmueller.  On the

15   motion for clarification concerning the scope of inquiry for

16   Mr. Troupis' testimony and deposition that will precede that

17   testimony, we have considered the parties' briefs and provide

18   the follows guidance in the interests of efficiency for the

19   parties and the court, and to address the ethical dilemma that

20   arises when an attorney is subpoenaed to testimony regarding

21   communications with his client.

22        The court already has ruled that certain documents

23   are not within the scope of the attorney-client privilege and

24   has indicated a preliminary view that Mr. Troupis will be

25   required to testify and should sit for a deposition prior to

1    giving that testimony so that his examination at trial can be

2    as focused as possible on issues that require resolution by

3    this court.

4          We agree with Plaintiffs that Mr. Troupis' testimony

5    may be relevant -- indeed, likely will be relevant -- to issues

6    of intent and the totality of circumstances that are germane to

7    the Voting Rights Act claims as to Districts 8 and 9 as they

8    have been drawn in Act 43.

9          We also agree with Plaintiffs that Mr. Troupis'

10   participation in the political, strategic and policy aspects of

11   the redistricting process was not limited to his dealings with

12   MALDEF, and that there may be additional areas of legitimate

13   inquiry, though we stress that the inquiry should be focused.

14   Indeed, given the time constraints under which all of us are

15   operating, Plaintiffs would be well advised to pare their

16   questioning, both at deposition and trial, to what is essential

17   to their case.

18         In sum, as to political, strategic or policy matters

19   and as to communications and documents shared with third

20   parties, such as MALDEF, the court has been clear and

21   consistent, any attorney-client privilege either did not exist

22   or was waived.

23         However, we do conclude that further exploration with

24   Mr. Troupis of certain documents that have been released

25   pursuant to the court's prior orders would impermissibly tread

on the attorney-client privilege and/or Attorney Work Product

Doctrine.  Although we found the documents themselves were not

subject to the privilege, largely because of the almost

complete melding of the political and legal processes

undertaken by the Legislature in this instance, we are mindful

that Mr. Troupis is a lawyer -- indeed, a very experienced

lawyer in this area -- and that the further exploration of his

legal advice to his client and his mental impressions is not

warranted, notwithstanding the denial of the privilege as to

the documents themselves.  The documents as to which further

inquiry at deposition or at trial is not permitted are Nos. 31

through 32, 39 through 40, 70 through 73 and 76 through 82.

When I use those numbers, I'm referring to the numbers as we

were given the documents.  We were given 1 through 84 prior to

our ruling last week.  Rather than switching conventions on

you, I'm going to use those documents to describe the documents

that were subject to the prior order.

            In regard to the documents that were produced last

week and were not the subject of the court's February 16th

order, the court concludes that the following are off limits

for further inquiry for the same reasons, and here I'm going to

use the Bates numbers, JRT81, 86, 113, 126 and 127.

            The final thing that I would say, and I'm sure I

speak for all of us not only in regard to everything I have

previously said, but especially in regard to what I'm going to

1  repeat here, and that is that the Plaintiffs would be well

2  advised to focus on what is essential to their case given the

3  time constraints we're operating under.  Okay.  That's all I

4  have on this issue.

5          JUDGE STADTMUELLER:  Thank you, Judge Dow.

6          MR. DAUGHERTY:  Your Honor, if I can be heard just

7  briefly.  Don Daughtery on behalf of Attorney Troupis.  So the

8  court is directing Mr. Troupis to testify pursuant to the

9  Supreme Court rule exception under 21.6 I think it's 5 pursuant

10 to a court order, correct?

11         JUDGE DOW:  Yes, that is correct, and I should have

12 included that.  The ethical dilemma comes right out of that

13 provision of your rules, so that is the basis for our ruling.

14         MR. DAUGHERTY:  Thank you.

15         JUDGE DOW:  Thank you, sir.

16         MR. EARLE:  May I address the court?

17         JUDGE STADTMUELLER:  You may, Mr. Earle.

18         MR. EARLE:  A further point of clarification.  We had

19 anticipated, in connection with the deposition of Attorney

20 Troupis, a duces tecum requiring him to produce any

21 correspondence or email that fall within the scope of the prior

22 orders of the court, but which may not yet have been produced.

23 The question of whether we have achieved final certification

24 remains ambiguous, and in the view of the Plaintiffs was placed

25 in more question by one of the paragraphs in the motion for

1    clarification, which seemed to indicate that Attorney Troupis

2    had been relying on third parties and others to comply with the

3    court's orders.  The question is not clear whether Attorney

4    Troupis has conducted an adequate search and identified

5    documents responsive to the court's prior orders.

6            JUDGE STADTMUELLER:  Well, in that regard I think,

7    first of all, as officers of the court and we as judges have

8    endeavored to work our way through this with a limited set of

9    documents.  Obviously, one of you held up a large sheath of

10   documents yesterday that were never provided to the court, and

11   I'm not suggesting for a minute that they should have been, but

12   Judge Dow I think has a reasonably good approach in identifying

13   for you those documents that clearly are beyond the

14   attorney-client privilege question.  There are others that

15   remain within the scope of the attorney-client privilege, and

16   to the extent that documents that the court has not had the

17   benefit of reviewing fall within either category, I think you

18   now have sufficient guidance from which to approach questioning

19   the witness.  It is for that reason and that very reason that

20   we did not want to take counsels' time or our collective time

21   engaging in what would be best described as pretrial discovery

22   in the context of the trial proceeding, which I will address

23   following Judge Wood's order with regard to the issue that we

24   addressed yesterday, and that is whether there is, indeed, a

25   roadblock or an insurmountable Supreme Court opinion that would

1   preclude the Legislature revisiting the subject of Act 43.   In

2   that regard I will now defer to Judge Wood.

3           JUDGE WOOD:   Thank you, Judge Stadtmueller.   On

4   behalf of the court we have all prepared a brief order to this

5   effect which I will read addressing this subject.   As we know,

6   this case presents the latest chapter in the redistricting of

7   Wisconsin's legislative and congressional districts after a

8   decennial census.   As required by 28 U.S.C. Section 2284, this

9   three-judge court has been convened to address the consistency

10  of those statutes with federal law.   Before proceeding with

11  trial, however, the court concluded that one last serious

12  effort to resolve these issues in the proper forum, that is to

13  say the State Legislature, was advisable.   This was in keeping

14  with the consistent guidance from the Supreme Court of the

15  United States stressing the fact that redistricting is

16  primarily the duty and responsibility of the state.   The court

17  reminded us of that as recently as Perry versus Perez this

18  year, quoting many other cases.

19          At the time this court made that suggestion, all

20  parties agreed to explore this question seriously.   But when we

21  reconvened yesterday afternoon, however, counsel for the

22  Defendant Government Accountability Board presented what he

23  described as a "good-news bad news" scenario.   He stated that

24  the Legislature was willing to consider making changes to the

25  maps that are before the court, but that it believed itself to

1     be under a binding legal prohibition against doing so based on

2     the Constitution of Wisconsin and the Wisconsin Supreme Court's

3     decision in State ex rel. Smith versus Zimmerman, a 1954

4     decision.

5             The preliminary question that this court must resolve

6     is whether it has the authority to express an opinion on the

7     ability of the Legislature to act.  We conclude that we do

8     possess that authority.  Settlement is a firmly established

9     part of the pretrial process in Federal courts, as you know

10    from Federal Rule of Civil Procedure 16(a).  Courts are

11    entitled to issue orders compelling litigants to meet and

12    confer and to conduct discussions with parties empowered to

13    make decisions.  If one party takes the position that it is

14    under a legal disability to proceed with the settlement

15    process, the court has the authority to resolve that question

16    before moving ahead with the case.  If it agrees that

17    settlement is legally precluded, then it must, of course, move

18    ahead to the formal trial.  If it concludes that settlement is

19    permissible, then it is entitled, as a part of its general

20    authority over case management, to order the parties to engage

21    in these discussions.  In the present case, we conclude that

22    this court both can and must decide whether the Wisconsin

23    Constitution, as interpreted by the Supreme Court of Wisconsin

24    in Smith versus Zimmerman and related cases, imposes such a

25    legal blockade against the Legislature that would preclude it

1  from acting.

2        The fact that this requires us to engage in an

3  interpretation of state law is of no moment.  Federal courts

4  routinely decide questions of state law that arise in

5  conjunction with proceedings both under the federal question

6  jurisdiction, which is what supports the present case, or under

7  the diversity jurisdiction.  Although it would have been this

8  court's preference to refer this question of state law to the

9  Supreme Court of Wisconsin for an authoritative interpretation,

10 it appears that this option is not available to us.  The

11 governing statutes and rules that Wisconsin has adopted limit

12 the certification procedure to questions referred by the

13 Supreme Court of the United States, a Federal Court of Appeals

14 or a fellow state Supreme Court.  I'm referring to Article 8,

15 Section 3, Subsection 3 of the Wisconsin Constitution which

16 states that the Supreme Court, among other things, may accept

17 cases on certification by the Court of Appeals, and to

18 Wisconsin Statute 821.01, which provides that, quote, "The

19 Supreme Court may answer questions of law certified to it by

20 the Supreme Court of the United States, a Court of Appeals of

21 the United States or the highest appellate court of any other

22 state" in certain circumstances.  Perhaps the Legislature

23 overlooked the now rare phenomenon of the three-judge district

24 court, which is comparable to a Court of Appeals insofar as its

25 decisions are appealable directly to the U. S. Supreme Court,

or perhaps this omission was intentional.  No matter.  The
plain language of the State Constitution and the statute
precludes us from taking this preferable avenue, and so of
necessity we must decide.

        The natural starting point for our analysis is the
language of the Wisconsin Constitution.  Article IV, Section 3
provides, and here we emphasize the same words as we did
yesterday, "At its first session after each enumeration made by
the authority of the United States, the Legislature shall
apportion and district anew the members of the Senate and
Assembly, according to the number of inhabitants."  The most
natural reading of that language is as a reference to one of
the normal biennial sessions of the Wisconsin Legislature.  In
response to a question from the court yesterday, counsel for
the Defendant Intervenors, the members of the Republican
delegation to the United States House of Representatives,
opined that for at least 100 years the Wisconsin legislative
sessions after been two years in duration.  That view was
confirmed by the Legislature's own web page, which states that,
quote, "Wisconsin legislative sessions are referred to by the
odd-numbered year in which the session starts," close quote.

        We see nothing in Article IV, Section 3 that
forecloses the General Assembly from revisiting its plans of
redistricting and reapportionment during its current session.
Indeed, the Smith decision itself states that the

constitutional prohibition is directed at the phenomenon of,
quote, "frequent redistricting," close quote.  Later in the
opinion, the court reiterated that it was rejecting the
relator's argument because, quote, "for all practical purposes,
under the relator's view, the Legislature may redistrict the
state as often as it chooses, the constitutional prohibition to
the contrary notwithstanding," close quote.  Action within the
first session after the decennial census, if it is completed
before the first election that occurs under the new boundaries,
poses no risk at all of "frequent redistricting."  Instead, it
is compatible with a reading of the State Constitution to the
effect that the Legislature is authorized to undertake and must
conclude its reapportionment and redistricting duties during
the first session after each national census.

        Indeed, Defendant Government Accountability Board
itself has previously acknowledged the Legislature's authority
to amend the redistricting plan before the end of the current
session.  In an internal memorandum issued November 10, 2011,
the GAB stated that its plan of action included, quote,
"working with the Legislature to develop legislation that will
make necessary technical corrections to Acts 39, 43 and 44 to
correct districts," close quote.  The GAB continued, quote,
"The simplest way to accomplish this is to make technical
corrections to the Acts," close quote.  The GAB does not
suggest anywhere in the memorandum that its plan of action

1    might conflict with state law.  Similarly, the record reflects

2    no objection from the Legislature to the GAB's assumption that

3    the Acts could be corrected for this purpose.

4         We agree with the GAB's earlier position.  Nothing in

5    Zimmerman stands in the way of further revision by the General

6    Assembly at this time.  In the first place, the facts of

7    Zimmerman are both highly unusual and distinguishable from our

8    situation.  In Zimmerman, the Legislature enacted the

9    apportionment at issue in 1951, but the Act was not to become

10   operative until January 1, 1954, and then only if in a

11   referendum held at the time of the 1952 general election the

12   people should reject a proposal to establish Senate or Assembly

13   districts on an area as well as a population basis.  The

14   proposal was rejected.  Then, in the session beginning in 1953,

15   I reiterate, a new session, the Legislature enacted a new law

16   to correct the old one.  Consistent with the established

17   duration of Wisconsin legislative sessions, it is self-evident

18   that the 1953 law was not enacted during the first session of

19   the Legislature following the 1950 decennial census.

20        In rejecting the contention that the 1953 Legislature

21   retained and still possessed the power to redistrict areas

22   already districted in the 1951 law, the Wisconsin Supreme Court

23   ruled that the subject of reapportionment, quote, "passed

24   beyond the Legislature's power of revision at the date of the

25   referendum at the very latest," that would have been 1954,

1  adding that "it is not necessary to decide now whether it so

2  passed at an earlier date." So the court just didn't hold that

3  the passage of the 1951 law alone was enough to exhaust the

4  Legislature's power.

5          Additional limitations in Zimmerman also support this

6  understanding. Among other things, the court noted these

7  things. Both Houses of the Legislature passed the bill, number

8  one. Number two, the governor signed it. Number three, the

9  Secretary of State published it. Number four, the Legislature

10  adjourned sine die. And number five, the citizens of the

11  state, by their action in the referendum, brought to pass the

12  condition on which the finality of the Rosenberry

13  reapportionment of 1951 depended. Here, the first, second and

14  third steps have been accomplished. Step 5 is not in play,

15  because it was unique to the 1951 Act, but Step 4 has not yet

16  occurred.

17          Having concluded that neither the Constitution of

18  Wisconsin nor any ruling by the State Supreme Court stands in

19  the way of further legislative consideration of the issues

20  raised in this litigation, we note also from a broader

21  perspective that the ground has shifted considerably since the

22  mid 1950's. More recent decisions of the Wisconsin Supreme

23  Court and the Supreme Court of the United States are fully

24  consistent with an effort to see if the state Legislature might

25  correct any possible flaws in the legislation while it is still

1   in its first session after the census.  Indeed, these more

2   recent materials indicate this is not only a proper course, but

3   a preferred one.

4           Zimmerman, of course, was decided well before Baker

5   versus Carr, a 1962 decision of the Supreme Court, and the

6   enactment of the Voting Rights Act prior to which redistricting

7   and reapportionment were thought to be non-justiciable

8   political questions.  After those measures, judicial review of

9   redistricting statutes became not only permissible, but

10  routine.  These developments raised new questions about the way

11  in which federal and state institutions were to interact.  As

12  I've already said, the Supreme Court of the United States has

13  emphasized the primacy of the state's role, even while it has

14  steadfastly upheld a role for the federal courts in this area

15  when all else fails.

16          The Wisconsin Supreme Court has sent a similar

17  message.  In Jensen versus Wisconsin Elections Board, decided

18  in 2002 during the last round of Wisconsin's redistricting,

19  that court emphasized that, quote, "congressional

20  reapportionment and state legislative redistricting are

21  primarily state, not federal, prerogatives, and they remain

22  inherently political and legislative, not judicial," close

23  quote, tasks.  They also commented the framers in their wisdom

24  entrusted this decennial exercise to the legislative branch

25  because the give and take of the legislative process involving,

1   as it does, representatives elected by the people to make
2   precisely these sorts of political and policy decisions, is
3   preferable to any other.  By contrast, adjudicating these
4   issues is not a comfortable place for any court, state or
5   federal.

6           Having made those comments, though, the State Supreme
7   Court declined to accept an original action on the issue of
8   redistricting given the fact that there was ongoing federal
9   litigation on exactly the same issue.  In essence, the state
10  court recognized that comity is a two-way street, and it
11  refused the invitation to intervene at a late stage of the case
12  because, as it explicitly said, of principals of cooperative
13  federalism and federal-state comity, and also a desire to avoid
14  unjustifiable duplication of effort and expense.  At the same
15  time, it urged the Legislature to, quote, "now undertake to
16  give the people of this state their due, and timely deliver a
17  plan of legislative redistricting."

18          The Supreme Court of the United States made similar
19  comments in the LULAC against Perry case, which recognized the
20  primacy of state law in legislatures, and also mentioned the
21  proposition that, when possible, courts should avoid passing
22  unconstitutional questions, the familiar Ashwander principle.

23          Our conclusion, therefore, is that the Wisconsin
24  Constitution requires only that the Legislature discharge its
25  redistricting and reapportionment duties during its first

1  session after the 2010 decennial census -- a session that

2  remains ongoing.  Nothing in Zimmerman is inconsistent with

3  that reading of the Wisconsin Constitution, nor with

4  post-Baker, post-Voting Rights Act jurisprudence of both the

5  Wisconsin Supreme Court and the Supreme Court of the United

6  States.  In fact, our position the fully consistent with a

7  number of related doctrines, including federalism, comity,

8  judicial economy, separation of powers and constitutional

9  avoidance.  We do not doubt whether there is authority to

10 revisit it the current plan; the question is whether there is a

11 will to do so.

12        We, therefore, hold that there's no legal impediment

13 to the parties' compliance with our order to confer in good

14 faith to see if a settlement might by reached in this case.

15 Since preliminary discussions have already taken place, the

16 parties are hereby ordered to take that step, and Judge

17 Stadtmueller can correct me if I'm wrong on time, but I believe

18 to report back to this court by 2:00 p.m. today to see whether

19 any such settlement is possible, or if they have reached an

20 impasse.  Depending on that outcome, we will proceed

21 accordingly.

22        THE COURT:  Thank you, Judge Wood.  Consistent with

23 Judge Wood's opinion this morning, the way the court is going

24 to leave the matter as of 10:30 is we will expect that counsel

25 report back to the court.  We will not reconvene, but you must

1  report back to the court not later than 2:00 p.m. this
2  afternoon as to what the final decision may be with respect to
3  the Legislature revisiting the subjects that we have been
4  discussing over the last day and one-half.  The reason for the
5  2:00 p.m. cutoff is that lawyers who are going to be trying
6  this case need to be prepared.  We will start the trial
7  tomorrow morning at 8:30.  We expect to complete all of the
8  testimony at some point Friday, whether it's late afternoon or
9  into the evening.  We have no intention, at least on the basis
10  of the record as it now stands, to carry this trial forward
11  into next week.  So I again will implore counsel to redouble
12  their efforts to narrow the issues, narrow the number of actual
13  live witnesses who will have to give testimony or who may be
14  expected to give testimony, including the matter of
15  Mr. Troupis' testimony.  If counsel are agreeable, you may
16  simply file a deposition transcript in lieu of a trial
17  transcript, or you can redact the transcript with only certain
18  questions and answers as need be appropriate.  We're not
19  interested in elongating this process anymore than is
20  absolutely required.
21         With respect to tomorrow's schedule in the event we
22  do go forward, we will convene at 8:30 with opening statements
23  and begin with the testimony of the plaintiffs' witnesses.  As
24  I indicated at the final pretrial conference, I will leave it
25  to counsel to work out among yourselves the order in which

1    individual witnesses will be cross-examined, whether they be by

2    the Intervenor Defendants or the principal Defendants or

3    Intervenor Plaintiffs to the extent that they may have some

4    follow-up questions. But all of these matters can be

5    effectively addressed in good, open communications with

6    counsel, and to the extent that any of the proffered live

7    witnesses testimony can be avoided, either by stipulation or

8    submitting a proffer to which opposing counsel have no

9    objection, what we are endeavoring to accomplish is to complete

10   the trial record Friday evening. If that's not possible, we

11   will address returning on Monday, but we're not looking to take

12   that step, quite candidly. Are there any other matters that we

13   need to address this morning?

14          MR. POLAND: Your Honor, if I may. How would the

15   court prefer the parties report back by 2:00 p.m.? Would you

16   prefer in writing? Phone call?

17          JUDGE STADTMUELLER: You can contact Mr. Willenbrink

18   and he will advise the court.

19          MR. POLAND: Thank you, Judge.

20          MR. KELLY: Your Honor, we would like to clarify how

21   you conceive of the meet and confer proceeding this afternoon.

22   As Ms. Lazar mentioned this morning, we represent an

23   independent executive branch of the Wisconsin government. We

24   don't represent the Legislature. We will certainly take the

25   court's decisions and rationale to the Legislature for their

1    consideration and place that before them and report back to the

2    court what their decision is, but I don't know if you envision

3    any other role than that for us, because we don't represent

4    them.

5         JUDGE STADTMUELLER:  And I understand, and I leave it

6    to you and Mr. Poland and Mr. Earle, if all three of you want

7    to meet and confer with their lawyers, if they have counsel

8    that they are working with, we don't need to know who they are,

9    it's just to ensure that they have an opportunity to reflect

10   upon the opinion of the court, namely, that there is no

11   impediment in the view of this court to their revisiting the

12   subject, since time with each passing hour is becoming more

13   critically important in terms of whatever steps are taken, both

14   with regard to the trial and the court having an opportunity to

15   digest all of the evidence, much of which is already before us

16   in written form, and depending on the court's ruling whether

17   there need be any further action taken by the Legislature.

18        MR. KELLY:  Your Honor, would it be the court's

19   anticipation that if we were to reach some form of settlement,

20   that the court would make a declaration that that settlement

21   results in a constitutionally sound map?  And the reason I ask,

22   Your Honor, is because of the need for a preclusive effect so

23   that someone else doesn't tomorrow start another piece of

24   litigation against whatever map results from any settlement

25   that happens to be reached.

1          JUDGE STADTMUELLER:  Well, in anticipation of that

2     unintended consequence, if you will, I think it in large

3     measure is going to be dependent upon how open the legislative

4     process becomes.  If it is simply shake and bake with no

5     legislative committee hearings and no opportunities for third

6     parties to present their views, which has been consistently the

7     biggest problem in this case, is that the process is not in

8     keeping with traditional notions of open, transparent

9     government.  To the extent that these issues can be set aside

10    and the process be made open, as generally is the case with

11    legislation, they ought not be concerned, but they do need to

12    be concerned about the views of those who have a stake in all

13    of this and, obviously, a reasoned approach can be had.

14         JUDGE WOOD:  I might add a word about that, as well,

15    which is simply to say, which I'm sure you well know, any

16    hypothetical future litigation would be governed by Wisconsin's

17    rules of claim and issue preclusion, if it happened to be in

18    state court, or there might be some issue of federal law, and

19    courts can't fully anticipate that, but on the other hand,

20    stare decisis is a very strong principle in our system.  We

21    normally don't have a rule that we preclude people who have

22    never had a day in court, but on the other hand, a good, solid

23    opinion is normally the end of things.  There's not a long

24    history of repeated litigation that exists in these kinds of

25    cases, so I think it's the soundness of the ultimate plan and

1   the strength of the opinion are what are your primary

2   protections.

3           MR. KELLY:  One moment, Your Honor.  I just want to

4   make sure I understand then that the court understands that if

5   we were to reach -- if the Legislature were to revisit Act 43

6   or Act 44 and make any changes, that we would then come back to

7   this court and there would be a dismissal with prejudice of

8   this litigation.  Would it be the court's opinion that that

9   dismissal with prejudice would be a sufficient ruling on the

10  merits, that no further complaint based on those causes of

11  action would be justiciable?

12          JUDGE WOOD:  Again, I would say that, subject to the

13  review of the revised plan, I mean, it's impossible for us to

14  sit here right now and rule on a plan we have never seen.

15  Assuming the revised acts pass muster, of course this case

16  would be dismissed with prejudice, but it's not possible for us

17  to say to somebody who's a stranger to this litigation what

18  that person's rights are, hypothetically speaking.  The present

19  plaintiffs would not be able to come back, of course.

20          MR. KELLY:  So the result of the legislative action

21  would be that this case would be automatically dismissed, is

22  that right?  There would be no further review of that plan in

23  this case?

24          JUDGE WOOD:  Assuming that -- I mean, we would have

25  to look at the plan, but, yes, assuming that the plan is

1  acceptable, that's my understanding.

2          JUDGE STADTMUELLER:  Absolutely.

3          MR. KELLY:  So we would still have a trial on the

4  acts, but it would be a trial on the acts as amended as opposed

5  to the acts as they exist today?

6          JUDGE WOOD:  Only if we thought that there was a

7  disputed issue that required a trial, I would think.

8          JUDGE STADTMUELLER:  I guess I would liken it to the

9  settlement, for example, in a class action litigation in which

10  the settlement requires approval by the court before whom the

11  underlying action was pending, and if all of the issues are

12  appropriately addressed, and assuming that the concerns that

13  the plaintiffs have raised in this case are adequately

14  addressed and that we don't create other issues by revisiting

15  the plan, for example, denying other constituents in these

16  districts their one-man, one-vote right.  So I guess at the end

17  of the day there is a focus point of the shortcomings, that be

18  an appropriate descriptor of the current legislation, and if

19  amending it or revisiting it is done in a manner that creates

20  other issues for the court, forgetting if there are no other

21  parties that object, but the court is obliged to make an

22  independent determination based upon the principles that are

23  before us in this very case, and assuming those principles are

24  appropriately addressed and there are no lingering issues, I

25  have no hesitancy in speaking for my colleagues in telling you

1    that the plan would certainly receive the approval of the

2    court.

3           MR. KELLY: But, Your Honor, with respect, to provide

4    the court with that kind of information necessary to make a

5    determination of whether that amended plan would meet

6    constitutional muster, that is to say that it addressed the

7    concerns of the plaintiffs, it would require exactly what we

8    are prepared to do, were prepared to do yesterday, which is put

9    on a three- to four-day trial with all of our experts to

10    explain to the court all of the factors that go into building a

11    constitutional map. It does not seem like what we are

12    proposing here is going to advance the ball very far if we are

13    going to be presenting the same trial, perhaps with some

14    modifications around the edges to address whatever the

15    Legislature chooses or not chooses to do, but we're still going

16    to have all of our experts here, we're still going to have days

17    of testimony, we're still going to have all of the legal

18    arguments about whether the issues have been, in the court's

19    eyes, adequately addressed.

20           JUDGE DOW: Why would that be so if there's

21    agreement? I mean, essentially you have got plaintiff parties

22    coming in here to complain about the current map, for lack of a

23    better word. I know that there is a whole process they are

24    complaining about, as well, but if those current concerns are

25    addressed and there aren't any disputes, I don't know why we

1  need have to a trial.  We have enough paper here -- I mean, I

2  think there are some parties out here that think that we have

3  enough paper here to decide this case on summary judgment or on

4  a motion for judgment on the pleadings.  If you take away the

5  disputed issues, I don't know why we'd need to have a trial.

6  We certainly have enough here to make a lot of findings.

7        JUDGE WOOD:  And I don't know why, if there's

8  agreement, I mean, I guess that the whole concept of this was

9  everybody getting together.  I think you are jumping ahead to

10  really a worst-case scenario in which agreement would fall

11  apart, the Legislature would do something that they still

12  didn't like, but these Plaintiffs are part of the process.  I

13  think the analogy to a class action settlement is an excellent

14  one.

15        MR. KELLY:  Thank you, Judge Wood, and I may have

16  missed the import of what you said earlier today.  There was a

17  suggestion that the process would be the thing, that this would

18  be -- that there would be public hearings, there would be

19  committee hearings, there would be amendments and this would

20  travel through the normal legislative process.  But I think I'm

21  hearing you say now that we would have an agreement about what

22  the amendment would be, which means there would be no committee

23  hearings necessary, no public hearings necessary.  So it's one

24  or the other.  We can either address the Plaintiffs' concerns

25  on an agreed basis, or we open the process up and essentially

1  start over with the redistricting process.  But if we reopen it
2  to do a new redistricting process, there's not even a
3  suggestion that the Plaintiffs would be satisfied with that.
4  The Legislature decided, in its good judgment, that it passed a
5  solid constitutional plan.  It embodies their judgment of
6  what's best for the people of the State of Wisconsin.  There is
7  no reason to believe that going back they are going to adopt
8  whatever the Plaintiffs happen to want in this case, because
9  there's always going to be some other group of people who want
10  something different.
11          The nature of redistricting is it's not going to
12  please everyone.  There will be another group that wants
13  something completely different, they will complain, they will
14  come to court, we will go back to the Legislature, we will
15  start the process over again, we will get another political
16  map, and then we will present it to the court, and we're going
17  to keep going through this iterative process without a natural
18  resolution.  So we can either do this potentially on a settled
19  basis, which would require confidential communications with the
20  parties in such a way that the members of the Legislature would
21  be able to agree amongst themselves about what parts of the
22  Plaintiffs' concerns would be addressed, and then they could
23  pass that without committee hearings, without public hearings
24  and without that political process.  Or we can do the political
25  process with no guarantee that the Plaintiffs' concerns are

1  going to be adopted, because in the Legislature's mind their

2  concerns are baseless.

3        JUDGE STADTMUELLER:  Well, all of that in be true,

4  but unfortunately, Mr. Kelly, from the record that is before

5  the court, we don't know what the Legislature did other than

6  pass an act.  For example, you mentioned experts.  We have no

7  idea what they really relied upon.  It may have been totally a

8  political decision, and that's fine, they are entitled to make

9  a political decision, but the political decision still has to

10 pass constitutional muster, and that's what this litigation is

11 all about, at least in the view of these three judges.

12       MR. KELLY:  I completely agree, Your Honor.

13       JUDGE WOOD:  Could I just get some clarification from

14 you about one point, because I guess what I had understood this

15 to be about is whether it's possible to settle the claims that

16 are actually before this court from the various Plaintiffs that

17 are here in a way that would be acceptable to all sides so that

18 we could have an agreed conclusion.  Now I would imagine that

19 part of that conclusion would have to be not just a promise

20 from the Legislature to pass corrective legislation, but actual

21 passage of it, but I also start from the premise, which I take,

22 among other things, from the Perez litigation that there's a

23 great deal of this that is let's say less contested than other

24 parts of it.  There might be some focus in any particular

25 settlement, I'm not going to prejudge what happens in

1   settlement, but it seems to me we are not talking about

2   throwing out the entire map and starting over again, we're

3   talking about can this case be settled.

4        MR. KELLY:  Judge, I think that puts a nice bow

5   around the question.  If this is going to be a settlement, then

6   I don't think there's going to be a need for any

7   post-settlement trial on whether that map is constitutional.

8   But we do need the court's imprimatur that it's constitutional

9   for the settlement to have any significance whatsoever, because

10  otherwise we will have another group of plaintiffs.

11       JUDGE WOOD:  So essentially you want a consent

12  decree.  You want more than just a private settlement, you want

13  a consent decree, it sounds to me like.

14       MR. KELLY:  That's essentially what we would need.

15  If the court believes it has the authority to issue a consent

16  decree that would be binding on everyone else in the State of

17  Wisconsin so that we don't go through this again in a couple of

18  weeks, then I think the Legislature might be able to move ahead

19  with a potential settlement.

20       JUDGE STADTMUELLER:  I see no problem with that, if

21  you want to cast it as a consent decree as opposed to private

22  settlement or whatever.

23       MR. KELLY:  That's fine.  I want to make sure we're

24  not doing this again in a few weeks.

25       JUDGE WOOD:  I don't think any of us really wants to.

1          JUDGE DOW:  And the issue, just from a trial

2     perspective, we wouldn't be sitting here if we didn't think

3     there was some issue for trial, but you guys control the

4     ability to take those things off the table by ceasing to have a

5     dispute about them.  I mean, that's kind of -- I understand

6     your point is so even if all of us sitting in this room cease

7     to have a dispute about them, what about the rest of the world

8     that may have a dispute.  I understand that point.  But in

9     terms of simplifying this for trial, if you guys cease to have

10    a dispute, there isn't anything to try here.  We have a lot of

11    paper here that we could make findings on, if there's nothing

12    in dispute.

13         MR. KELLY:  As a factual matter, yes.  But even if we

14    were to cease to have a dispute, just so the court is clear, I

15    can't make the Legislature do anything.  I mean, they have

16    their own authority, they have their own priorities and issues,

17    and they will do what they are going to do, and we will convey

18    what the court has said to them.

19         JUDGE DOW:  And they may well have their own

20    incentives, as well.  I mean, as the case now stands, there's a

21    triable fact on constitutional claims, and our dictates are to

22    avoid those, if possible, that's all part of what Judge Wood

23    was reading a half-an-hour ago, but they also may have

24    incentives that they might like to take those issues off the

25    table to avoid the possibility that they might lose the

84

1  litigation.  That's the issue.

2          MR. KELLY:  Thank you, Your Honor.

3          JUDGE STADTMUELLER:  Very well.  There being nothing

4  further, the court will stand adjourned and we will await

5  further word.  Before we do that, Mr. Shriner, in keeping with

6  the court's comments earlier, you don't have to say anything

7  now, but you may recall the Court suggesting last evening that

8  you and Mr. Earle explore, perhaps, a stipulation.

9          MR. SHRINER:  Mr. Olson and Mr. Hassett and I have

10  had conversations.  I think we are very close to being agreed

11  on what the testimony of our witnesses would be and being able

12  to submit it.

13          JUDGE STADTMUELLER:  Very well.  Thank you.  The

14  court stands in recess.

15          THE BAILIFF:  All rise.

16

17

18

19

20

21

22

23

24

25

1  UNITED STATES DISTRICT COURT  )
                                 )SS
2  EASTERN DISTRICT OF WISCONSIN )

3

4

5                    I, KATHY A. HALMA, Official Court Reporter

6  for the United States District Court, Eastern District of

7  Wisconsin, do hereby certify that I reported the foregoing

8  proceedings and that the same is true and correct in accordance

9  with my original shorthand notes taken at said time and place.

10

11

12        _____

13  KATHY A. HALMA
    Official Court Reporter
14  United States District Court

15

16

17

18

19

20

21

22

23

24

25