UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| ALVIN BALDUS, CINDY BARBERA, CARLENE BECHEN, RONALD BIENDSEIL, RON BOONE, VERA BOONE, ELVIRA BUMPUS, EVANJELINA CLEEREMAN, SHEILA COCHRAN, LESLIE W. DAVIS III, BRETT ECKSTEIN, MAXINE HOUGH, CLARENCE JOHNSON, RICHARD KRESBACH, RICHARD LANGE, GLADYS MANZANET, ROCHELLE MOORE, AMY RISSEEUW, JUDY ROBSON, GLORIA ROGERS, JEANNE SANCHEZ-BELL, CECELIA SCHLIEPP, TRAVIS THYSSEN, | Civil Action File No. 11-CV-562 |
| Plaintiffs, | Three-judge panel 28 U.S.C. § 2284 |
| TAMMY BALDWIN, GWENDOLYNNE MOORE and RONALD KIND, | |
| Intervenor-Plaintiffs, | |
| v. | |
| Members of the Wisconsin Government Accountability Board, each only in his official capacity: MICHAEL BRENNAN, DAVID DEININGER, GERALD NICHOL, THOMAS CANE, THOMAS BARLAND, and TIMOTHY VOCKE, and KEVIN KENNEDY, Director and General Counsel for the Wisconsin Government Accountability Board, | |
| Defendants, | |
| F. JAMES SENSENBRENNER, JR., THOMAS E. PETRI, PAUL D. RYAN, JR., REID J. RIBBLE, and SEAN P. DUFFY, | |
| Intervenor-Defendants, | |

(caption continued on next page)

**JOINT RESPONSE OF BALDUS AND VOCES DE LA FRONTERA PLAINTIFFS TO DEPARTMENT OF JUSTICE'S MOTION FOR A STAY**

VOCES DE LA FRONTERA, INC., RAMIRO VARA,
OLGA VARA, JOSE PEREZ, and ERICA RAMIREZ,

        Plaintiffs,

    v.                                                                           Case No. 11-CV-1011
                                                                                JPS-DPW-RMD

Members of the Wisconsin Government Accountability
Board, each only in his official capacity:
MICHAEL BRENNAN, DAVID DEININGER, GERALD
NICHOL, THOMAS CANE, THOMAS BARLAND, and
TIMOTHY VOCKE, and KEVIN KENNEDY, Director
and General Counsel for the Wisconsin Government
Accountability Board,

        Defendants.

        The Baldus and Voces de la Frontera plaintiffs (collectively, the "plaintiffs") and the Wisconsin Department of Justice each have filed a post-judgment motion: the plaintiffs to set a hearing date and briefing schedule in light of the legislature's unwillingness even to attempt to remedy Act 43's infirmities as required by the Court's March 22, 2012 judgment (Dkt. 210); and the Department of Justice's Friday evening request for a conference call and a "provisional" stay (Dkt. 214).

        There is no need for a conference call. Nor is there any need – or justification – for a stay. While any of the parties will have the right to appeal this Court's judgment to the United States Supreme Court, it is now indisputable that the work of the three-judge panel has not concluded – through no fault of the parties or the Court. That judgment, accordingly, may or may not be appealable now, but the legal effects of the judgment remain in place:

- Act 43 violates the Voting Rights Act.

- The Government Accountability Board cannot implement Act 43.

- Unless and until the legislature re-enacts Act 43 to comply with federal law, it is not state law.
- The 2002 boundaries established by this Court remain the law and those boundaries are constitutional.

The Department of Justice's response to the plaintiffs' expedited motion misperceives the very process of districting. The remedy here is not simply a matter of moving "the single boundary line between new Assembly Districts 8 and 9. . ." or "redrawing the one and only district line that . . . violate[s] federal law." Response of the Dept. of Justice to Plaintiffs' Joint Motion ("DOJ Resp.") at 3 (Dkt. 214). The districts must be reconfigured in a way that meets the demands of the Voting Rights Act; minimizes population deviation for those assembly districts, the surrounding senate districts, and the 99 assembly districts in the aggregate; and, still satisfies traditional districting principles. Based on Dr. Kenneth Mayer's work in the three days since the entry of the judgment, it is not yet clear that can be accomplished within the limited geography the Act 43 districts now circumscribe. That, among other reasons, is why the Court should require the expert submissions and supporting briefs and conduct the evidentiary hearing the plaintiffs have requested.

## I. THE DEPARTMENT OF JUSTICE HAS ACKNOWLEDGED THE LEGISLATURE'S REFUSAL TO ACT.

This Court did not, as the Department of Justice suggests, merely give the legislature the "opportunity to pass a law, presumably in the interests of comity . . . ." Op. at 3 n.1 (Dkt. 210). Rather, the Court gave the legislature the opportunity to act, as the panel repeatedly recognized during trial and in its opinion, because that is what the law requires. *See* Op. at 10, 36 (Dkt. 210) ("Heeding the instruction of the United States Supreme Court that 'redistricting is "primarily the duty and responsibility of the State,"' the Court will not tread into the black water of re-drawing

the redistricting boundaries itself." (quoting *Perry v. Perez*, 132 S. Ct. 934, 940 (2012) (citation omitted)).

While the legislature is not a party here, it had every opportunity to become one, and no one can argue that it has been unaware of these proceedings or that, through the Department of Justice, its interests have been unprotected or ignored. Nor is there a legislative "impasse," as the Department of Justice contends. DOJ Resp. at 4 (Dkt. 214). The leader who controls the state senate has flatly refused to call a legislative session to even try to address the Voting Rights Act violation. Joint Expedited Motion of Baldus Plaintiffs and Voces de la Frontera Plaintiffs to Schedule a Half-Day Hearing on Remedies and to Set a Complementary Briefing Schedule ("Pls.' Mot.") at 3 (Dkt. 212). Notwithstanding the Department of Justice's defense of the legislature's defiance, there is not the slightest suggestion by the Department that the legislature will do what the Court requires to be done. Indeed, the Attorney General has publicly stated his expectation that the legislature will not act. Pls.' Mot. at 3 (Dkt. 212). And unless the legislature acts to amend Act 43 in a way that remedies the Act's violation of federal law, Act 43 has no force or effect.

"Non-action by the Legislature," the Department of Justice further contends, "is consistent with the view that 2011 Wisconsin Act 43 does not violate the Voting Rights Act and that it will eventually be upheld in its entirety." DOJ Resp. at 3 (Dkt. 214). That may well be the legislature's view. If the Government Accountability Board shares that view and wishes to appeal, once there is a final and appealable judgment, it has that right. So do the plaintiffs. But the legislature does not. It has not only the "opportunity" to amend the statute, it has the obligation. And the Court "of course would . . . prefer[] for the legislature to . . . fulfill[] its obligation and formulate[] a redistricting plan" that does not violate the Voting Rights Act.

4

*Johnson v. Miller*, 922 F.Supp. 1556, 1569 (S.D. Ga. 1995) (redrawing Georgia's congressional districting plan after legislature failed to do so on remand). Unless the legislature amends and re-enacts Act 43, that Act, unamended by the legislative process, cannot ever be the law.

## II. AN EVIDENTIARY HEARING IS ESSENTIAL IN LIGHT OF THE LEGISLATURE'S POSITION.

Even if the legislature had chosen to meet its obligation, which it has not, the Court's work would not be done. Act 43, because of the legislature's intransigence and the legislatively uncorrected Voting Rights Act violations, never will comply with federal law. Absent legislative action, it never can be made valid. The Court cannot amend the statute. Only the legislature has that power, and it can but refuses to do so.

In light of the legislature's refusal to act, the Court, having found Act 43 in violation of federal law, now has no recourse but to determine by judicial order that the district boundaries, as reconfigured to meet federal law, do comply with statutory and constitutional requirements. That is, after all, the ultimate lesson of *Perry v. Perez*. It also means that the district boundaries for the entire state legislature will be judicially-established – once again – albeit based in large part on boundaries already established by the legislature. *See* Op. at 34 (Dkt. 210).

No less than in each of the last three decades (*see* Op. at 3 (Dkt. 210)), this Court should not be asked (or forced) to assume that responsibility without hearing evidence on the remedy for the statutory violations. The Department of Justice agrees there should be a "remedial phase." DOJ Resp. at 3 (Dkt. 214). The plaintiffs have asked to submit proposed district boundaries supported by expert opinion and briefs, followed by a four-hour (maximum) evidentiary hearing. The plaintiffs' jointly retained expert already is working to develop proposals and compiling data to present to the Court to support them. There may well be more than one alternative that meets

the command of the Voting Rights Act. Indeed, the plaintiffs' expert tentatively has developed and evaluated several.

The Department of Justice says there should be a conference call to determine "[w]ho may submit proposals to the Court." DOJ Resp. at 4 (Dkt. 214). To the extent the Court will entertain any submissions other than those of the parties (*see* Op. at 36-37 (Dkt. 210)), the answer to the Department of Justice's question does not require a conference call. The Court can address that issue in an order – or, for example, it might choose to evaluate any submissions it receives from anyone who files a motion that persuades the Court it has a basis for making a productive contribution within the time constraints imposed by the electoral process. The parties certainly cannot dictate who can and cannot make submissions. In this regard, it is no different than the process this Court followed when making its determination of who could intervene. *See* Nov. 21, 2011 Order Granting Motions to Intervene at 5 (Dkt. 49) (concluding that, by exercising its "discretion, the Court will adequately be able to sort out potential intervenors, allowing some to intervene and requiring that others participate only as *amicus curiae*").

Regardless of the parties permitted to submit proposals, the final decision is the Court's. The legislature deliberately has chosen to make it so. And it is virtually inconceivable the Court would elect to do that on papers alone, especially given the prominent role played by expert testimony in the conclusions reached by the Court. *See, e.g.*, Op. at 24-32 (Dkt. 210). Notably, the state's taxpayers have paid for four expert witnesses retained by the Department of Justice. They no doubt have proposals as well.[1]

---

[1] The Department of Justice already has expressed its concern that the Government Accountability Board's members, the defendants, are not in a position to submit alternative proposals because they are not advocates for a particular set of boundaries. The Department of Justice has not found itself limited in the course of this litigation in the positions it has expressed nor in its use of experts for advocacy. In any event, the legislature itself may choose to ask the Court for permission to submit proposals.

6

### III. THERE IS NO JUSTIFICATION FOR A STAY OR FOR THE CLARIFICATION THAT THE DEPARTMENT OF JUSTICE SEEKS.

The Department of Justice seeks both "clarification" of the injunction and a provisional stay of the injunction unless the injunction applies only to two legislative districts. Putting aside the inherent inconsistency in the relief requested, the motion again misperceives the redistricting process and, not incidentally, the effect of the Court's judgment. Act 43 violates federal law. Period. The legislature can adopt a replacement, if it chooses, and the Governor can sign it into law, if he chooses. But Act 43 cannot be implemented piecemeal, and the judiciary cannot amend it and "re-enact" it.

It is not yet clear that the statutory violations can be addressed wholly within the geographic boundaries hypothetically proscribed by Act 43's Assembly Districts 8 and 9. One of the reasons the Court should require an evidentiary hearing is that the process of establishing any district's boundaries is a calculus involving multiple factors. *See, e.g.,* Op. at 24-32 (Dkt. 210). The plaintiffs' proposal may provide for a significant and appropriate citizen voting age population in Assembly Districts 8 and 9, for example, but at the price of compactness or an unacceptable deviation from population equality.[2] Another approach might preserve minimal deviation but not quite reach an acceptable citizen voting age population. The decision about how to preserve the federally-protected voting rights of Latino citizens requires careful study and exercise of judgment. After all, what is at stake here is the right to vote, which, as the Court recognized, is "a fundamental right for every elective office in a democracy." Op. at 19 (Dkt. 210). Thus, the question that this Court now must answer in the remedies phase cannot be

---

[2] Of course, judicially imposed districting plans are held to a higher standard than legislatively-enacted plans on the question of population deviation and other factors. *Abrams v. Johnson*, 524 U.S. 74, 79 (1997). Again, the Department of Justice's emphasis on the need to merely move a "line" is at best naive. The determination that the Court now must make requires proposals supported by evidence, including expert testimony.

dismissed so easily, as the senate leader and Department of Justice have blithely put it, as involving "minor changes" or simply adjusting a "line." *See* Poland Decl., Exs. A-D (Dkt. 213).

If the statutory violations cannot be addressed wholly within the limited geography established in Act 43, or that cannot be accomplished without offending constitutional or traditional redistricting criteria, then other districts including the shape of at least one senate district may be affected. The Court expressly stated its expectation that creating new boundaries for Assembly Districts 8 and 9 within the combined boundaries of those same districts (presumably the boundaries set by Act 43) "should not be an impossible task, given that Dr. Mayer has prepared at least one alternative configuration that should be a useful starting point." Op. at 34 (Dkt. 210). It is indeed a starting point.

But Dr. Mayer's "demonstration district," which he prepared as part of his expert report, was not drawn with regard for the boundaries of Assembly Districts 8 or 9, either as drawn by the Court in 2002 or as they appear in Act 43. That demonstration district and the Court's goal may not coincide. In addition, it may be possible to achieve the percentages of citizen Latino voters in Assembly District 8 that the Court agreed are necessary to satisfy the Voting Rights Act by staying within the confines of the outer boundaries of Assembly Districts 8 and 9 as drawn in Act 43. Yet that could produce districts that are not compact or increase population deviations above acceptable levels. Indeed, plaintiffs' preliminary analysis suggests that redrawing Assembly District 8 to remedy the statutory violation and adhere to traditional redistricting criteria may produce an Assembly District 9 that *cannot* meet those fundamental requirements— at least if the districts' combined outer boundaries go unchanged. Accordingly, a remedy for Act 43's violations of federal law may require adjustments to the boundaries of Assembly Districts other than 8 and 9 and possibly the adjustment of the boundaries of Senate District 3.

The possibility that marginal adjustments might need to be made to other districts to bring Assembly Districts 8 and 9 into compliance touches on the Department of Justice's motion for a stay. The Court did not find a "line" in violation of federal law. It found the *statute* in violation.[3] *See, e.g.,* Op. at 33 (Dkt. 210) ("[W]e find that the Baldus and Voces plaintiffs are entitled to relief on their Section 2 claim concerning New Assembly Districts 8 and 9, because Act 43 fails to create a majority-minority district for Milwaukee's Latino community."). That holding was reflected in the Court's Order: "[T]he Government Accountability Board is hereby **ENJOINED** from implementing Act 43 in its current form . . . ." *Id.* at 37. This Court's mandate does not require clarification. The enforcement of the Act is enjoined.

Nor does the Department of Justice's appeal to timing, already addressed in the plaintiffs' motion, sustain its motion. The Department of Justice contends that the election deadlines "are fast approaching and the defendants do not have any guidance as to what boundary line[s] to use . . . ." DOJ Resp. at 5 (Dkt. 214). That is incorrect. The boundaries established by this Court ten years ago remain in effect – they are the law, and the state has continued to use them for special and recall elections. Op. at 32-33 and n.4 (Dkt. 210). Moreover, over the objection of the Department of Justice, this Court has declared those boundaries constitutional. *Id.* at 33. The

---

[3] In *Perry*, of course, the legislatively "enacted" boundaries for state legislative district and congressional boundaries were not in effect because the state had not received pre-clearance approval under section 5 of the Voting Rights Act. Those same boundaries were subject to a section 2 challenge, leaving the three judge panel there with the "unwelcome obligation" to draft the state's district boundaries for the upcoming election. *Perry*, 132 S. Ct. at 940 (citing *Connor v. Finch*, 431 U.S. 407, 415 (1977)). Accordingly, the federal district court hearing the section 2 case drew interim district boundaries. While the issue was the degree of deference the district court necessarily must pay the "enacted" but "unenforceable" boundaries, no one suggested – save Justice Thomas – that the legislatively-enacted boundaries somehow remained in effect as valid state law. To the contrary, the majority rejected that position. The boundaries in Act 43 here are no less "unenforceable" because, as this Court has found, some of the boundaries violate section 2. The statute is unenforceable, not just part of it, and the Court cannot amend the statute.

defendants have "direction," and to borrow a phrase favored by a legislative leader, there is "not a chance" the voters of this state will be disenfranchised. *See* Poland Decl., Ex. B (Dkt. 213).

With respect to the stay motion itself, provisional or not, the Department of Justice has provided no argument or citation anchored in the requirements for a stay recognized in this circuit. But it is not a bar easily met. Rule 62(c) provides that:

> While an appeal pending from an interlocutory or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights. If the judgment appealed from is rendered by a statutory three-judge district court, the order must be made either: (1) by that court sitting in open session; or (2) by the assent of all its judges, as evidenced by their signatures.

Fed. R. Civ. P. 62(c).

A grant of stay under Rule 62(c) is considered "extraordinary relief" for which the moving party bears a "heavy burden." *Winston-Salem/Forsyth County Bd. of Educ. v. Scott*, 404 U.S. 1221, 1231 (1971); *see also Dillard v. City of Foley*, 926 F. Supp. 1053, 1076 (M.D. Ala. 1996) (finding the neighboring city and affected landowners were not entitled to a stay, pending appeal, of order approving consent decree allowing both African-American majority areas and white-majority areas to choose annexation by referenda).

Determination of whether to continue an injunction pending appeal involves consideration of the following factors: 1) the likelihood of the defendants prevailing on the merits of the appeal; 2) whether the defendants will be irreparably injured absent an injunction; 3) whether issuance of the injunction will substantially injure other interested parties; and 4) whether granting of the stay serves the public interest. *See S & S Sales Corp. v. Marvin Lumber & Cedar Co.*, 457 F. Supp. 2d 903, 907 (E.D. Wis. 2006) (citing *Glick v. Koenig,* 766 F.2d 265, 269 (7th Cir.1985)) (denying motion for stay); *see also Sandusky County Democratic Party v. Blackwell*, 340 F. Supp. 2d 810 (N.D. Ohio 2004) (holding that a stay pending appeal was not

warranted and ordering that the court's mandate to draft a Help America Vote Act-compliant directive to Ohio's election officials be promptly implemented).

The Department of Justice has not yet appealed the Court's decision, and has not articulated any reasons, sufficient or otherwise, for a stay of the injunction issued by the Court. Regardless, the Department does not meet its heavy burden for such extraordinary relief. It has not suggested there is a substantial likelihood of prevailing on the merits of their purported appeal, nor could it considering defendants' experts effectively conceded at trial that plaintiffs met their burden on the Voting Rights Act claim. It does not suggest how the Department of Justice, or any other interested party, will be harmed if Act 43 is enjoined. Nor can the Department of Justice claim that further delay of a remedy serves the public interest.

There is no need for a stay unless and until the deadlines in the discretionary election schedule established by the defendants have been passed. If the Court imposes the accelerated schedule and hearing requested by the plaintiffs, there is no need for a stay.

## CONCLUSION

The Department of Justice declared Act 43 "vindicated" upon the Court's March 22, 2012 judgment and order. Pls.' Mot. at 3 (Dkt. 213). Now, in light of the Department's motion, perhaps not. The only remedy available here is a judicial one. The Court should deny the Department of Justice's motion for a stay or for clarification and it should grant the plaintiffs' pending motion to schedule a hearing with a complementary briefing schedule.

Dated: March 25, 2012.

GODFREY & KAHN, S.C.

By: */s/ Douglas M. Poland*
Douglas M. Poland
State Bar No. 1055189
Dustin B. Brown
State Bar No. 1086277
One East Main Street, Suite 500
P.O. Box 2719
Madison, WI 53701-2719
608-257-3911
dpoland@gklaw.com
dbrown@gklaw.com

*Attorneys for Plaintiffs*

Dated: March 25, 2012.

LAW OFFICE OF PETER EARLE LLC

By: */s/ Peter G. Earle*
Peter G. Earle
State Bar No. 1012176
Jacqueline Boynton
State Bar No. 1014570
839 North Jefferson Street, Suite 300
Milwaukee, WI 53202
414-276-1076
peter@earle-law.com
Jackie@jboynton.com

*Attorneys for Consolidated Plaintiffs*

7672273_5

12
Case 2:11-cv-00562-JPS-DPW-RMD   Filed 03/25/12   Page 12 of 12   Document 217