# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ALVIN BALDUS, CINDY BARBERA, CARLENE
BECHEN, RONALD BIENDSEIL, RON BOONE, VERA
BOONE, EL BUMPUS, EVANJELINA CLEEREMAN,
SHEILA COCHRAN, LESLIE W. DAVIS III, BRETT
ECKSTEIN, MAXINE HOUGH, CLARENCE
JOHNSON, RICHARD KRESBACH, RICHARD
LANGE, GLADYS MANZANET, ROCHELLE MOORE,
AMY RISSEEUW, JUDY ROBSON, GLORIA ROGERS,
JEANNE SANCHEZ-BELL, CECELIA SCHLIEPP,
TRAVIS THYSSEN,

   Plaintiffs,

TAMMY BALDWIN, GWENDOLYNNE MOORE
and RONALD KIND,

   Intervenor-Plaintiffs,

  v.

Members of the Wisconsin Government Accountability
Board, each only in his official capacity:
MICHAEL BRENNAN, DAVID DEININGER, GERALD
NICHOL, THOMAS CANE, THOMAS BARLAND, and
TIMOTHY VOCKE, and KEVIN KENNEDY, Director
and General Counsel for the Wisconsin Government
Accountability Board,

   Defendants,

F. JAMES SENSENBRENNER, JR., THOMAS E. PETRI,
PAUL D. RYAN, JR., REID J. RIBBLE,
and SEAN P. DUFFY,

   Intervenor-Defendants.

Civil Action
File No. 11-CV-562

Three-judge panel
28 U.S.C. § 2284

(caption continued on next page)

---

**DECLARATION OF MARK LANTERMAN**

---

VOCES DE LA FRONTERA, INC., RAMIRO VARA,
OLGA WARA, JOSE PEREZ, and ERICA RAMIREZ,

        Plaintiffs,

v.

Members of the Wisconsin Government Accountability
Board, each only in his official capacity:
MICHAEL BRENNAN, DAVID DEININGER, GERALD
NICHOL, THOMAS CANE, THOMAS BARLAND, and
TIMOTHY VOCKE, and KEVIN KENNEDY, Director
and General Counsel for the Wisconsin Government
Accountability Board,

        Defendants.

Case No. 11-CV-1011
JPS-DPW-RMD

---

I, Mark Lanterman, declare, under penalty of perjury and pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1. I am the Chief Technology Officer for Computer Forensic Services, Inc. ("CFS"), in Minnetonka, Minnesota. My credentials to serve as a Court-appointed computer forensic expert in this case, including my curriculum vitae, previously were submitted to the Court. *See* Dkt. 254 ¶ 25; Dkt. 254-9; Dkt. 260 ¶¶ 9-12.

2. Following the Court's decision to permit Schiff Hardin and its own expert, Project Leadership Associates ("PLA"), to continue their exclusive investigation, I have consulted with Plaintiffs concerning the parameters of a comprehensive and credible forensic review.

3. I have reviewed correspondence between counsel for Plaintiffs and for Michael Best concerning their remaining areas of disagreement over PLA's investigation and the newly discovered documents being provided to Plaintiffs. A February 7, 2013 email from Ayad P. Jacob of Schiff Hardin (attached as **Exhibit A** to this declaration) listed five areas of disagreement, the last three relating to technical procedures I have recommended.

2

4. Mr. Jacob is correct when he says the registry files "do not contain documents." Registry files collect settings associated with each user of a computer—a separate registry file exists for each account used to log into a computer. However, Mr. Jacob's statement fails to recognize the value and significance of the registry data, which PLA should be reviewing.

5. The registry provides important information: what a computer user has done and where data are stored. For example, the registry typically records the names of the last ten to twenty files of any type accessed by the user: i.e., up to twenty documents with a .doc extension, up to twenty documents with a .docx extension, and up to twenty documents with an .xls extension. The registry also identifies .pst and .ost files in which Outlook data are stored. This information is particularly important if software has been used to delete files. It provides a record of files most recently accessed from that computer —even if those files were subsequently deleted.

6. Mr. Jacob also stated that there is no indication the LNK files related to any potentially responsive documents that were not produced. That is highly unlikely. LNK files are typically created whenever a user double clicks a file. The LNK file is a shortcut that causes the file to open more quickly when accessed later. Unlike the registry, which only contains information about the files accessed most recently, the number of LNK files retained is not limited. Reviewing and analyzing LNK files is critical to any forensic investigation.

7. Based on Mr. Jacob's email, PLA may not have used the LNK files to their full forensic potential. LNK files contain a wealth of information. Most importantly, they tell us the names of documents a user is double-clicking to open. The LNK file associated with a document indicates the document's location (i.e., server, hard drive, thumb drive) and file path (i.e., the names of every folder and subfolder within which the file appears), as well as when the file was created and when it was last modified. Thus, for example, if a document titled "Hot Doc" was

3

saved to a thumb drive and accessed from a specific computer, the LNK file will provide the date "Hot Doc" was first saved *to the thumb drive* as well as the date it was most recently accessed—even though the document itself was never saved to the computer examined.

8.  Accessing the registries and LNK files is not burdensome. Given access to an image of the hard drives examined by PLA, I could identify and transmit these files in minutes.

9.  The metadata are essentially the biographical information associated with each document: name, date saved, location, and (for emails) the sender, recipient, subject, time, and attachments. To obtain the metadata for the two specific hard drives imaged and analyzed by PLA and for the Outlook mailboxes would be very easy. Using forensic software, I would be able to generate a spreadsheet listing the metadata for all of the files on both hard drives in a matter of minutes. Doing the same with respect to Outlook inboxes is slightly more time-consuming but also easily done; I could assemble a spreadsheet of metadata for one Outlook mailbox in approximately 20 minutes.

10. The information described above is crucial to understand the "who, what, when, where, how, and why" regarding documents not produced during the litigation. Analyzing such information is an important part of the protocol that I would use to conduct a forensic analysis. Based on Mr. Jacob's email, PLA's investigation has not been sufficiently comprehensive to resolve the questions framed by the Court to find and produce more undiscovered documents.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: February 15, 2013.

_____
Mark Lanterman

9093441_3

4

Case 2:11-cv-00562-JPS-DPW-RMD   Filed 02/15/13   Page 5 of 9   Document 287-1

# EXHIBIT A

**From:** Jacob, Ayad P. [mailto:ajacob@schiffhardin.com]
**Sent:** Thursday, February 07, 2013 1:10 PM
**To:** Peter Earle
**Cc:** Poland, Douglas; Alberts, Barry S.
**Subject:** RE: Redistricting

Peter,
I will work to provide you with metadata, to the extent it exists, for other Michael Best recipients of the produced documents identified in the metadata spreadsheet. I will also provide you with a description of each of the fields contained in the spreadsheet.
We will not provide a file directory of Messer. Taffora and McLeod's Outlook, as those directories would disclose the identity of clients and engagements. We can agree to provide a redacted version of the directory disclosing those folders identified in the metadata spreadsheet.
We are not agreeable to creating a log of all documents contained in the directories identified in subpart(3) below. Those directories have been reviewed as part of PLA's audit, potentially responsive documents, to the extent they were not previously produced, were identified and provided. In addition, even those documents which relate to SB150, which Michael Best contends were outside the scope of the subpoena request, were produced without prejudice to or waiver of Michael Best's position.
Creating a log would be a time consuming distraction when we are already on a tight schedule and hard pressed to complete the supplemental searches Plaintiffs have requested in the time frames set by the

Court.  Moreover, whether a document was responsive and not produced cannot be discerned from a log.  With respect to areas of disagreement I have come up with the following list:

[1]     The responsiveness of SB150 documents to the subpoena requests;

[2]     The temporal scope of the subpoena requests which Michael Best contends ended at passage of Acts 43 and 44;

[3]     Non-disclosure of "copies of the registry and registry backups for the various systems" or "all user registries." The registry files do not contain documents. At most the registry files will typically reference document names for a few dozen files that were accessed at some point in the past;

[4]     While LNK files were examined as part of PLA's analysis we declined to produce LNK files as there was no indication that they relate to any potentially responsive document that was not   produced;

[5]     Disagreement over the production of a "file listing" and "metadata for all files on all systems" of Michael Best. Providing file listing and related metadata for every file maintained on Michael Best's    computer systems is not only prohibitively burdensome but unwarranted. Whether a document was responsive and not produced cannot be discerned from the file listing and related metadata.         Moreover, Michael Best has five offices with over 200 attorneys and maintains millions of files on thousands of matters unrelated to the subpoenas.

Best Regards,

**Ayad Paul Jacob | SCHIFFHARDIN LLP**

**233 South Wacker, Suite 6600 | Chicago, IL 60606**
☎ (312) 258.5585 | F: (312) 258.5600
✉ **ajacob@schiffhardin.com**

**From:** Peter Earle [mailto:peter@earle-law.com]
**Sent:** Wednesday, February 06, 2013 12:04 PM
**To:** Jacob, Ayad P.
**Cc:** 'Poland Douglas (DPoland@gklaw.com)'; Alberts, Barry S.
**Subject:** Re: Redistricting

Good morning Ayad-

I very much enjoyed our dinner last night and I think it was very helpful for us to have such a constructive opportunity for a frank discussion of the issues we face.  Following up on our conversation about the metadata spreadsheet for the previously unproduced documents that you sent to Doug and me, this is to request that you add ED folder information for each custodian of each of the documents.  For example, MBCA00001155, the e-mail you questioned McLeod about, is shown on the spreadsheet as having been found in an "ED Folder" described as "\mccloud_evault_messages\".  Significantly, Joe Olson stated in his letter to me that the copy of that e-mail which became public after it was turned over to Senator Miller was found in Ray Taffora's e-mail box and not McLeod's.  However, the spreadsheet does not include the metadata for Taffora's copy of that e-mail.  It is my understanding that you have agreed to up-date the spreadsheet to include the metadata for all the custodians of each e-mail.  There are a large number e-mails listed with metadata showing the "EDFolder" for Ray Taffora as the custodian but that were also cc'd to McLeod, but we have no corresponding metadata for McLeod's copy of that same e-mail and visa versa.  If the cc'd copy of the e-mail was not located during the search, then I'd request we be informed that no such metadata was found.  I am also requesting that you provide us with the following additional information about the spreadsheet:  (1) the precise definition of each column caption on the spreadsheet; (2) a listing of all the directories; (3) a log of all the documents found in the following specific directories - EMM_Recovered\Personal Folders\Personal Folders\Redistricting\Produced; EMM_Recovered\Persoanl Folderrs\Riske\Not Responsive\; EMM_Recovered\Personal Folders\Personal Folders\MISC\;  \Taffora_Raymond LT HDD\C\Documents and Settings\RPT\Desktop\RPT Senate Redistricting EMails\;  rptaffor_Recovered\Senate Redistricting\.

Additionally, I seem to recall that during one of our telephone conferences last week, you head agree to take a first stab at listing the areas of disagreement between us with regard to the scope of PLA's work and/or our access to requested information. Do you have an estimate as to when we will receive that list?

Thanks for your attention to these requests.  Peter
On Feb 4, 2013, at 7:48 PM, Jacob, Ayad P. wrote:


Doug and Peter,

Attached are two files. The PDF titled MBCA00006545 was potentially responsive to the subpoenas. The second file is a spreadsheet containing metadata for the documents (excluding SB150 documents) that we have provided to you to date.

Best Regards,

Ayad

```
---------------------------------------------------------------------
Tax Matters: To the extent this message or any attachment concerns
tax matters, it is not intended or written to be used, and cannot
be used by a taxpayer, for the purpose of avoiding penalties
that may be imposed on the taxpayer under law.
---------------------------------------------------------------------
This message and any attachments may contain confidential
information protected by the attorney-client or other privilege.
If you believe that it has been sent to you in error,
please reply to the sender that you received the message in
error. Then delete it. Thank you.
---------------------------------------------------------------------
```