UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ALVIN BALDUS, CINDY BARBERA, CARLENE
BECHEN, RONALD BIENDSEIL, RON BOONE, VERA
BOONE, ELVIRA BUMPUS, EVANJELINA
CLEEREMAN, SHEILA COCHRAN, LESLIE W.
DAVIS III, BRETT ECKSTEIN, MAXINE HOUGH,
CLARENCE JOHNSON, RICHARD KRESBACH,
RICHARD LANGE, GLADYS MANZANET,
ROCHELLE MOORE, AMY RISSEEUW, JUDY
ROBSON, GLORIA ROGERS, JEANNE SANCHEZ-
BELL, CECELIA SCHLIEPP, TRAVIS THYSSEN,

        Plaintiffs,

TAMMY BALDWIN, GWENDOLYNNE MOORE
and RONALD KIND,

        Intervenor-Plaintiffs,

  v.

Members of the Wisconsin Government Accountability
Board, each only in his official capacity:
MICHAEL BRENNAN, DAVID DEININGER, GERALD
NICHOL, THOMAS CANE, THOMAS BARLAND, and
TIMOTHY VOCKE, and KEVIN KENNEDY, Director
and General Counsel for the Wisconsin Government
Accountability Board,

        Defendants,

F. JAMES SENSENBRENNER, JR., THOMAS E. PETRI,
PAUL D. RYAN, JR., REID J. RIBBLE,
and SEAN P. DUFFY,

        Intervenor-Defendants.

Civil Action
File No. 11-CV-562

Three-judge panel
28 U.S.C. § 2284

(caption continued on next page)

---

**MOTION FOR EXTENSION OF TIME
TO FILE FINAL STATUS REPORT, AND
PLAINTIFFS' INTERIM STATUS REPORT**

---

VOCES DE LA FRONTERA, INC., RAMIRO VARA,
OLGA WARA, JOSE PEREZ, and ERICA RAMIREZ,

        Plaintiffs,

  v.                                         Case No. 11-CV-1011
                                                  JPS-DPW-RMD

Members of the Wisconsin Government Accountability
Board, each only in his official capacity:
MICHAEL BRENNAN, DAVID DEININGER, GERALD
NICHOL, THOMAS CANE, THOMAS BARLAND, and
TIMOTHY VOCKE, and KEVIN KENNEDY, Director
and General Counsel for the Wisconsin Government
Accountability Board,

        Defendants.

      The Voces de la Frontera plaintiffs and the Baldus plaintiffs (collectively, "Plaintiffs"), through their counsel, submit this motion to extend the time in which to file a final status report, now due to be filed on March 15, 2013, and provide the Court with an interim status report.[1] In support of this motion, and reporting on the status of their investigation, Plaintiffs state as follows:

      1.     On January 11, 2013, Plaintiffs and counsel for Michael Best & Friedrich LLP ("Michael Best") filed a Joint Status Report (Dkt. 271). On January 17, 2013, the Court issued an order (Dkt. 272) instructing the parties to submit, no later than March 15, 2013, a final joint status report addressing the issues raised in the January 11 status report.

      2.     The Court's January 17 order further instructed the Plaintiffs to file, no later than February 15, 2013, any motions necessary to resolve disputes regarding the investigation necessary to form the foundation of the parties' final report or reports, and directed Plaintiffs to

---

[1] Counsel for Michael Best & Friedrich LLP joins in the requested extension but not in the remainder of this motion.

either renew their Motion for Remedial Discovery (Dkt. 252) or move for other relief no later than April 1, 2013. The January 11 order stated: "The time has come for the Court, the lawyers in this matter, and—most importantly—Wisconsin's citizens to get to the bottom of the who, what, when, where, how, and why, and then to move on." (Dkt. 272 at p. 3)

3. In accordance with the schedule set out in the Court's January 17 order, Plaintiffs filed three separate motions, between February 1 and February 15, that they deemed necessary to resolve disputes relating to the investigation of redistricting materials not produced during the litigation and the reason for that non-production. (Dkts. 278, 285, 286)

4. On February 25, having heard from counsel for the affected parties, the Court granted all three motions in full, ordering all of the materials requested by Plaintiffs to be turned over immediately for forensic analysis. (Dkt. 295)

5. On February 26, counsel for the Legislative Technology Services Bureau ("LTSB") turned over to Plaintiffs' counsel nine hard disk drives (two internal and one external hard disk drive per computer) from the three computers used by the legislature for redistricting. That same day, Plaintiffs' counsel shipped the nine hard disk drives to Mark Lanterman of Computer Forensic Services ("CFS") for forensic analysis. Mr. Lanterman received the nine hard disk drives the following day (February 27) and immediately began his inspection and forensic analysis of those hard disk drives. (Declaration of Mark Lanterman ("Lanterman Decl.") ¶¶ 3-5) CFS has also received copies of the forensic images of the materials that PLA had analyzed (the "Michael Best materials").

6. In the days immediately following the Court's February 25 order, Plaintiffs' counsel and Michael Best's counsel discussed logistical issues regarding Mr. Lanterman's

review of the Michael Best materials, in addition to the LTSB hard drives, and developed the terms of a protocol for Mr. Lanterman's forensic examination.

7. Mr. Lanterman's preliminary analysis to date of the nine redistricting hard disk drives has revealed the following:

- Eight of the hard drives were in good physical condition, but one of the external hard drives bore marks, including scratches and denting of the external metal housing and a stripped screw, indicating that the housing previously had been removed from the drive in a manner that damaged the outer housing. Moreover, this external hard drive could not be read. Although the disk will spin when the drive is powered up, it is unable to be read, indicative of damage, physical or otherwise. (Lanterman Decl. ¶ 3)

- Files were deleted from the hard drives in June 2012, July 2012, and November 2012. (*Id.* ¶ 5)

- Software designed to "wipe" data – that is, to permanently destroy data on a hard drive, overwrite free space, or permanently delete files so that they can no longer be recovered – was downloaded onto some of the hard drives within the last year. Mr. Lanterman has not yet determined whether the "wiping" software was in fact used on (as opposed to simply downloaded to) any computer because such software is designed deliberately to mask evidence of its use. (*Id.*)

8. On March 5, 2013, Plaintiffs notified counsel for LTSB and the legislature (and other counsel in this matter) that Mr. Lanterman's preliminary analysis had revealed file deletions and software downloads. (Declaration of Douglas M. Poland ("Poland Decl."), ¶ 2, Ex. A) The counsel for the legislature and LTSB responded two days later, disclosing for the first

3

time that the three computers used for redistricting "were placed back on the network in late May or early June" and that "[t]here were undoubtedly software updates undertaken at that point and information deletion would have taken place in the normal course of usage of state computers." (*Id.* ¶ 3, Ex. B) The counsel for the legislature and LTSB contends that the legislature did not have any obligation to preserve the data on the redistricting computers beyond either the close of trial (February 24, 2012), or the entry of judgment (March 22, 2012), or the defendants' dismissal of their appeal to the U.S. Supreme Court (June 18, 2012). (*Id.*)

9. Notwithstanding the position taken by current counsel for the LTSB and the legislature, the previous counsel for the LTSB and the legislature testified during his deposition that he had "clearly communicated" in writing to legislative employees Tad Ottman and Adam Foltz after the conclusion of the trial (on February 24, 2012) that they should preserve and maintain all records associated with their redistricting work. (McLeod Deposition (Dkt. 284), 139:7-140:11). The previous counsel for the LTSB and the legislature further testified that he has been unable to locate the written preservation request he had issued. (*Id.* 139:23-140:11) Nor was he able to describe when or how the three state computers were returned to the state, beyond stating his belief that the computers were taken from Michael Best's office approximately three or four months before he left the law firm around the end of June 2012. (*Id.* 93:4-10)

10. Plaintiffs replied to counsel for the legislature and LTSB on March 11, 2013, identifying the factual and legal bases, including this Court's serial orders and sworn testimony by the legislature's counsel, for the legislature's continuing obligation to preserve redistricting data, including all data on the three computers (and nine hard drives) at issue. (Poland Decl., ¶ 4, Ex. C)

4

11. On March 8, Mr. Lanterman shipped the nine hard disk drives to Plaintiffs' counsel, and they have been returned to counsel for the legislature and LTSB. (Lanterman Decl. ¶ 7; Poland Decl. ¶ 5)

12. The three redistricting computers apparently, if inexplicably, have been subject to continuing use, and sufficient efforts were not made to preserve redistricting data on them (and, the initial analysis suggests, intentional efforts to delete data might have been made, successfully or not). As a result, Mr. Lanterman's forensic analysis and his attempt to identify responsive data that were not produced involve unanticipated and more extensive and painstaking work than otherwise would have been necessary. Specifically, determining the volume and contents of deleted files and establishing whether wiping software was in fact executed will be a process customized for each one of the systems. Mr. Lanterman will require as many as eight additional weeks to analyze and attempt to recover data from the hard disk drives from the state redistricting computers. (Lanterman Decl. ¶ 11) Analysis of the Michael Best materials, which he has not yet begun, would further extend Mr. Lanterman's estimate. (*Id.*)

13. Plaintiffs' counsel asked Mr. Lanterman to estimate the cost of a complete forensic review of the redistricting computer hard drives and the Michael Best materials. His response: a full forensic analysis of all devices submitted to date will, at a minimum, exceed $100,000.

14. Given the additional time and cost that would be required for Mr. Lanterman to analyze the Michael Best materials, Plaintiffs' counsel has asked him to first complete his forensic analysis of the redistricting computer hard disk drives before beginning any review of the Michael Best materials.

15. PLA's own analysis—now subject to Mr. Lanterman's review—identified a total of 55 documents (including documents relating to Senate Bill 150) that should have been produced before trial but were not. Following the Court's February 25, 2013 order, PLA suspended its work. Counsel for Michael Best has represented to Plaintiffs that any remaining work PLA will do will be in response to what Mr. Lanterman determines.

16. The analyses and disclosures of information to date – including PLA's analysis, Mr. Lanterman's preliminary analysis, and the deposition of Mr. McLeod – have not identified any reasons for the non-production of the responsive materials before trial, other than Mr. McLeod's testimony that the documents simply were missed during the production review. (McLeod Deposition (Dkt. 284), 125:8-126:21, 128:12-19, 143:15-21, 149:8-15, 156:13-15) Moreover, neither the legislature, nor LTSB, nor Michael Best have established a chain of custody for the state computers.

17. The analyses to date have failed to answer some questions and have raised other questions that must be answered to respond to the serious issues posed by Plaintiffs' Motion for Remedial Discovery, including:

- The chain of custody for the state computers before they were finally provided to the Plaintiffs on February 26 and, then, only after Court order.

- The extent, nature and cause of any data deletions.

- The final results of PLA's analysis of the Michael Best computers and any analysis it may have performed or will perform of the state computers.

- Whether the evidence warrants the time and expense of Mr. Lanterman's further review of the Michael Best materials.

- Whether any deletion of data on the redistricting computer hard disk drives warrants the time and expense of further searches and analysis of materials in the custody of Reinhart Boerner van Duren and James Troupis, foreshadowed by the Plaintiffs' February 15, 2013 motion (Dkt. 286).

18. Given the number and significance of the questions that remain, Mr. Lanterman's ongoing analysis, and the length of time that it will require, Plaintiffs and Michael Best are not in a position to provide the Court with a "Final" status report on March 15. Mr. Lanterman's anticipated schedule suggests that the parties likely will not be in a position to provide a final report until mid-May.

19. Similarly, the number and significance of remaining questions, as well as the new questions raised by Mr. Lanterman's preliminary findings with respect to data deleted from the redistricting computers, indicates that Plaintiffs will not be in a position to renew their Motion for Remedial Discovery, or to file any motion(s) seeking other relief, by the current April 1 deadline.

20. Conversely, the findings to date emphasize the need – in the public interest and the integrity of the process – for the post-trial investigative process to continue and conclude.

**Relief Requested**

WHEREFORE, Plaintiffs respectfully request that the Court extend the deadline to submit a final report to and including Friday, May 10, and that the Plaintiffs have until Friday, May 24 to renew their Motion for Remedial Discovery, or to file any motion(s) seeking other relief. Counsel for Michael Best joins in the requested extension but not in the remainder of this motion.

Dated: March 13, 2013.  Respectfully submitted,

GODFREY & KAHN, S.C.

By: *s/ Douglas M. Poland*
Douglas M. Poland
State Bar No. 1055189
Dustin B. Brown
State Bar No. 1086277
One East Main Street, Suite 500
P.O. Box 2719
Madison, WI 53701-2719
608-257-3911
dpoland@gklaw.com
dbrown@gklaw.com

*Attorneys for Plaintiffs*

Dated: March 13, 2013.  LAW OFFICE OF PETER EARLE LLC

By: *s/ Peter G. Earle*
Peter G. Earle
State Bar No. 1012176
Jacqueline Boynton
State Bar No. 1014570
839 North Jefferson Street, Suite 300
Milwaukee, WI 53202
414-276-1076
peter@earle-law.com
jackie@jboynton.com

*Attorneys for Consolidated Plaintiffs*

9194029_3