# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| ALVIN BALDUS, CARLENE BECHEN, ELVIRA BUMPUS, RONALD BIENDSEIL, LESLIE W DAVIS, III, BRETT ECKSTEIN, GLORIA ROGERS, RICHARD KRESBACH, ROCHELLE MOORE, AMY RISSEEUW, JUDY ROBSON, JEANNE SANCHEZ-BELL, CECELIA SCHLIEPP, TRAVIS THYSSEN, CINDY BARBERA, RON BOONE, VERA BOONE, EVANJELINA CLEERMAN, SHEILA COCHRAN, MAXINE HOUGH, CLARENCE JOHNSON, RICHARD LANGE, and GLADYS MANZANET<br><br>                     Plaintiffs,<br><br>TAMMY BALDWIN, GWENDOLYNNE MOORE and RONALD KIND,<br>                     Intervenor-Plaintiffs,<br>v.<br><br>Members of the Wisconsin Government Accountability Board, each only in his official capacity: MICHAEL BRENNAN, DAVID DEININGER, GERALD NICHOL, THOMAS CANE, THOMAS BARLAND, and TIMOTHY VOCKE, and KEVIN KENNEDY, Director and General Counsel for the Wisconsin Government Accountability Board,<br><br>                     Defendants,<br><br>F. JAMES SENSENBRENNER, JR., THOMAS E. PETRI, PAUL D. RYAN, JR., REID J. RIBBLE, and SEAN P. DUFFY,<br>                     Intervenor-Defendants. | Case No. 11-CV-562<br>JPS-DPW-RMD |
| VOCES DE LA FRONTERA, INC., RAMIRO VARA, OLGA VARA, JOSE PEREZ, and ERICA RAMIREZ,<br><br>                     Plaintiffs,<br>v.<br><br>Members of the Wisconsin Government Accountability Board, each only in his official capacity: MICHAEL BRENNAN, DAVID DEININGER, GERALD NICHOL, THOMAS CANE, THOMAS BARLAND, and TIMOTHY VOCKE, and KEVIN KENNEDY, Director and General Counsel for the Wisconsin Government Accountability Board,<br><br>                     Defendants. | Case No. 11-CV-1011<br>JPS-DPW-RMD<br><br><br><br>ORDER |

June 3, 2013

Before WOOD, *Circuit Judge*, STADTMUELLER, *District Judge*, and DOW, *District Judge*

On May 15, 2013, the parties filed two documents: (1) a Joint Report (Docket #315) on the status of the investigation following the filing of Plaintiffs' Motion for Remedial Discovery and Preliminary Motion for Sanctions ("Sanctions Motion" located at Docket #252); and (2) a letter (Docket #316) advising the Court that they have entered into a settlement agreement that resolves the issues raised in the Sanctions Motion. After reviewing both documents, the Court enters this final order that at long last terminates this litigation almost two years after it began.

As it turns out, the Court issued its ruling on the merits less than halfway through the life of the case. At that time, attorneys' fees for the prevailing parties remained in dispute. But, as the parties moved toward resolution of that collateral issue, Plaintiffs filed the Sanctions Motion, in which they: (1) charged that aides, consultants, and lawyers working with the Legislature during this litigation improperly withheld certain documents that should have been produced in response to subpoenas and court orders; and (2) suggested the possibility that the missing documents may have been material to Plaintiffs' substantive claims. In the almost nine months that the motion has been pending, the parties and their lawyers and consultants have engaged in a costly and time-consuming effort to investigate the allegations.[1]

---

[1] The Joint Report indicates that Plaintiffs have spent at least $100,000 on their forensic consultant alone, not to mention attorneys' fees. The amounts paid to consultants and lawyers by Michael, Best & Friedrich LLP, which represented the Republican caucus in the redistricting effort, are not disclosed in the Joint Report, but undoubtedly are substantial. The extent to which any of the expenses associated with the post-trial aspects of this case may have added to the taxpayers' already substantial bill in this litigation likewise is unknown.

The Joint Report sets out the results of that investigation. The Report accomplishes its stated purpose, which is "to provide, in neutral terms, what is known and what remains unknown about the nature, extent, explanation, and responsibility for the non-production of documents and data that should have been produced in response to the subpoenas issued by Plaintiffs and the Court's pre-trial discovery orders in the redistricting process." (Joint Report at 1). At the end of the day, the best that can be said for the non-moving parties is that, through "inadvertence or ineptitude, or otherwise," compliance with Plaintiffs' subpoenas and the Court's orders "was not complete." (*Id.* at 7). Yet, the Joint Report concludes, "no direct or clear and convincing evidence has come to light to date showing either: (1) that such non-production was the result of intentional, deliberate or contumacious disregard of the subpoenas or the Court's orders by anyone; and (2) that the previously unproduced material would have materially affected the ultimate outcome of the redistricting litigation." (*Id.* at 8).

Recognizing that these conclusions are couched in uncertainty, they do, nevertheless, satisfy the Court that its role in this litigation should come to an end. Even after resolving the merits of this case, the Court retained an ongoing interest in the post-trial aspects to the extent necessary to vindicate its orders and processes and to protect the integrity of its ruling on Plaintiffs' claims. Had the parties' efforts to date uncovered a "smoking gun" or other good cause for action, the Court retained the authority to impose sanctions on the non-moving parties and/or to award affirmative relief to the moving parties. Given the inconclusive results of those efforts, however, we concur in the parties' apparent judgment that the further consumption of public or private funds or judicial resources in pursuit of the Sanctions Motion—or any other potential avenues for relief in federal court—would not be justified.

Whether there is another chapter to be written in this story by others who may have an interest in getting to the bottom of this unfortunate chapter in Wisconsin political history remains to be seen. The extent to which historians, the media, professional regulators and disciplinary bodies, or any others may wish to take further action is for them to decide in due course. But the involvement of the federal judiciary in this matter has come to an end at least for this decade.[2]

In closing, we simply reemphasize our previous observations (see 3/22/12 Opinion (Docket #210), at 34-35) about the regrettable contentiousness that often accompanies partisan redistricting wherever it takes place and the additional Wisconsin-specific rancor brought on by the peculiarly furtive process adopted by the majority party this time around. We cannot help but conclude that the people of Wisconsin deserve better in the next round of redistricting after the 2020 census.

Accordingly,

IT IS ORDERED that the parties' Joint Report (Docket #315) be and the same is hereby ACCEPTED, and all matters in this litigation are finally resolved.

---

[2] As the Court noted in its Memorandum Opinion and Order of March 22, 2012, judicial involvement in the redistricting process is nothing new in Wisconsin. Following each of the three most recent prior censuses (1980, 1990, 2000), three-judge courts have actually drawn the state's legislative districts.